1   TYLER G. NEWBY (CSB No. 205790)
    tnewby@fenwick.com
2   MATTHEW BECKER (CSB No. 291865)
    mbecker@fenwick.com
3   MARY GRIFFIN (CSB No. 324073)
    mgriffin@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA  94104
    Telephone:    415.875.2300
6   Facsimile:    415.281.1350

7   Attorneys for Plaintiff
    Faire Wholesale, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  FAIRE WHOLESALE, INC.,                | Case No.:

13              Plaintiff,                 | **COMPLAINT FOR:**

14       v.                                | **VIOLATION OF THE COMPUTER
                                           | FRAUD AND ABUSE ACT, 18 U.S.C.**
15  TUNDRA INC.,                           | **§ 1030**

16              Defendant.                 | **VIOLATIONS OF CALIFORNIA
                                           | PENAL CODE SEC. 502**
17
                                           | **TORTIOUS INTERFERENCE WITH
18                                         | PROSPECTIVE ECONOMIC
                                           | ADVANTAGE**
19
                                           | **INTENTIONAL INTERFERENCE
20                                         | WITH CONTRACT**

21                                         | **VIOLATION OF CALIFORNIA BUS. &
                                           | PROF. CODE § 17200, ET SEQ.**
22
                                           | **VIOLATION OF THE LANHAM ACT,
23                                         | 15 U.S.C. § 1125**

24                                         | **JURY TRIAL DEMANDED**

25

26

27

28

FENWICK & WEST LLP

COMPLAINT                                                      CASE NO. _____

Plaintiff Faire Wholesale, Inc. brings this action against Defendant Tundra Inc. and alleges as follows:

**INTRODUCTION**

1.      Faire brings this action to stop Tundra's unauthorized solicitation, storage and use of Faire's users' credentials for logging into Faire's online marketplace and Tundra's use of those credentials to gain access to non-public portions of Faire's computer network without Faire's authorization.  Despite Faire's demands that Tundra stop its unauthorized access, Tundra continues to carry out this scheme to copy data from Faire's computer systems for Tundra's commercial benefit.

2.      Founded in 2017, Faire operates a curated online wholesale marketplace platform that connects independent brands and retailers, allowing them to compete more effectively with both big box brick-and-mortar stores as well as online retail giants.  Faire specializes in working with small and medium-sized businesses and structures its commission so that Faire only gets paid when these businesses make new and successful connections.  Over 350,000 North American retailers have used Faire's platform to find and connect with brands, discover new products, and grow their businesses.

3.      To list wholesale products for sale on Faire, brands must create a Faire account and login to that account with a username and password.  Similarly, to search the complete catalog of wholesale products offered by brands for sale on Faire and place orders, retailers must create a Faire account and login to that account with a username and password.  It is not possible to search the complete catalog of wholesale products on Faire without logging into a password protected account.

4.      Tundra operates what it describes as "one of the biggest online wholesale marketplaces."[1]

5.      In 2022, Tundra launched a new line of business named Wholesale Co-Op, which it described in a June 9, 2022 blog post as:

---

[1] https://www.tundra.com/content/wholesale-coop-launch (last visited May 23, 2023).

FENWICK & WEST LLP

> "A one-stop, members-only comparison tool that delivers unprecedented visibility on sales, deals, prices, lead times, in-stock availability, and minimums aggregated from over 100,000 brands, 10+ major wholesale marketplaces, and 30+ major distributors. That means visibility across Faire, Tundra, Abound, JuniperMarket, FashionGo, Mable, Handshake, Creoate, Bulletin, Orangeshine and more *all in one place*."[2]

6.     Faire does not make publicly available the prices, lead times, in-stock availability or other inventory and pricing information of goods offered by brands on the Faire platform. Only retailers or brands who have created accounts on Faire may access this information by logging into the Faire platform using a username and password.

7.     To obtain wholesale prices, inventory, pricing, retailers' orders, shopping carts and other information from Faire, Wholesale Co-Op induces Faire retailers to divulge their Faire login credentials to Tundra.  To use Wholesale Co-Op for Faire purchases, retailers must divulge their Faire login credentials by logging into Faire through the Wholesale Co-Op platform.  Wholesale Co-Op then uses those login credentials to access password-protected portions of the Faire platform, copy information from Faire's protected computers, and otherwise use the Faire platform, all without Faire's authorization.

