Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice* Pending)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice* Pending)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

*Attorneys for Defendant
Tundra Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAIRE WHOLESALE, INC., | Case No.: 3:23-cv-02538-CRB |
| Plaintiff, | **TUNDRA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FAIRE WHOLESALE, INC.'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| TUNDRA INC., | |
| Defendant. | Assigned to: Hon. Charles R. Breyer<br>Date: September 1, 2023<br>Time: 10:00 a.m.<br>Location: Courtroom 6 – 17th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Defendant Tundra Inc. ("Tundra") will and hereby does move this Court to dismiss the complaint of Plaintiff Faire Wholesale, Inc. ("Faire") (ECF No. 1). This Motion shall be heard on September 1, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Charles R. Breyer, United States District Court Judge, in Courtroom 6 of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102. This Motion is made pursuant to Fed. R. Civ. Proc. 8(a), 9(b), and 12(b)(6) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the complete files and records of this action, and such other matters and arguments as may come before the Court at or before any hearing on this Motion.

Tundra seeks an Order dismissing the Complaint in its entirety with prejudice.

Dated: July 6, 2023

Respectfully submitted,

/s/ Chad Hummel
Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice* Pending)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice* Pending)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

*Attorneys for Defendant Tundra Inc.*

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

# **TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT .................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED .....................................................2

III. FACTUAL AND PROCEDURAL BACKGROUND ............................................2

    A. Faire's Allegations. .......................................................................................2

    B. Relevant Procedural Background. .................................................................3

IV. LEGAL STANDARD ..........................................................................................3

V. ARGUMENT .........................................................................................................4

    A. Faire's CFAA Claim Should Be Dismissed for Failure to State a Claim. ..................4

        1. Faire Fails to Identify the Sub-Section of CFAA that
           Tundra Allegedly Violated. ..............................................................4

        2. Faire Fails to Allege Any Violation of CFAA to the
           Extent Tundra Allegedly Copied Publicly Available Data. ...........5

        3. Faire Fails to Allege Any Violation of CFAA to the
           Extent Such Access Occurred Before Faire Sent Its
           Cease-and-Desist Letter. ...................................................................6

    B. Faire's CDAFA Claim Must Also Be Dismissed. ........................................6

        1. CDAFA Claims Rise or Fall With CFAA Claims. ...........................6

        2. Faire Does Not Identify Which Section of CDAFA
            Tundra Allegedly Violated. ..............................................................7

    C. Faire Fails to State Any Claims for Intentional Interference. .......................7

        1. Faire Fails to Plead an Independently Wrongful Act......................8

        2. Faire Fails to Adequately Identify Any Third Parties with
           Whom Faire Had Economic Relationships with Probable
           Future Benefit or Valid Contracts.....................................................9

        3. Faire Does Not Plausibly Allege Economic Harm
           Caused by Tundra's Alleged Interference. .....................................11

    D. Faire Lacks Standing to Bring a UCL Claim and Fails to
        Adequately Plead a Claim Under Any UCL Prong. ....................................12

        1. Faire Lacks Standing to Bring UCL Claim Premised
           on Alleged Misrepresentations .......................................................12

2. Faire's "Shotgun Pleading" Fails..................................................12

3. Faire Fails to State a Claim Under Any UCL Prong. ...................13

    a. "Unlawful": Faire Fails to Adequately Plead
       Any Underlying Violation of Law......................................13

    b. "Unfair": Faire Fails to Plead Any Incipient
       Violation of Antitrust Law or Harm to Competition. .......13

    c. "Fraudulent": Faire Fails to Plead Likely
       Deception by Members of the Public................................14

E. Faire Fails to Allege Facts Sufficient to State a False
   Advertising Claim Under Lanham Act, 15 U.S.C. § 1125(a)......................14

VI. CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................4

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1988) ........................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................4

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ..........................................................................7

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................................1, 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .................................................................................................14

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
    No. 20-CV-04926-CRB, 2022 WL 2222962 (N.D. Cal. June 21, 2022)....................15

*Clark v. Countrywide Home Loans Inc.*,
    732 F. Supp. 2d 1038 (E.D. Cal. 2010).........................................................................1

*Damabeh v. 7-Eleven, Inc.*,
    No. 5:12–CV–1739–LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ..................10

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
    345 F. Supp. 3d 1207 (E.D. Cal. 2018).......................................................................13

*Dreifort v. DJO Glob. Inc.*,
    No. 3:18-CV-02393-BTMKSC, 2019 WL 5578240 (S.D. Cal. Oct. 28, 2019) .....2, 13

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ......................................................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...............................................................................5, 6, 8

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ...................................................................................................8

*Jones v. Cmty. Redevelopment Agency of City of Los Angeles*,
    733 F.2d 646 (9th Cir. 1984) ........................................................................................4