8.     Tundra's actions compromise the security of the Faire platform and user accounts. Faire has demanded that Tundra stop accessing its platform, but it refuses.  Faire has also implemented technological measures to try to stop Tundra from accessing and scraping the Faire platform without permission, but Tundra has devised means to circumvent Faire's security tools.

9.     Tundra has also interfered with Faire's business and contractual agreements, including by inducing Faire's users to breach their agreements with Faire in order to use Wholesale Co-Op, and by causing Faire users to be locked out of their accounts or otherwise creating turmoil and customer confusion that Faire must respond to.

10.     Because Tundra flatly refuses to modify its behavior and cease its harmful business practices, Faire brings this action to make Tundra compete fairly in the market.

---

[2] https://www.tundra.com/content/wholesale-coop-launch (last visited May 23, 2023).

**PARTIES**

11.     Faire is a Delaware corporation with its principal place of business at 100 Potrero Ave., San Francisco, CA 94103.

12.     Tundra is a Delaware corporation with its principal place of business at 116 Sheridan Ave., San Francisco, CA 94129.  Tundra operates Wholesale Co-Op, which is located at the same address.

**JURISDICTION**

13.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action alleges violations of federal statutes, the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and the Lanham Act (15 U.S.C. § 1125).  The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Tundra because it is headquartered in this district, and because it directed its business activities toward and conducts business with consumers within this district.  Furthermore, among other acts, Tundra unlawfully accessed and used Plaintiff's computers, data, and servers located in this district.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant Tundra is a resident of this district, and a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this district.  Among other acts, Tundra unlawfully accessed, altered, and/or used Faire's computers, data, and servers in this district.

**FACTUAL ALLEGATIONS**

16.     Faire operates an online wholesale marketplace that connects independent retailers and brands around the world.

17.     Faire offers several benefits to retailers, including net 60 payment terms and free returns.  Faire's net 60 payment terms enable approved retailers to place orders and pay up to 60 days later, helping retailers better manage their cash flow.  Retailers also benefit from free returns on opening orders (i.e., when they order from a brand for the first time), which helps reduce their inventory risk.

18.     Most Faire retailers source inventory through other channels, in addition to Faire. These other channels include other business-to-business marketplaces, and the use of sales representatives, distributors, and trade shows.  Retailers also place wholesale orders directly with brands.

19.     Among the incentives for small businesses to make deals on Faire instead of through trade shows or other online marketplaces is the Faire Direct program.  Under this program, Faire provides brands with a personalized link that they can use to invite retailers to order from their shop on Faire.  When retailers order through this link, brands pay 0% commission on these orders.  This can be distinguished from ordinary sales on the Faire Marketplace where the brand pays a commission on successful transactions.

## I.     FAIRE STRIVES TO MAINTAIN THE SECURITY OF ITS PLATFORM

20.     Faire takes seriously the security of its platform and its users.  Faire's anti-abuse team works constantly to ensure that a user logged into the Faire platform is the valid owner of the credentials they used to access the platform.  Faire routinely improves and updates its processes to prevent unauthorized actors from accessing Faire accounts or secured portions of the Faire platform, scraping information from the platform, and unauthorized automated traffic including credential stuffing attacks or the use of bots and other such tools.

21.     As part of its security protocols, Faire requires users of its platform to agree to abide by certain rules.

22.     To list or buy products on the Faire platform, brands and retailers must first agree to Faire's Terms of Service,[3] which includes various provisions governing the use of Faire's services.

23.     One provision of Faire's Terms of Service is a requirement in Section 4 that users must protect the passwords to their accounts and may not disclose them to third parties: "You are responsible for safeguarding your password and you agree that you will not disclose it to any third party."

_____

[3] Available at https://www.faire.com/tos.  A copy of the Faire Terms of Service is attached as **Exhibit A**.

COMPLAINT                                        4                                        CASE NO. _____

24.     Faire's Terms of Service also prohibit copying or disseminating the material on the Faire platform, at Section 7.b.: "you shall not copy, reproduce, disseminate, distribute, modify, adapt, create derivative works of, publicly display, publicly perform, stream, broadcast, republish, download, disassemble, reverse compile, reverse engineer, store, post or transmit any of the material or content on our Services . . . ."