*Kearns v. Ford Motor Co.*,
　　567 F.3d 1120 (9th Cir. 2009) ........................................................................ 12

*Lee v. City of Los Angeles*,
　　250 F.3d 668 (9th Cir. 2001) ............................................................................ 3

*Levitt v. Yelp! Inc.*,
　　765 F.3d 1123 (9th Cir. 2014) ........................................................................ 14

*Maximum Availability Ltd. v. Vision Sols., Inc.*,
　　No. CV 10-1488-GW(RZX), 2010 WL 11508471 (C.D. Cal. Sept. 20, 2010) ...... 2, 15

*Nowak v. Xapo, Inc.*,
　　No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .............. 6, 7

*R Power Biofuels, LLC v. Chemex LLC*,
　　No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) .............. 2, 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
　　442 F.3d 742 (9th Cir. 2006) ............................................................................ 8

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
　　No. 17-CV-0192-AJB NLS, 2017 WL 1365839 (S.D. Cal. Apr. 14, 2017) ............ 13

*Snapkeys, Ltd. v. Google LLC*,
　　No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ............ 12, 14

*Song v. Drenberg*,
　　No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019) .................. 1, 5

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*,
　　231 F. Supp. 3d 606 (E.D. Cal. 2017) ................................................................ 8

*Swearingen v. Late July Snacks LLC*,
　　No. 13-CV-04324-EMC, 2017 WL 1806483 (N.D. Cal. May 5, 2017) .................. 12

*Sybersound Recs., Inc. v. UAV Corp.*,
　　517 F.3d 1137 (9th Cir. 2008) .................................................................. 7, 8, 11

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
　　766 F.3d 1002 (9th Cir. 2014) .......................................................................... 8

*Vess v. Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003) ...................................................................... 4, 15

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
　　No. 21-CV-04895-JST, 2022 WL 20184651 (N.D. Cal. July 7, 2022) .................. 11

**STATUTES & RULES**

15 U.S.C. § 1125 ................................................................................................ 2, 9, 12

15 U.S.C. § 1125(a) ...................................................................................................... 14

18 U.S.C. § 1030 ................................................................................................. *passim*

18 U.S.C. § 1030(a) ....................................................................................................... 4

18 U.S.C. § 1030(a)(2) .................................................................................................. 5

18 U.S.C. § 1030(g) ...................................................................................................... 5

18 U.S.C. § 1030(c)(4)(A)(i) ......................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ................................................................................... 9

Cal. Penal Code § 502 ......................................................................................... *passim*

Fed. R. Civ. P. 8(a), .............................................................................................. 1, 2, 4

Fed. R. Civ. P. 9(b) .......................................................................................... 1, 4, 12, 15

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 4, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

Faire's Complaint against Tundra should be dismissed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) on each of the following grounds.[1]

First, Faire's claims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), the California's Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 ("CDAFA"), and California's Unfair Competition Law (the "UCL") all fail to identify the subparts of the statutes that Faire claims were violated, such that they do not provide notice of the claims as required by Rule 8(a) or sufficient particularity as required by Rule 9(b).  *See Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *4-6 (N.D. Cal. May 6, 2019) (dismissing CFAA claim where plaintiff failed to identify statutory subsection allegedly violated); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1097 (N.D. Cal. 2015) (stating "failure to specify the specific statutory basis" under CDAFA "requires dismissal"); *Clark v. Countrywide Home Loans Inc.*, 732 F. Supp. 2d 1038 (E.D. Cal. 2010) (dismissing UCL claim because allegations failed to specify which of three UCL prongs it was based upon).

Second, Faire cannot state a claim for relief under CFAA and CDAFA to the extent Faire alleges that Tundra accessed publicly available information.  Faire also cannot maintain a claim for relief to the extent it alleges any purported violations by Tundra *before* Faire sent its cease and desist letter to Tundra, which purportedly withdrew Tundra's authorization to access Faire's data.

Third, Faire's claims for tortious interference with prospective economic advantage ("IIPEA") and intentional interference with contractual relations ("IICR") fail.  Faire cannot allege any wrongful violation of a contractual provision by Tundra because the contractual provisions at issue – specifically, Faire's Terms of Service, which prohibit users from sharing their own data – are illegal restraints on trade and unenforceable under California law.  The IIPEA and IICR claims further fail because Faire fails to allege facts showing that Tundra allegedly interfered with Faire's

---

[1] Tundra has filed an antitrust complaint against Faire in this federal district based on Faire's anticompetitive, predatory, and unfair practices designed to eliminate competition in the market for online wholesale marketplaces in which Tundra competes.  *See Tundra Inc. v. Faire Wholesale, Inc.*, No. 3:23-cv-02513-AMO (N.D. Cal.).

relationship with a particular individual, or allege any damages other than those that are purely speculative in nature. *See R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *16-17 (N.D. Cal. Nov. 11, 2016) (dismissing IIPEA and IICR claims for failure to specify third parties to alleged economic relationships and contracts).