25.     Section 7.b. of the Faire Terms of Service likewise prohibit interfering with or circumventing any feature on the Faire platform, in particular security or access control: "you shall not interfere with or circumvent any feature of the Services, including any security or access control mechanism, in whole or in part, except as permitted in these Terms."

26.     Section 14 of the Faire Terms of Service also set out a number of restrictions on the use of the Faire platform, including using, mirroring, or framing the Faire platform without Faire's express written consent (Section 14.b.); breaching any security or authentication measures, or testing the vulnerability of the Faire platform (Section 14.d); circumventing any technological measure to protect the Faire platform (Section 14.e.); attempting to use software or tools such as robots or crawlers to access or download material from the Faire platform (Section 14.f.); impersonate or misrepresent your affiliation with any person or entity (Section 14.n.); or encouraging or enabling any third party to do any of the foregoing prohibited activities (Section 14.p).

**II.     TUNDRA'S UNAUTHORIZED ACCESS TO FAIRE'S SERVICE AND FALSE REPRESENTATIONS IN FURTHERANCE OF ITS SCHEME TO DIVERT FAIRE COMMISSION REVENUE TO ITSELF**

27.     Like Faire, Tundra also operates an online marketplace for brands and retailers to connect and do business.  Although both businesses have competed over roughly the same period, Tundra has been less successful at attracting users.

28.     In 2022, Tundra attempted to grow the number of retailers using its service by launching Wholesale Co-Op, a business line that solicits retailers to conduct their transactions on Faire and other marketplaces through the Wholesale Co-Op platform.

COMPLAINT                                      5                                      CASE NO. _____

29.    On information and belief, Tundra's business model for its Wholesale Co-Op business line is based on arbitrage, wherein Wholesale Co-Op convinces brands to misuse Faire's incentive program in order to line Tundra's own pockets or attract patrons to its business.

30.    To encourage retailers to join Wholesale Co-Op and disclose their Faire login credentials, Wholesale Co-Op promises to pay the retailers up to 10% "cash back" on every purchase they make through Wholesale Co-Op from a brand listed on Faire.

31.    After a retailer creates a Wholesale Co-Op account, Wholesale Co-Op encourages the retailer to disclose its Faire login credentials on the following screen:



32.    By incentivizing Faire's retailer users to disclose their Faire login credentials, Wholesale Co-Op induces those users to breach their agreement with Faire not to disclose their passwords to third parties.

33.    On information and belief, to enable and even profit from this cash back program, Wholesale Co-Op abuses Faire's Faire Direct program. Wholesale Co-Op directly solicits brands that sell on Faire to provide Faire Direct links to retailers that have registered with Wholesale Co-Op.  These Faire Direct links enable the retailers to purchase products from brands on Faire's marketplace without the brand paying a commission to Faire.  Wholesale Co-Op encourages brands to provide their Faire Direct links by promising to promote their brands to new retailers and give them greater exposure to the retailers who are members of Wholesale Co-Op.  Wholesale Co-Op then charges the brand what it describes in email solicitations as a "fee that replaces the marketplace commission for new retailers to a marketplace and their reorders."

34.    On information and belief, Wholesale Co-Op charges brands that participate in this program a fee of 15% of sales to new retailers who make their purchases from the Faire marketplace through Wholesale Co-Op.  Wholesale Co-Op then pays a percentage of this fee as "cash back" to the retailer and pockets the rest for itself.  Thus, Wholesale Co-Op diverts a 15% commission that would have been payable to Faire to itself and the retailer.

35.    When soliciting brands, Wholesale Co-Op falsely represents that Faire has approved of this program.  Specifically, on December 15, 2022, a Wholesale Co-Op "Supplier Development" employee told a Faire brand user ("Brand A") that Faire had approved of this scheme and that it was above board.  In fact, Faire only recently learned of this program and has never authorized or endorsed it.

36.    Wholesale Co-Op's arbitrage and misappropriation of Faire commissions through this scheme is only possible if Wholesale Co-Op has access to retailers' Faire login credentials so that the retailers can search for products and make purchases from the Faire marketplace through Wholesale Co-Op.

37.    Tundra employs automated processes to use the Faire retailers' credentials to access the retailer's Faire account and copy information and content from secured portions of the Faire platform—in the process circumventing Faire's security features by copying cookie values and deploying a wide range of user agents that deliberately misrepresent their identities and proxying requests through virtual private network (VPN) connections.