Fourth, Faire lacks standing to bring a UCL claim because it has not and cannot allege that Faire itself relied upon any alleged misrepresentation made by Tundra. Its UCL claim further fails because Faire simply provides threadbare recitals of the elements of a UCL cause of action, supported only by the kinds of conclusory statements that district courts in California have rejected before as insufficient "shotgun" pleading. *See Dreifort v. DJO Glob. Inc.*, No. 3:18-CV-02393-BTMKSC, 2019 WL 5578240, at *7 (S.D. Cal. Oct. 28, 2019) (dismissing UCL claim pursuant to Rules 8 and 9 where all prior allegations were incorporated by reference regardless of relevancy).

Fifth, and finally, Faire's false advertising claim under the Lanham Act rests solely upon a single alleged conversation between a worker at Tundra and a solitary brand customer of Faire. This single conversation cannot constitute a "commercial advertisement" as a matter of law. *See Maximum Availability Ltd. v. Vision Sols., Inc.*, No. CV 10-1488-GW(RZX), 2010 WL 11508471, at *7 (C.D. Cal. Sept. 20, 2010) (dismissing false advertising claim for failure to plead facts showing statement was sufficiently disseminated to constitute "advertising").

## II.  STATEMENT OF ISSUES TO BE DECIDED

- Whether all claims should be dismissed pursuant to Fed. R. Civ. Proc. 8(a), 9(b), and 12(b)(6) for failure to plead the elements of the claims with specificity.
- Whether Count V (UCL) should be dismissed for lack of standing because Faire fails to allege that *Faire itself* relied upon any alleged misrepresentation.

## III.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Faire's Allegations.

<u>Faire's Business</u>.  Since 2017, Faire has operated an online wholesale marketplace connecting independent brands and retailers. ECF No. 1 ("Compl.") ¶ 2.  Faire's business model involves connecting brands with retailers in an online marketplace and charging brands commissions for transactions "successful[ly]" completed on its platform. *See id.* ¶ 19.  Pursuant to

Section 9 of Faire's Brand Terms of Service,[2] Faire charges brands a commission of "25% on first orders" and "15% on any subsequent orders[.]" Ex. C to Compl.

Tundra's Business. Tundra also operates an online wholesale marketplace, but unlike Faire, Tundra operates a commission-free platform. In 2022, based on customer input, Tundra launched an innovative new platform, Wholesale Co-op ("WSC"), which allowed retailers to earn cash back on orders transacted on 10+ marketplaces, including Faire. *See* Compl. ¶¶ 5, 28, 30.

Faire's Allegations. The core of Faire's Complaint is that Faire accuses Tundra of improperly soliciting Faire's users' credentials and "schem[ing] to copy data" from Faire's website in connection with WSC. *See id.* ¶ 1. Faire alleges that Tundra "induces those users to breach" provisions of Faire's Terms of Service, such as its requirement to "not disclose [one's password] to any third party." *Id.* ¶¶ 23, 32. Faire further alleges that WSC's cash-back program with retailers "diverts a 15% commission that would have been payable to Faire to [WSC] and the retailer," and WSC allegedly "falsely represents that Faire has approved of this program." *Id.* ¶¶ 34-35.

## B. Relevant Procedural Background.[3]

On May 23, 2023, Tundra filed an antitrust complaint against Faire based fundamentally on Faire's unilateral imposition of terms of service that constitute unreasonable restraints of trade and exclusionary conduct that harms competition in the relevant market for online wholesale marketplaces – in violation of both Sections 1 and 2 of the Sherman Act. Later that same day, Faire filed its Complaint in this action. On June 7, 2023, Tundra filed its administrative motion to consider whether the cases should be related pursuant to Civil L.R. 3-12 and 7-11, which was denied.

## IV. LEGAL STANDARD

A complaint fails to satisfy Rule 8(a) and warrants dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] This Court may consider and rely on Exhibits A and C to Faire's Complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.").
[3] Tundra intends to move to compel arbitration of Faire's claim for intentional interference with contract, pursuant to the mandatory and exclusive obligations to arbitrate in Section 26 of Faire's Terms of Service, which is attached to and relied upon by the Complaint.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a claim with facial plausibility, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts will not accept pleadings that offer mere "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A plaintiff must "raise a right to relief above the speculative level." *Id*. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Courts are not bound to accept as true mere conclusory allegations, unsupported legal conclusions, or threadbare recitals of the elements of the claims. *See id*. at 678-79. Claims may be dismissed under Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). In addition, claims sounding in fraud must satisfying the particularity requirement of Rule 9(b), and "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## V. ARGUMENT

### A. Faire's CFAA Claim Should Be Dismissed for Failure to State a Claim.

#### 1. Faire Fails to Identify the Sub-Section of CFAA that Tundra Allegedly Violated.

Faire's CFAA claim should be dismissed, because it does not identify which subsection(s) of CFAA Tundra allegedly violated. Although the Rules adopt a flexible pleading policy, a complaint must still "give[] fair notice and state[] the elements of the claim plainly and succinctly." *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).