FENWICK & WEST LLP

38.     By using these measures to bypass Faire's security features, Tundra apparently knows that what it is doing is wrong, and being unable to accomplish its ends openly, has resorted to subterfuge and technological circumvention.

39.     By causing Faire users to assist Tundra in its circumvention, unpermitted access, scraping, and other misuse of the Faire platform, Tundra causes those users to breach multiple provisions in Section 14 of Faire's Terms of Service, identified above.

40.     Tundra's actions also violate several provisions of Faire's Terms of Service, including the restrictions in Section 7.b., and many of the prohibited uses in Section 14.

41.     Tundra's storage and use of Faire users' account credentials without Faire's consent jeopardize the security of the Faire platform.

42.     For example, if Tundra's system is breached, then the Faire user credentials Tundra stores can be stolen or used.  Such a breach may not only result in harm to those users, but also harm to Faire's business and reputation.

43.     Some of the tools that Faire has had to deploy to address this unauthorized access and scraping has the unfortunate effect of slowing access to Faire by legitimate users.

44.     Faire has expended more than $5,000 investigating and addressing Tundra's unauthorized access and copying of data from the Faire platform via Wholesale Co-Op.

45.     Faire retailers have complained to Faire's customer service agents about login issues and notices of potential unauthorized login attempts that, upon information and belief, were caused by Tundra's use of their account credentials to access the Faire platform through Tundra's Wholesale Co-Op business unit.

46.     Faire has deployed numerous technological measures to try to stop Tundra from accessing and scraping the Faire platform without permission, but Tundra has devised means to circumvent Faire's security tools.

47.     As part of its approach to circumvent Faire's security tools, Tundra uses automated means to access the password-protected portions of the Faire platform from a wide range of IP addresses in different geographic locations to mask the true origin of those login attempts.

48.    Tundra also uses a wide range of user agents, including user agents for browsers that are years out of date to gain unauthorized access to Faire's protected computer servers.

49.    The methods by which Tundra accesses the Faire platform via Wholesale Co-Op, including by supplying a misleading user agent and proxying its activity through a virtual private network (VPN), suggests that it uses software and tools specifically configured to misrepresent itself to appear as if the activity was coming from an ordinary (human) Faire user.

III.    **TUNDRA REFUSES TO CEASE ITS UNAUTHORIZED ACCESS TO THE FAIRE PLATFORM AND INDUCEMENT OF FAIRE'S USERS TO PROVIDE THEIR LOGIN CREDENTIALS**

50.    On February 14, 2023, Faire sent a letter to Tundra notifying it that its conduct violated Faire's terms, and instructing it to stop its unpermitted intrusion on the Faire platform, scraping of material from the platform, and interference with Faire's business and contracts.  A copy of the letter is attached as **Exhibit B**.

51.    Faire continues to receive complaints from brands about solicitations from Wholesale Co-Op, including as recently as May 15, 2023.

52.    Tundra refuses to cease the actions complained of in Faire's letter and in this complaint and continues to engage in the same conduct through its Wholesale Co-Op line of business.

## FIRST CLAIM FOR RELIEF
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

53.    Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

54.    Faire owns its computer systems, on which the Faire platform resides.

55.    Faire's computer systems described herein, including the Faire platform, are involved in interstate and foreign commerce and communication, and are protected computers as defined under 18 U.S.C. § 1030(e)(2).

56.    Tundra knowingly and intentionally accessed, and continues to access, alter, or destroy Faire's computers, computer systems, servers, and databases (the "computer systems") without authorization or in excess of authorization.

FENWICK & WEST LLP

COMPLAINT                                          9                                          CASE NO. _____

57. After gaining unauthorized access to Faire's computer systems, Tundra obtained, used, altered, and/or destroyed valuable information from Faire's computer systems in transactions involving interstate or foreign commerce, and did so without authorization.

58. Tundra knowingly, willfully, and with an intent to defraud accessed Faire's computer systems without authorization or in excess of authorization and obtained valuable information from Faire's computer systems that, on information and belief, Tundra used to obtain something of value.