Subsection (a) of CFAA contains several distinct causes of action that can be brought in a civil action. *See* 18 U.S.C. § 1030(a). Furthermore, each CFAA cause of action must be based upon one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). *See* 18 U.S.C. § 1030(g). Given this, there are roughly 65 different statutory provisions that could give rise to a civil action under CFAA. *See Song*, 2019 WL 1998944, at *5. This Court has

4

dismissed CFAA claims for failure to identify the particular section allegedly violated.  *See id.* at *6

("[T]he various subsections of the CFAA statute have different pleading requirements, so without

knowing which subsection or subsections Plaintiffs claim Defendants have violated, [defendant] has

not been put on notice of what he must defendant against.").  Just as in *Song,* Faire fails to specify

the subsection of CFAA allegedly violated.  *See* Compl. ¶¶ 53-62.  Its CFAA claim should be

dismissed on this ground alone.

### 2. Faire Fails to Allege Any Violation of CFAA to the Extent Tundra Allegedly Copied Publicly Available Data.

CFAA prohibits intentionally accessing a computer "without authorization or exceed[ing]

authorized access" and taking specified forbidden actions.  *See* 18 U.S.C. § 1030(a)(2).  Faire

repeatedly describes Tundra's access as "unauthorized,"  *see* Compl. ¶¶ 1, 44, 48, 58, but it does not

explain how the access was "unauthorized," particularly with respect to publicly available

information or any access *before* Faire sent its cease-and-desist letter – enforcement conduct

transparently designed to chill legitimate competition from Tundra and preserve Faire's monopoly

in the relevant market.

Instead, Faire obfuscates the nature of the information that Tundra allegedly copied.

Though Faire claims that Tundra accessed "password-protected" portions of the platform, the

categories of information that Tundra allegedly accessed included publicly available information.

*See id.* ¶ 7.  Faire fails to state a claim for violation of CFAA to the extent such a claim is based on

the copying of publicly available information, because this does not require authorization under

CFAA.  *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022).  In *hiQ Labs,*

the Ninth Circuit upheld a preliminary injunction obtained by hiQ against LinkedIn, forbidding

LinkedIn from denying hiQ access to publicly available information.  *Id.* at 1184.  HiQ, a data

analytics company, had been using automated bots to copy information that LinkedIn users

included on their public profiles to create "people analytics," which it sold to business clients.  *Id.* at

1187.  The Ninth Circuit determined that access of publicly available data will likely not constitute

access "without authorization" under CFAA, and observed that giving companies "free rein" to

decide who can collect and use publicly available data "risks the possible creation of information

monopolies that would disserve the public interest." *Id.* at 1202. Accordingly, Faire cannot state a claim for violation of CFAA to the extent that such a claim is based on the copying of publicly available information.

### 3. Faire Fails to Allege Any Violation of CFAA to the Extent Such Access Occurred Before Faire Sent Its Cease-and-Desist Letter.

Similarly, Faire fails to state a claim for violation of CFAA *before* it sent its cease-and-desist letter. *See* Compl. ¶¶ 56-59. Faire alleges that Tundra launched WSC in 2022 but that it only sent its cease-and-desist letter on February 14, 2023. *See id.* ¶ 50. Faire does not allege, however, how Tundra could have known its alleged access to Faire's data was "unauthorized" prior to the cease-and-desist letter.[4] In *Power Ventures*, the Ninth Circuit reasoned that the users of Facebook gave social media aggregator, Power Ventures, access to Facebook's computers when they allowed Facebook access to their accounts. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1063 (9th Cir. 2016) ("In clicking the 'Yes, I do!' button, Power users took action akin to allowing a friend to use a computer or to log on to an e-mail account. Because Power had at least arguable permission to access Facebook's computers, it did not initially access Facebook's computers 'without authorization' within the meaning of the CFAA."). Here, Faire repeatedly concedes that Faire users provide Tundra with their credentials.[5] *See* Compl. ¶¶ 1, 7, 30-32. Just as in *Power Ventures*, Tundra had permission to access Faire's website via its users. Thus, Faire cannot allege that Tundra's access was "unauthorized" prior to its cease-and-desist letter.