59. All of Tundra's unlawful and unauthorized access and other wrongful conduct continues to this day.

60. Tundra's conduct was for the purpose of private financial gain and has caused a loss to Faire during a one-year period in excess of $5,000. These losses will increase as time goes on.

61. Faire has been and continues to be damaged by Tundra's actions, including by being forced to expend resources to investigate the unauthorized access, alteration, copying, abuse, and/or destruction of its computer systems and network, as well as by other means that have not yet been discovered. Faire seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

62. Faire has suffered irreparable and incalculable harm and injuries resulting from Tundra's conduct, which harm will continue unless Tundra is enjoined from further unauthorized use of, copying, access, alteration, or destruction of Faire's protected computer systems. Faire has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
**(Violation of California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502)**

63. Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

64. Faire is the owner of the Faire platform, a computer system on which Faire conducts business and operates a marketplace.

FENWICK & WEST LLP

COMPLAINT                                        10                              CASE NO. _____

65.     Without permission from Faire, Tundra knowingly accessed and altered, damaged, deleted, destroyed, or otherwise used data on the Faire platform, in order to devise or execute a scheme or artifice to defraud, deceive, or extort.

66.     Without permission from Faire, Tundra knowingly accessed and altered, damaged, deleted, destroyed, or otherwise used data on the Faire platform, in order to wrongfully control or obtain money, property, or data.

67.     Without permission from Faire, Tundra knowingly accessed took, copied, or made use of data from the Faire platform.

68.     Without permission from Faire, Tundra knowingly used computer services from the Faire platform.

69.     Without permission from Faire, Tundra knowingly accessed and added, altered, damaged, deleted, or destroyed data that resided on the Faire platform.

70.     Faire was harmed by the alteration, damage, deletion, destruction, or use of the data described above, in an amount to be proven at trial.

71.     Tundra's conduct was a substantial factor in causing that harm to Faire.

72.     Faire is entitled to compensatory damages for the harm Tundra caused, as well as an award of its attorneys' fees.

73.     Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage)

74.     Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

75.     Faire has economic relationships with its brand and retailer customers that were likely to benefit Faire.

FENWICK & WEST LLP

76.     At all relevant times, Tundra knew about the economic relationships between Faire and its customers, including as a result of Tundra's investigation of and familiarity with Faire's business, and subsequently through communication from Faire's counsel.

77.     Tundra engaged in conduct that disrupted the economic relationships between Faire and its customers.  Tundra interfered with these contracts by, among other things, inducing many of Faire's retailer customers to divulge their confidential account login credentials to Tundra in violation of their agreements with Faire.

78.     In addition to inducing Faire's retailers to disclose their Faire login credentials in breach of Faire's Terms, Tundra also interfered with section 9.b. of the Faire Wholesale, Inc. Brand Terms of Service, at https://www.faire.com/tos-brand (attached as **Exhibit C**). That section provides that only "existing retailers" are eligible for a waiver of commissions if the Brand is satisfying Faire's current policies.  Tundra's abuse of Faire's Faire Direct program encouraged Faire brand customers to violate this provision by applying the Faire Direct commission waiver to new users, instead of retailers with whom they have a pre-existing relationship, thereby depriving Faire of commissions.

79.     Due to Tundra's actions, many of Faire's economic relationships with its customers were disrupted.

80.     Tundra intended to disrupt the economic relationships between Faire and both its brand and retailer customers, or else knew that it was likely to disrupt the economic relationships between Faire and its customers.

81.     Tundra's disruption of Faire's economic relationships with its customers was accomplished through wrongful means, including by violation of the Computer Fraud and Abuse Act, California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, and through false and misleading representations that Faire approved of brands providing Faire Direct codes for use by retailers with which they did not have an existing relationship to make commission-free purchases through Wholesale Co-Op.

82.     Tundra's disruption of these economic relationships harmed Faire and caused it to be damaged in an amount to be determined at trial.

83.     Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

## FOURTH CLAIM FOR RELIEF
**(Intentional Interference with Contract)**

84.     Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

85.     Faire has entered into binding and enforceable contractual agreements with its retailer customers.

86.     At all relevant times, Tundra knew about the contracts between Faire and its brand and retailer customers, including as a result of Tundra's investigation of and familiarity with Faire's business, and subsequently through communication from Faire's counsel.