### B. Faire's CDAFA Claim Must Also Be Dismissed.

#### 1. CDAFA Claims Rise or Fall With CFAA Claims.

Faire's CDAFA claim should be dismissed for the same reasons as its CFAA claim. CDAFA is California's state-law analogue to CFAA. *See Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020). Courts in this district have held that CDAFA claims generally "rise or fall with Plaintiffs' CFAA claims because 'the necessary

---

[4] Tundra does not concede that Faire's cease-and-desist letter was a revocation of authority. Tundra maintains that WSC did not improperly access Faire's website and take forbidden actions.
[5] Discovery in this matter will demonstrate that Tundra's actions fall far short of the type of misrepresentations alleged in the *Power Ventures* case.

6

elements of Section 502 do not differ materially from the necessary elements of the CFAA.'" *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) (citation omitted). As such, Faire's CDAFA claim shall be dismissed for the same reasons as the CFAA claim. *See Nowak*, 2020 WL 6822888, at *5 (holding that "the CDAFA claim fails for the same reasons that the CFAA claim does").

### 2. Faire Does Not Identify Which Section of CDAFA Tundra Allegedly Violated.

CDAFA enumerates fourteen different offenses relating to unauthorized computer access. *See* Cal. Penal Code § 502. Failure to specify which provisions of CDAFA are alleged to be violated is grounds for dismissal. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1098 ("Plaintiffs' failure to specify the specific statutory basis for their § 502 action requires dismissal."). Because Faire has not specified the section of CDAFA Tundra has allegedly violated, its CDAFA claim fails for this reason, too.

### C. Faire Fails to State Any Claims for Intentional Interference.

Faire's Complaint alleges that Tundra tortiously interfered with its economic relationships and contracts by "inducing many of Faire's retailer customers to divulge their confidential account login credentials" "in breach of Faire's Terms [of Service]," and "interfer[ing] with section 9.b. of the [Faire] Brand Terms of Service" when "Tundra's abuse of Faire's Faire Direct program encouraged Faire brand customers to violate this provision." Compl. ¶¶ 77-78, 87-88,

To state a cause of action for IIPEA, Faire must plausibly allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). Meanwhile, a claim for IICR is premised on the existence of a valid contract: Faire must plead "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014).

### 1. Faire Fails to Plead an Independently Wrongful Act.

Faire has taken the position that its terms of service are terminable at will.[6]  Where the contract at issue is terminable at will by either party to the contract, an IICR claim in California also requires pleading an independently wrongful act beyond mere interference.  *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1145 (2020).[7]  An IIPEA claim similarly requires an intentional wrongful act designed to disrupt the relationship.  *Sybersound*, 517 F.3d at 1151.  Here, any alleged interference by Tundra with the contractual provisions at issue was not wrongful; instead, such actions were justified as grounded in a legitimate and good-faith business purpose, given the unenforceable and anticompetitive nature of those provisions.  *See hiQ Labs*, 31 F.4th at 1193 (applying balancing test to determine whether intentional interference is justifiable, where considerations include "whether the conduct is 'within the realm of fair competition'" and "'determinative question' is whether the business interest is pretextual or 'asserted in good faith'").  Moreover, the contractual provisions are effectively non-compete provisions, which have been found to be unenforceable as a matter of law in California in the context of employment agreements.  *See Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 617 (E.D. Cal. 2017) (dismissing IICR claim where underlying employment contract contained non-compete clause not enforceable under California law).

---

[6] *See* Faire's Motion to Dismiss at 8, 10 (Case No. 3:23-cv-02513-AMO, ECF No. 27); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 742, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").
[7] For the reasons explained in Tundra's Opposition to Faire's Motion to Dismiss the antitrust claims (Case No. 3:23-cv-02513-AMO, ECF No. 33), nothing in the termination clause actually states or suggests that leaving Faire's platform terminates *exclusivity*.  Moreover, the fact that the contracts are terminable by their terms does not render them immune from antitrust scrutiny as de facto exclusive arrangements that unreasonably restrain trade and constitute illegal exclusionary conduct. Whether or not brands or retailers could theoretically unilaterally opt to leave the Faire platform does not eliminate the practical effects of the exclusivity provisions.  Faire's express terms of use still require those businesses with which the departed participant transacted on the Faire platform, but who remained on the platform, to do business with them ONLY on Faire.  In other words, there are material economic and practical impediments to leaving the Faire marketplace that render the termination option essentially illusory for antitrust purposes.

Faire makes the bare allegation that Tundra's interference "was accomplished through wrongful means, including by violation of [CFAA], [CDAFA], and through false and misleading representations that Faire approved of brands providing Faire Direct codes" to certain retailers,[8] Compl. ¶¶ 81, 91, but Faire fails to adequately plead any facts underlying allegedly wrongful acts for all the reasons explained in this Motion.

### 2. Faire Fails to Adequately Identify Any Third Parties with Whom Faire Had Economic Relationships with Probable Future Benefit or Valid Contracts.