87.     In addition to inducing Faire's retailers to disclose their Faire login credentials in breach of Faire's Terms, Tundra also interfered with section 9.b. of the Faire Wholesale, Inc. Brand Terms of Service, at https://www.faire.com/tos-brand. That section provides that only "existing retailers" are eligible for a waiver of commissions if the Brand is satisfying Faire's current policies.  Tundra's abuse of Faire's Faire Direct program causes Faire brand customers to violate this provision by applying the Faire Direct commission waiver to new users, instead of retailers with whom they have a pre-existing relationship.

88.     Tundra engaged in conduct that prevented or hindered performance of many of those contracts between Faire and its brand and retailer customers.  Tundra interfered with these contracts by, among other things, inducing many of Faire's retailer customers to divulge their confidential account login credentials to Tundra in violation of their agreements with Faire.

89.     Due to Tundra's actions, many of Faire's brand and retailer customers have breached their agreements with Faire.

FENWICK & WEST LLP

COMPLAINT                                              13                                     CASE NO. _____

90.     Tundra intended to prevent or hinder performance of the contracts between Faire and its brand and retailer customers, or else knew that it was likely to prevent or hinder performance of the contracts between Faire and its customers.

91.     Tundra's interference with Faire's contracts with its brand and  retailer customers was accomplished through wrongful means, including by violation of the Computer Fraud and Abuse Act, California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, and through false and misleading representations that Faire approved of brands providing Faire Direct codes for use by retailers with which they did not have an existing relationship to make commission-free purchases through Wholesale Co-Op.

92.     Tundra's prevention or hindrance of performance of these contracts harmed Faire and caused it to be damaged in an amount to be determined at trial.

93.     Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

**FIFTH CLAIM FOR RELIEF**
**(Unlawful, Unfair, And Fraudulent Competition**
**Under California Business & Professions Code § 17200, et seq.)**

94.     Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

95.     Tundra's conduct and acts as described above constitute unlawful, unfair, and/or fraudulent business acts in violation of California Business and Professions Code § 17200, *et seq.*

96.     Tundra's acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to Faire's customers and, and to Tundra's competitors.  Tundra's acts have proximately caused Faire to suffer injury in fact and loss of money in an amount to be proved at trial in its efforts to stop Tundra's circumvention of Faire's technical measures designed to prevent unauthorized access of its computer servers.  Tundra's conduct has caused and continues to cause Faire to suffer irreparable injury that has no adequate remedy at law.

FENWICK & WEST LLP

COMPLAINT                                    14                                    CASE NO. _____

**SIXTH CLAIM FOR RELIEF**

**(False or Misleading Advertising Under Section 43 of the Lanham Act, 15 U.S.C. § 1125)**

97.     Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

98.     Tundra manages, controls, and directs the advertising and promotion of its Wholesale Co-Op business unit.

99.     Tundra is a competitor in the market for online wholesale marketplace platforms.

100.    Tundra makes the false and misleading factual claim in its advertising that Faire was aware of, and approved, Tundra's scheme of abusing the Faire Direct program.

101.    Tundra's false advertising and promotion of Faire's endorsement is likely to deceive brands into believing that Tundra's marketplace is associated or partnered with Faire's marketplace.  The false advertising will also cause brands to believe that Faire has approved Tundra's scheme.

102.    Tundra's conduct constitutes intentional and willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125 (a)(1)(A-B).

103.    As a direct and proximate result of Tundra's conduct, Faire has suffered and will continue to suffer damages in an amount to be determined at trial.

104.    Faire has been, is now, and will be irreparably injured and damaged by Tundra's aforementioned acts, and unless enjoined by the Court, Faire will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Faire has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Faire Wholesale, Inc. prays for judgment against Defendant Tundra Inc. as follows:

1.     Enter judgment for Faire against Tundra;

2.     Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint;

FENWICK & WEST LLP

COMPLAINT                                          15                                          CASE NO. _____

3.     Award Faire monetary damages;

4.     Award Faire its costs, fees, and expenses of this action;

5.     Award Faire pre- and post-judgment interest at the applicable rates on all amounts awarded; and

6.     Order any other such relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated:   May 23, 2023                              FENWICK & WEST LLP


                                                   By:   _s/ Tyler G. Newby_
                                                         Tyler G. Newby

                                                         Attorneys for Plaintiff
                                                         Faire Wholesale, Inc.