Nowhere in the Complaint does Faire sufficiently identify the third parties with whom Faire had the economic relationships or contracts that were subject to Tundra's alleged interference. The Complaint simply alleges that "Faire has economic relationships with its *brand and retailer customers*," and that "Faire has entered into binding and enforceable contractual agreements with its *retailer customers*." *Id.* ¶¶ 75, 85 (emphasis added). Elsewhere, Faire alleges it entered contracts pursuant to the Terms of Service, which, by its own terms, may include "any visitor of the Site and/or the Application and any user of the Services, including any Member." *See id.* ¶ 22 ("To list or buy products on the Faire platform, brands and retailers must first agree to Faire's Terms of Service."). Faire then conclusorily alleges that this unnamed number of "economic relationships with its brand and retailer customers . . . were likely to benefit Faire." *See id.* ¶ 75. The Complaint does little else to specify which or how many such relationships and contracts were allegedly harmed, except to say "many" of them: "Due to Tundra's actions, many of Faire's economic relationships with its customers were disrupted" and "many of Faire's brand and retailer customers have breached their agreements with Faire." *Id.* ¶¶ 79, 89; *see also id.* ¶ 77 ("Tundra interfered . . . by, among other things, inducing many of Faire's retailer customers . . . "); *id.* ¶ 88 ("Tundra engaged in conduct that prevented or hindered performance of many of those contracts . . .").[9]

---

[8] Faire's assertion of "false and misleading representations" appears to be a reference to its sixth cause of action for false or misleading advertising under the Lanham Act, 15 U.S.C. § 1125, and/or its fifth cause of action under Cal. Bus. & Prof. Code § 17200.

[9] While the Complaint contains an allegation about one conversation between "a Wholesale Co-Op 'Supplier Development' employee" and "a Faire brand user ('Brand A')," Compl. ¶ 35, Faire does not allege the existence of either an economic relationship or valid contract with Brand A, or that an economic relationship or valid contract between Faire and Brand A was the subject of tortious interference.

In *R Power Biofuels*, the Court dismissed IIPEA and IICR claims because "it is essential [to an IIPEA claim] that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual." 2016 WL 6663002, at *16. "[W]hile the actual name of the third party need not be provided, the plaintiff must allege a relationship with 'a specific, albeit unnamed' third party." *Id.* (quoting *Ramona Manor Convalescent Hosp. v. Care Enterps.*, 177 Cal. App. 3d 1120, 1133 (1986)); *see also Damabeh v. 7-Eleven, Inc.*, No. 5:12–CV–1739–LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing IIPEA claim where "Plaintiff allege[d] that Defendant interfered 'with [Plaintiff's] employees and customers'" but did "not specifically identify any of these employees and customers"). This lack of specificity is likewise fatal to IICR claims "where no specific parties to the contracts were alleged." *See id.* at *17. The Court dismissed the IIPEA claim because the plaintiff "solely allege[d] that it has an economic relationship with 'major consumers of biodiesel,' and [did] not provide details about 'specific' companies. Indeed, from Plaintiff's allegations it [was] impossible to even tell how many such relationships existed." *Id.* As to the IICR claim, the plaintiff "plead[ed] that '[it] entered into several agreements with major oil companies whereby [it] would sell and the companies would purchase . . . .'"; the Court likewise dismissed because the plaintiff "allege[d] a class of companies rather than specific companies and because it is impossible to even determine how many contracts are at issue[.]" *Id.*

Similar to the plaintiff in *R Power Biofuels* who merely alleged "several agreements with major oil companies," Faire alleges economic relationships and contracts with "its brand and retailer customers," *see, e.g.*, Compl. ¶¶ 75, 85, and that "many" of these relationships and contracts were subject to interference, *see, e.g.*, *id.* ¶¶ 79, 89. This generalized identification of "a class of companies rather than specific companies," without "details about 'specific' companies," is exactly the type of vague allegation that this Court does not tolerate. *See R Power Biofuels*, 2016 WL 6663002, at *17. Indeed, Faire's Complaint makes it "impossible to even tell how many such relationships existed" or "how many contracts are at issue." *See id.* For these reasons, Faire's IIPEA and IICR claims should be dismissed.

### 3. Faire Does Not Plausibly Allege Economic Harm Caused by Tundra's Alleged Interference.

Faire fails to adequately plead damages caused by Tundra's purported interference, a required element of both tortious interference claims. An IIPEA claim requires showing "economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound*, 517 F.3d at 1151. An IICR claim also requires a showing of resulting damage, which courts in this district have interpreted similarly as "suffer[ing] economic damage because of [defendant's] interference with [plaintiff's] contractual relationships," *see Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, No. 21-CV-04895-JST, 2022 WL 20184651, at *7 (N.D. Cal. July 7, 2022).

The allegations in the Complaint fall well short of meeting this standard. Faire merely restates the elements of the claims in conclusory fashion, alleging that "Tundra's disruption of these economic relationships" and "prevention or hindrance of performance of these contracts harmed Faire and caused it to be damaged in an amount to be determined at trial." Compl. ¶¶ 82, 92. In another allegation, Faire asserts speculative harm to its users, business, and reputation that might result "if Tundra's system is breached" and "Faire user credentials Tundra stores can be stolen or used," *id.* ¶ 42, which is not sufficient to show the requisite economic damage. *See Volkswagen*, 2022 WL 20184651, at *7 (dismissing IICR claim where plaintiff's allegation that "breaches have and will harm its contractual relationships by exposing its customers and users to malfeasance by third parties" was found to be "too conclusory and speculative" to plead resulting damage) (alterations omitted). In yet another allegation, Faire contends that it "has expended more than $5,000 investigating and addressing Tundra's unauthorized access and copying of data from the Faire platform via Wholesale Co-Op." Compl. ¶ 44. Faire does not and cannot plausibly allege that the expense was caused by Tundra's alleged interference with *contractual relationships* between Faire and retailers. *See Volkswagen*, 2022 WL 20184651, at *7 (also citing *Infectolab Ams. LLC v. ArminLabs GmbH*, No. 20-CV-03318-VKD, 2021 WL 292182, at *5 (N.D. Cal. Jan. 28, 2021) ("Infectolab does not allege sufficient facts demonstrating how its relationship with AID (contractual or otherwise) has been affected, if at all, to Infectolab's economic detriment.")).

**D.  Faire Lacks Standing to Bring a UCL Claim and Fails to Adequately Plead a Claim Under Any UCL Prong.**

The Complaint is even more lacking as it pertains to Faire's claim under the UCL.  The UCL prohibits business practices that are either (1) "unlawful," (2) "unfair," or (3) "fraudulent," where each of these prongs is "a separate and distinct theory of liability" with its own pleading requirements.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

**1.  Faire Lacks Standing to Bring UCL Claim Premised on Alleged Misrepresentations.**

Standing under the UCL "is limited to plaintiffs who have 'suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'  To satisfy this standard, a plaintiff must demonstrate that she actually relied upon the allegedly deceptive or misleading statements." *Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *6 (N.D. Cal. Oct. 30, 2020) (quoting Cal. Bus. & Prof. Code § 17204).  Actual reliance must be demonstrated "regardless of which prong of the UCL a plaintiff asserts, when the basis of a plaintiff's UCL claim is a claim of misrepresentation[.]"  *Swearingen v. Late July Snacks LLC*, No. 13-CV-04324-EMC, 2017 WL 1806483, at *4 (N.D. Cal. May 5, 2017) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326, 327 n.10 (2011)).  Here, the Complaint alleges that Tundra "falsely represents that Faire has approved" of Tundra's WSC platform, Compl. ¶ 35, and points to this as a basis for its IIPEA, IICR, and Lanham Act claims.  Nowhere in the Complaint does Faire allege that Faire itself actually relied on such a statement or suffered economic injury incurred as a result of that reliance.  Accordingly, Faire's UCL claim should be dismissed for lack of standing to the extent it is premised on this theory of misrepresentation.

**2.  Faire's "Shotgun Pleading" Fails.**

Assuming, *arguendo*, that Faire has standing, its UCL claim would still fail.  To the extent Faire relies on allegedly fraudulent conduct as the basis for its claim, Faire must meet Rule 9(b)'s particularity requirements.  *See Kearns*, 567 F.3d at 1126-27 (affirming dismissal of UCL claims for failure to meet Rule 9(b) standard).  But Faire makes no attempt to identify which prongs of the UCL are applicable to its claim or which factual allegations purportedly support its claim under any

prongs.  Instead, Faire "repeats and incorporates by reference each of the allegations set forth in the paragraphs above" and states that the "conduct and acts as described above constitute unlawful, unfair, and/or fraudulent business acts."  Compl. ¶¶ 94-95.  Courts in this circuit have routinely found such "shotgun pleading" of UCL claims to be insufficient to meet Rule 8 standards, let alone the heightened pleading standards of Rule 9.  *See Dreifort*, 2019 WL 5578240, at *7 ("The first paragraph of Plaintiff's UCL claim 'repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.' The remaining paragraphs allege the elements of a UCL claim in a conclusory manner and without any factual support. The UCL claim thus fails under Rule 8 and, necessarily, under Rule 9.") (internal citations omitted); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1239 & nn.21-22 (E.D. Cal. 2018) ("Although other paragraphs in the Complaint may indicate 'fraudulent' conduct, the shotgun incorporation by reference of literally every prior allegation that preceded the UCL claim is improper and does not meet Rule 8 standards, let alone Rule 9 standards.").

### 3. Faire Fails to State a Claim Under Any UCL Prong.

Faire's UCL claim additionally fails under all prongs for the reasons set forth.

#### a. "Unlawful": Faire Fails to Adequately Plead Any Underlying Violation of Law.

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Satmodo, LLC v. Whenever Commc'ns, LLC*, No. 17-CV-0192-AJB NLS, 2017 WL 1365839, at *7 (S.D. Cal. Apr. 14, 2017) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  Here, Faire might argue that its shotgun incorporation of prior allegations into its UCL claim "borrows" the four preceding claims for CFAA and CDAFA violations, IIPEA, and IICR.  However, because Faire fails to adequately plead any of these underlying claims for all the reasons explained in this Motion, a UCL claim under the "unlawful" prong likewise fails.

#### b. "Unfair": Faire Fails to Plead Any Incipient Violation of Antitrust Law or Harm to Competition.

To state a claim under the "unfair" prong of the UCL, Faire must allege that that a business

practice by Tundra "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *See Cel-Tech*, 20 Cal. 4th at 187. "In order to allege that conduct 'significantly threatens or harms competition,' a plaintiff must allege harm to the market as a whole." *Snapkeys*, 2020 WL 6381354, at *3. Faire's sole allegation in support of this requirement simply recites this element of the claim, stating that "Tundra's acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to Faire's customers, and, and [sic] to Tundra's competitors," Compl. ¶ 96. Faire does not specify which Tundra business practice purportedly causes harm to competition. Courts in this circuit have found even more detailed allegations of competitive harm to be insufficiently conclusory, dismissing UCL "unfair" prong claims on that independent basis. *See, e.g.*, *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014); *Snapkeys*, 2020 WL 6381354, at *3-5. Thus, a UCL claim under the "unfair" prong also fails.

### c. "Fraudulent": Faire Fails to Plead Likely Deception by Members of the Public.

A business practice is "fraudulent" in violation of the UCL if "*members of the public* are likely [to be] deceived by the practice." *Snapkeys*, 2020 WL 6381354, at *6 (emphasis added). Even with Faire's shotgun incorporation of prior allegations by reference, Faire's UCL claim fails to offer even one plausible allegation that any particular Tundra business practice is likely to deceive "members of the public." Accordingly, a UCL claim under the "fraudulent" prong fails.

### E. Faire Fails to Allege Facts Sufficient to State a False Advertising Claim Under Lanham Act, 15 U.S.C. § 1125(a).

Faire's final claim alleges false advertising by Tundra in violation of the Lanham Act, 15 U.S.C. § 1125(a), which requires five elements: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 20-CV-04926-CRB, 2022 WL

2222962, at *5 (N.D. Cal. June 21, 2022) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  Additionally, where, as in here, the claim is "predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation," this Court and other courts in this district have held that Rule 9(b) is applicable.  *See id.*

In the instant case, Faire alleges that "Tundra makes the false and misleading factual claim *in its advertising* that Faire was aware of, and approved, Tundra's scheme of abusing the Faire Direct program," which it also alleges were "intentional and willful false statements."  Compl. ¶¶ 100, 102 (emphasis added).  This is apparently a generalization extrapolated, without explanation, from one alleged conversation "on December 15, 2022, [in which] a Wholesale Co-Op 'Supplier Development' employee told a Faire brand user ('Brand A') that Faire had approved of this scheme and that it was above board."  *Id.* ¶ 35.  While Faire offers the alleged "who, what, [and] when," *see Vess*, 317 F.3d at 1106, for one conversation, it makes no other factual allegations as to where or how that conversation took place, how the alleged statement was likely to influence any actual *purchasing decision*, given that the supplier is not making a purchase, or any of the circumstances of any other conversations or purported statements made in Tundra's "advertising."  Without more, the Complaint does not, and cannot, plausibly allege that the purported statement, if made, constituted "commercial advertisement," or was caused by Tundra "to enter interstate commerce."  *See Maximum Availability Ltd.*, 2010 WL 11508471, at *7 (false advertising claim failed to allege widespread use of allegedly misleading statement, such that it could be considered advertising, and sufficient facts for the court to infer that defendants caused the statement to enter interstate commerce).  Accordingly, Faire's Lanham Act claim should be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, Tundra respectfully requests that the Court dismiss Faire's Complaint in its entirety without leave to amend pursuant to Rule 8(a), Rule 9(b), and Rule 12(b)(6).

SIDLEY AUSTIN LLP

Dated: July 6, 2023

By:  */s/ Chad Hummel*
Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice* Pending)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice* Pending)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

*Attorneys for Defendant Tundra Inc.*