1  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
2  MATTHEW BECKER (CSB No. 291865)
   mbecker@fenwick.com
3  MARY GRIFFIN (CSB No. 324073)
   mgriffin@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone:     415.875.2300
6  Facsimile:     415.281.1350

7  Attorneys for Plaintiff
   Faire Wholesale, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12  FAIRE WHOLESALE, INC.,                    Case No.: 3:23-cv-02538-CRB

13              Plaintiff,                    **FIRST AMENDED COMPLAINT FOR:**

14       v.                                   **VIOLATION OF THE COMPUTER
                                              FRAUD AND ABUSE ACT, 18 U.S.C. §
15  TUNDRA INC.,                              1030**

16              Defendant.                    **VIOLATIONS OF CALIFORNIA
                                              PENAL CODE SEC. 502**
17
                                              **TORTIOUS INTERFERENCE WITH
18                                            PROSPECTIVE ECONOMIC
                                              ADVANTAGE**
19
                                              **INTENTIONAL INTERFERENCE
20                                            WITH CONTRACT**

21                                            **VIOLATION OF CALIFORNIA BUS. &
                                              PROF. CODE § 17200, ET SEQ.**
22
                                              **VIOLATION OF THE LANHAM ACT,
23                                            15 U.S.C. § 1125**

24                                            **JURY TRIAL DEMANDED**

25

26

27

28

FIRST AMENDED COMPLAINT                          CASE NO. ——— 3:23-CV-02538-CRB

1    Plaintiff Faire Wholesale, Inc. brings this action against Defendant Tundra Inc. and

2   alleges as follows:

3                                    **INTRODUCTION**

4    1.    Faire brings this action to stop Tundra's unauthorized solicitation, storage, and use

5   of Faire's users' credentials for logging into Faire's online marketplace and Tundra's use of those

6   credentials to gain access to non-public portions of Faire's computer network without Faire's

7   authorization.  Despite Faire's demands that Tundra stop its unauthorized access, Tundra

8   continues to carry out this scheme to access and copy data from Faire's computer systems for

9   Tundra's commercial benefit.

10   2.    Founded in 2017, Faire operates a curated online wholesale marketplace platform

11  that connects independent brands and retailers, allowing them to compete more effectively with

12  both big box brick-and-mortar stores as well as online retail giants.  Faire specializes in working

13  with small and medium-sized businesses and structures its commission so that Faire only gets

14  paid when these businesses make new and successful connections.  Over 350,000 North

15  American retailers have used Faire's platform to find and connect with brands, discover new

16  products, and grow their businesses.

17   3.    To list wholesale products for sale on Faire, brands must create a Faire account

18  and login to that account with a username and password.  Similarly, to search the complete

19  catalog of wholesale products offered by brands for sale on Faire and place orders, retailers must

20  create a Faire account and login to that account with a username and password.  It is not possible

21  to search the complete catalog of wholesale products on Faire without logging into a password

22  protected account.

23   4.    Tundra operateshas operated what it describeshas described as "one of the biggest

24  online wholesale marketplaces."[1]

25   5.    In 2022, Tundra launched a new line of business named Wholesale Co-Op, which

26  it described in a June 9, 2022 blog post as:

27

28  _____

[1] https://www.tundra.com/content/wholesale-coop-launch (last visited May 23July 19, 2023).

FENWICK & WEST LLP

1

2

3

4

> "A one-stop, members-only comparison tool that delivers unprecedented visibility on sales, deals, prices, lead times, in-stock availability, and minimums aggregated from over 100,000 brands, 10+ major wholesale marketplaces, and 30+ major distributors. That means visibility across Faire, Tundra, Abound, JuniperMarket, FashionGo, Mable, Handshake, Creoate, Bulletin, Orangeshine and more *all in one place*."[2]

5      6.   Tundra recently announced on its website that it would shut down the Tundra

6   wholesale marketplace at the end of July 2023, but that it would continue to operate the

7   Wholesale Co-op platform.[3]

8      7.   6. Faire does not make publicly available the prices, lead times, in-stock

9   availability or other inventory and pricing information of goods offered by brands on the Faire

10   platform.  Nor does Faire make publicly available the contact information for buyers or

11   representatives for retailers.  Only retailers or brands who have created accounts on Faire may

12   access this information by logging into the Faire platform using a username and password.

13      8.   7. To obtain wholesale prices, inventory, pricing, retailers' orders, shopping carts,

14   retailer representative contact details, and other non-public information from Faire, Wholesale

15   Co-Op induces Faire retailers and brands to divulge their Faire login credentials to Tundra.  To

16   use Wholesale Co-Op for Faire purchases or sales, retailers and/or brands must divulge their

17   Faire login credentials by logging into Faire through the Wholesale Co-Op platform.  Wholesale

18   Co-Op then uses those login credentials to access password-protected portions of the Faire

19   platform, copy non-public information from Faire's protected computers, and otherwise use

20   password-protected portions of the Faire platform, all without Faire's authorization.

21      9.   8. Tundra's actions compromise the security of the Faire platform and user

22   accounts.  Anyone with access to Tundra's Wholesale Co-Op user account data—whether an

23   insider or a hacker—would be able to access the login credentials of hundreds, if not thousands of

24   Faire retailers and brands that Tundra has compiled.  Faire has demanded that Tundra stop

25   accessing its platform, but it refuses.

26

27

28
[2] https://www.tundra.com/content/wholesale-coop-launch (last visited May 23July 19, 2023) (emphasis in original).
[3] https://www.tundra.com/ (last visited July 19, 2023).

FENWICK & WEST LLP

1    10.    Faire has also implemented technological measures to try to stop Tundra from

2    accessing and scraping the Faire platform without permission, but, on information and belief,

3    Tundra has devised means to circumvent Faire's security tools and continues to access Faire

4    retailer and brand accounts without Faire's authorization.

5    11.    9. Tundra has also interfered with Faire's business and contractual agreements,

6    including by inducing Faire's users to breach their agreements with Faire in order to use

7    Wholesale Co-Op, and by causing Faire users to be locked out of their accounts after Faire

8    implemented technical measures to detect and prevent logins by Wholesale Co-Op using

9    legitimate credentials that did not appear to originate from the customer itself, or otherwise

10   creating turmoil and customer confusion that Faire must respond to.  Faire has identified at least

11   seven commonalities that are present when Wholesale Co-Op attempts to access the Faire

12   Platform by posing as a Faire brand or retailer.  Using these commonalities, Faire has identified

13   thousands of unauthorized accesses and login attempts by Wholesale Co-Op posing as hundreds

14   of different Faire brands and retailers.

15   12.    10. Because Tundra flatly refuses to modify its behavior and cease its harmful

16   business practices, Faire brings this action to make Tundra compete fairly in the market.

17                                              **PARTIES**

18   13.    11. Faire is a Delaware corporation with its principal place of business at 100

19   Potrero Ave., San Francisco, CA 94103.

20   14.    12. Tundra is a Delaware corporation with that listed its principal place of business

21   at on its website as 116 Sheridan Ave., San Francisco, CA 94129.  Tundra operates Wholesale

22   Co-Op, which identifies is located at the same address principal place of business as Portsmouth,

23   NH.

24                                            **JURISDICTION**

25   15.    13. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338

26   because this action alleges violations of federal statutes, the Computer Fraud and Abuse Act (18

27   U.S.C. § 1030) and the Lanham Act (15 U.S.C. § 1125).  The Court has supplemental jurisdiction

28   over the remaining claims under 28 U.S.C. § 1367.

FENWICK & WEST LLP

16.   14. This Court has personal jurisdiction over Tundra because it is was headquartered in this district during the relevant time period, and because it directed its business activities toward and conducts business with consumers within this district.  Furthermore, among other acts, Tundra unlawfully accessed and used Plaintiff's computers, data, and servers located in this district.

17.   15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant Tundra is a resident of this district, and a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this district.  Among other acts, Tundra unlawfully accessed, altered, and/or used Faire's computers, data, and servers in this district.

## FACTUAL ALLEGATIONS

18.   16. Faire operates an online wholesale marketplace that connects independent retailers and brands around the world.

19.   17. Faire offers several benefits to retailers, including net 60 payment terms and free returns.  Faire's net 60 payment terms enable approved retailers to place orders and pay up to 60 days later, helping retailers better manage their cash flow.  Retailers also benefit from free returns on opening orders (i.e., when they order from a brand for the first time), which helps reduce their inventory risk.

20.   18. Most Faire retailers source inventory through other channels, in addition to Faire. These other channels include other business-to-business marketplaces, and the use of sales representatives, distributors, and trade shows.  Retailers also place wholesale orders directly with brands.

21.   19. Among the incentives for small businesses to make deals on Faire instead of through trade shows or other online marketplaces is the Faire Direct program.  Under this program, Faire provides brands with a personalized link that they can use to invite retailers to order from their shop on Faire.  When retailers order through this link, brands pay 0% commission on these orders.  This can be distinguished from ordinary sales on the Faire Marketplace where the brand pays a commission on successful transactions.

## I.    FAIRE STRIVES TO MAINTAIN THE SECURITY OF ITS PLATFORM

22.    20. Faire takes seriously the security of its platform and its users.  Faire's anti-abuse team works constantly to ensure that a user logged into the Faire platform is the valid owner of the credentials they used to access the platform.  Faire routinely improves and updates its processes to prevent unauthorized actors from accessing Faire accounts or secured portions of the Faire platform, scraping information from password-restricted, non-public areas of the platform, and unauthorized automated traffic including credential stuffing attacks or the use of bots and other such tools.

23.    21. As part of its security protocols, Faire requires users of its platform to agree to abide by certain rules.

24.    22. To list or buy products on the Faire platform, brands and retailers must first agree to Faire's Terms of Service,[34] which includes various provisions governing the use of Faire's services.

25.    23. One provision of Faire's Terms of Service is a requirement in Section 4 that users must protect the passwords to their accounts and may not disclose them to third parties: "You are responsible for safeguarding your password and you agree that you will not disclose it to any third party."

26.    24. Faire's Terms of Service also prohibit copying or disseminating the material on the Faire platform, at Section 7.b.: "you shall not copy, reproduce, disseminate, distribute, modify, adapt, create derivative works of, publicly display, publicly perform, stream, broadcast, republish, download, disassemble, reverse compile, reverse engineer, store, post or transmit any of the material or content on our Services . . . ."

27.    25. Section 7.b. of the Faire Terms of Service likewise prohibit interfering with or circumventing any feature on the Faire platform, in particular security or access control: "you shall not interfere with or circumvent any feature of the Services, including any security or access control mechanism, in whole or in part, except as permitted in these Terms."

---

[34] Available at ~~https://www.faire.com/tos~~https://www.faire.com/tos.  A copy of the Faire Terms of Service is attached as **Exhibit A**.

1    28.    26. Section 14 of the Faire Terms of Service also setsets out a number of

2    restrictions on the use of the Faire platform, including using, mirroring, or framing the Faire

3    platform without Faire's express written consent (Section 14.b.); breaching any security or

4    authentication measures, or testing the vulnerability of the Faire platform (Section 14.d);

5    circumventing any technological measure to protect the Faire platform (Section 14.e.); attempting

6    to use software or tools such as robots or crawlers to access or download material from the Faire

7    platform (Section 14.f.); impersonate or misrepresent your affiliation with any person or entity

8    (Section 14.n.); or encouraging or enabling any third party to do any of the foregoing prohibited

9    activities (Section 14.p).

10   **II.    TUNDRA'S UNAUTHORIZED ACCESS TO FAIRE'S SERVICE AND FALSE
        REPRESENTATIONS IN FURTHERANCE OF ITS SCHEME TO DIVERT
11      FAIRE COMMISSION REVENUE TO ITSELF**

12   29.    27. Like Faire, Tundra also operates an online marketplace for brands and retailers

13   to connect and do business.  Although both businesses have competed over roughly the same

14   period, Tundra has been less successful at attracting users.

15   30.    28. InBeginning in 2022, Tundra attempted to grow the number of retailers using

16   its service by launching Wholesale Co-Op, a business line that solicits retailers to conduct their

17   transactions on Faire and other marketplaces through the Wholesale Co-Op platform.

18   31.    29. On information and belief, Tundra's business model for its Wholesale Co-Op

19   business line is based on arbitrage, wherein Wholesale Co-Op convinces brands to misuse Faire's

20   incentive program in order, known as "Faire Direct," to line Tundra's own pockets or attract

21   patrons to its business.

22   32.    30. To encourageentice retailers to join Wholesale Co-Op and disclose their Faire

23   login credentials, Wholesale Co-Op promises to pay the retailers up to 10% "cash back" on every

24   purchase they make through Wholesale Co-Op from a brand listed on Faire.

25   33.    31. After a retailer creates a Wholesale Co-Op account, Wholesale Co-Op

26   encourages the retailer to disclose its Faire login credentials on the following screen:

27

28



34.   ~~32.~~ By incentivizing Faire's retailer users to disclose their Faire login credentials, Wholesale Co-Op induces those users to breach their agreement with Faire not to disclose their passwords to third parties.

35.   ~~33.~~ On information and belief, to enable and even profit from this cash back program, Wholesale Co-Op abuses Faire's Faire Direct program. Wholesale Co-Op directly solicits brands that sell on Faire to provide Faire Direct links to retailers that have registered with Wholesale Co-Op.  These Faire Direct links enable the retailers to purchase products from brands on Faire's marketplace without the brand paying a commission to Faire.  Wholesale Co-Op ~~encourages~~lures brands to provide their Faire Direct links by promising to promote their brands to new retailers and give them greater exposure to the retailers who are members of Wholesale

Fenwick & West LLP

Co-Op.  Wholesale Co-Op then charges the brand what it describes in email solicitations as a "fee that replaces the marketplace commission for new retailers to a marketplace and their reorders."

36.  ~~34.~~ On information and belief, Wholesale Co-Op charges brands that participate in this program a fee of 15% of sales to new retailers who make their purchases from the Faire marketplace through Wholesale Co-Op.  Wholesale Co-Op then pays a percentage of this fee as "cash back" to the retailer and pockets the rest for itself.  Thus, Wholesale Co-Op diverts a 15% commission that would have been payable to Faire to itself and kicks a portion back to the retailer.

37.  ~~35. When soliciting~~To convince brands~~,~~ that sell on Faire that this scheme is legitimate, Tundra's Wholesale Co-Op falsely represents that Faire has approved of this program.  Specifically, on December 15, 2022, a Tundra Wholesale Co-Op "Supplier Development" employee told a Faire brand user ("Brand A") that Faire had approved of this scheme and that it was above board.  In fact, Faire only recently learned of this program and has never authorized or endorsed it.

38.  On information and belief, Tundra's December 15, 2022 Wholesale Co-Op communication with Brand A was part of an advertising campaign that included emails and direct sales phone calls targeting hundreds of brands that sell on Faire, including the top selling brands.

39.  ~~36.~~ Wholesale Co-Op's arbitrage and misappropriation of Faire commissions through this scheme is only possible if Wholesale Co-Op has access to retailers' Faire login credentials so that the retailers can search for products and make purchases from the Faire marketplace through Wholesale Co-Op.  One method Tundra uses to collect Faire login credentials is by enticing businesses to log into their Faire account through Wholesale Co-Op.  Tundra then caches the user session when the Faire user logs in.

40.  ~~37.~~After collecting Faire users' login credentials, Tundra employs automated processes to use the ~~Faire retailers'~~ credentials to access the retailer's Faire account and copy information and content from secured portions of the Faire platform—~~in the process circumventing~~.

FENWICK & WEST LLP

41.     Faire has identified at least seven commonalities that are present when Wholesale Co-Op attempts to access the Faire Platform by posing as a Faire brand or retailer.  These commonalities comprise a "fingerprint" that allows Faire to identify instances where Wholesale Co-Op is behind a login and login attempt instead of a bona fide Faire user.  By evaluating instances matching this fingerprint, Faire has identified thousands of accesses and login attempts by Wholesale Co-Op posing as hundreds of different Faire brands and retailers.

42.     On information and belief, Tundra circumvents Faire's security features by copying cookie values and deploying a wide range of user agents that deliberately misrepresent their identities and proxying requests through virtual private network (VPN) connections and other proxy sites to mask the source of logins to Faire users' accounts.

43.     38. By using these measures to bypass Faire's security features, Tundra apparently knows that what it is doing is wrong, and being unable to accomplish its ends openly, has resorted to subterfuge and technological circumvention.

44.     39. By causing Faire users to assist Tundra in its circumvention, unpermitted access, scraping, and other misuse of the Faire platform, Tundra causes those users to breach multiple provisions in Section 14 of Faire's Terms of Service, identified above.

45.     40. Tundra's actions also violate several provisions of Faire's Terms of Service, including the restrictions in Section 7.b., and many of the prohibited uses in Section 14.

46.     41. Tundra's storage and use of Faire users' account credentials without Faire's consent jeopardize the security of the Faire platform.

47.     42. For example, if Tundra's system is breached, then the Faire user credentials Tundra stores can be stolen or used.  Such a breach may not only result in harm to those users, but also harm to Faire's business and reputation.

48.     43. Some of the tools that Faire has had to deploy to address this unauthorized access and scraping has the unfortunate effect of slowing access to Faire by legitimate users.

49.     44. Faire has expended significantly more than $5,000 investigating and addressing Tundra's unauthorized access and copying of data from the Faire platform via

FENWICK & WEST LLP

1   Wholesale Co-Op.  This includes tens of thousands of dollars spent on intrusion and bot

2   protection services and software implemented in response to Tundra's unauthorized access, in

3   addition to substantial employee time spent addressing these issues, user friction costs resulting

4   from implementing anti-abuse tools that cause users and potential users to have a harder time

5   logging into or signing up for Faire, and lost opportunity costs from devoting scarce employee

6   time to engineering solutions to address Tundra's intrusions.

7        50.    45. Faire retailers have complained to Faire's customer service agents about login

8   issues and notices of potential unauthorized login attempts that, upon information and belief,

9   were caused by Tundra's use of their account credentials to access the Faire platform through

10  Tundra's Wholesale Co-Op business unit.

11       51.    46. Faire has deployed numerous technological measures to try to stop Tundra

12  from accessing and scraping the Faire platform without permission, but Tundra has devised

13  means to circumvent Faire's security tools.

14       52.    47. As part of its approach to circumvent Faire's security tools, Tundra uses

15  automated means to access the password-protected portions of the Faire platform from a wide

16  range of IP addresses in different geographic locations to mask the true origin of those login

17  attempts.

18       53.    48. Tundra also uses a wide range of user agents, including user agents for

19  browsers that are years out of date to gain unauthorized access to Faire's protected computer

20  servers.

21       54.    49. The methods by which Tundra accesses the Faire platform via Wholesale

22  Co-Op, including by supplying a misleading user agent and proxying its activity through a virtual

23  private network (VPN), suggests that it uses software and tools specifically configured to

24  misrepresent itself to appear as if the activity was coming from an ordinary (human) Faire user.

25       55.    Once Tundra accesses the Faire platform via Wholesale Co-Op, it obtains

26  password-protected information and functionality, including the ability to place orders, that is not

27  publicly available on the Faire site.

28

FENWICK & WEST LLP

56.     On information and belief, among the non-public information that Tundra obtains are the names and contact information of retailers on Faire, and importantly, the contact information for retailer's buyers or representatives who make purchase decisions, including phone numbers, email addresses, and physical addresses that are not otherwise available publicly, as well as similar information for brands' representatives.  On information and belief, Tundra also obtains the wholesale pricing for brands, lead times, in-stock availability and other inventory and pricing information, retailers' order histories, shopping carts, and the ability to place orders through Faire.

57.     Tundra uses this information in furtherance of marketing its Wholesale Co-Op platform to Brands as a way to gain better access and visibility to retailers, and for retailers to earn what Tundra advertises as "cash back" on purchases through Wholesale Co-Op.

58.     A Faire retailer ("Retailer A") reported that Wholesale Co-Op promoted itself to that retailer by stating that Wholesale Co-Op had conducted $13 million in business since launching.  On information and belief, the majority of the $13 million in business that Wholesale Co-Op claims to have conducted was generated by wrongfully diverting sales through Faire Direct links, depriving Faire of commissions and instead charging Faire users for a cut of the commissions "savings."

## III.   TUNDRA REFUSES TO CEASE ITS UNAUTHORIZED ACCESS TO THE FAIRE PLATFORM AND INDUCEMENT OF FAIRE'S USERS TO PROVIDE THEIR LOGIN CREDENTIALS

59.     ~~50.~~ On February 14, 2023, Faire sent a letter to Tundra notifying it that its conduct violated Faire's terms, and instructing it to stop its unpermitted intrusion on the Faire platform, scraping of material from the platform, and interference with Faire's business and contracts.  A copy of the letter is attached as **Exhibit B**.

60.     ~~51.~~ Faire continues to receive complaints from brands about solicitations from Wholesale Co-Op, including as recently as May 15, 2023.

1    61.    52. Tundra refuses to cease the actions complained of in Faire's letter and in this

2    complaint and continues to engage in the same conduct through its Wholesale Co-Op line of

3    business.

4    62.    On information and belief, Tundra knew of Faire's Terms of Service, including its

5    prohibitions and rules in Sections 4, 7.b., and 14 addressed above, well before Faire sent its letter

6    to Tundra on February 14, 2023.  When Tundra responded to Faire's letter seven days later, on

7    February 21, 2023, Tundra included a fully drafted complaint that alleged antitrust claims against

8    Faire for terms in its Brand Terms of Service and Retailer Terms of Service, both of which

9    incorporate and hyperlink to the Faire Terms of Service, indicating Tundra was aware of Faire's

10   terms well before February 21, 2023.  Additionally, on information and belief, as is typical for a

11   competitor, Tundra has accessed Faire's website many times throughout the seven years that the

12   two businesses have been in competition, and had actual or constructive knowledge of the Faire

13   Terms of Service as a result of its accesses prior to February 14, 2023.

14   63.    By evaluating the commonalities present when Wholesale Co-Op attempts to

15   access the Faire Platform by posing as a Faire brand or retailer, Faire has identified Wholesale

16   Co-Op's access to the password-protected portion of the Faire platform at least as early as

17   January 1, 2023.

18                              **FIRST CLAIM FOR RELIEF**

19              **(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

20   64.    53. Faire repeats and incorporates by reference each of the allegations set forth in

21   the paragraphs above, as if set forth fully here.

22   65.    54. Faire owns its computer systems, on which the Faire platform resides.

23   66.    55. Faire's computer systems described herein, including the Faire platform, are

24   involved in interstate and foreign commerce and communication, and are protected computers as

25   defined under 18 U.S.C. § 1030(e)(2).

26   67.    On information and belief, since launching the Wholesale Co-Op product line,

27   Tundra has been aware of section 4 in Faire's Terms of Service prohibiting disclosures of

28   passwords to others.

FENWICK & WEST LLP

68.   Faire notified Tundra of its Terms of Service on February 14, 2023 and expressly notified Tundra that it was not authorized to access Faire user accounts on Faire using the users' credentials.

69.   ~~56.~~ Tundra knowingly and intentionally accessed, and continues to access, alter, or destroy Faire's computers, computer systems, servers, and databases (the "computer systems") without authorization or in excess of authorization.

70.   ~~57.~~ After gaining unauthorized access to Faire's computer systems, Tundra obtained, used, altered, and/or destroyed valuable information from Faire's computer systems in transactions involving interstate or foreign commerce, and did so without authorization in violation of 18 U.S.C. § 1030(a)(2)(A) and (c)(4)(A)(i)(I).  The non-public information Tundra accessed included the names and contact information of retailers on Faire, and importantly, the contact information for retailer's buyers or representatives who make purchase decisions, including phone numbers, email addresses, and physical addresses that are not otherwise available publicly, as well as similar information corresponding to brand representatives.  On information and belief, Tundra also obtains the wholesale pricing for brands, lead times, in-stock availability and other inventory and pricing information, retailers' order histories, shopping carts, and the ability to place orders through Faire.

71.   ~~58.~~ Tundra knowingly, willfully, and with an intent to defraud accessed Faire's computer systems without authorization or in excess of authorization and obtained valuable information from Faire's computer systems that, on information and belief, Tundra used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4)(A) and (c)(4)(A)(i)(I).  Namely, Tundra used this access to place orders from Faire retailers to Faire brands from whom it has obtained Faire Direct links so that Tundra could charge a fee to brands to replace the commission that the brands would have paid to Faire.

72.   ~~59.~~ All of Tundra's unlawful and unauthorized access and other wrongful conduct continues to this day.

73.   ~~60.~~ Tundra's conduct was for the purpose of private financial gain and has caused a loss to Faire during a one-year period in excess of $5,000.  This includes tens of thousands of

FENWICK & WEST LLP

1   dollars spent on intrusion and bot protection services and software implemented in response to

2   Tundra's unauthorized access, in addition to substantial employee time spent addressing these

3   issues, user friction costs resulting from implementing anti-abuse tools that cause users and

4   potential users to have a harder time logging into or signing up for Faire, and lost opportunity

5   costs from devoting scarce employee time to engineering solutions to address Tundra's intrusion.

6   These losses will increase as time goes on.

7       74.   61. Faire has been and continues to be damaged by Tundra's actions, including by

8   being forced to expend resources to investigate the unauthorized access, alteration, copying,

9   abuse, and/or destruction of its computer systems and network, as well as by other means that

10  have not yet been discovered.  Faire seeks compensatory and other equitable relief under 18

11  U.S.C. § 1030(g) in an amount to be proven at trial.

12      75.   62. Faire has suffered irreparable and incalculable harm and injuries resulting from

13  Tundra's conduct, which harm will continue unless Tundra is enjoined from further unauthorized

14  use of, copying, access, alteration, or destruction of Faire's protected computer systems.  Faire

15  has no adequate remedy at law.

16  **SECOND CLAIM FOR RELIEF**
    **(Violation of California's Comprehensive Computer Data Access and Fraud Act,**
17  **Cal. Penal Code § 502)**

18      76.   63. Faire repeats and incorporates by reference each of the allegations set forth in

19  the paragraphs above, as if set forth fully here.

20      77.   64. Faire is the owner of the Faire platform, a computer system on which Faire

21  conducts business and operates a marketplace.

22      78.   65. Without permission from Faire, Tundra knowingly accessed and altered,

23  damaged, deleted, destroyed, or otherwise used data on the Faire platform, in order to devise or

24  execute a scheme or artifice to defraud, deceive, or extort in in violation of Cal. Penal Code

25  502(c)(5).

26      79.   66. Without permission from Faire, Tundra knowingly accessed and altered,

27  damaged, deleted, destroyed, or otherwise used data on the Faire platform, in order to wrongfully

28  control or obtain money, property, or data.

FENWICK & WEST LLP

80. 67. Without permission from Faire, Tundra knowingly accessed took, copied, or made use of data from the Faire platform.

81. 68. Without permission from Faire, Tundra knowingly used computer services from the Faire platform.

82. 69. Without permission from Faire, Tundra knowingly accessed and added, altered, damaged, deleted, or destroyed data that resided on the Faire platform.

83. 70. Faire was harmed by the alteration, damage, deletion, destruction, or use of the data described above, in an amount to be proven at trial.

84. 71. Tundra's conduct was a substantial factor in causing that harm to Faire.

85. 72. Faire is entitled to compensatory damages for the harm Tundra caused, as well as an award of its attorneys' fees.

86. 73. Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

**THIRD CLAIM FOR RELIEF**
**(Tortious Interference with Prospective Economic Advantage)**

87. 74. Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

88. 75. Faire has economic relationships with its brand and retailer customers that were likely to benefit Faire.

89. 76. At all relevant times, Tundra knew about the economic relationships between Faire and its customers, including as a result of Tundra's investigation of and familiarity with Faire's business, and subsequently through communication from Faire's counsel no later than February 14, 2023.

90. 77. Tundra engaged in conduct that disrupted the economic relationships between Faire and its customers.  Tundra interfered with these contracts by, among other things, inducing

FENWICK & WEST LLP

1   many of Faire's retailer customers to divulge their confidential account login credentials to

2   Tundra in violation of their agreements with Faire.

3       91.   ~~78.~~ In addition to inducing Faire's retailers to disclose their Faire login credentials

4   in breach of Faire's Terms, Tundra also interfered with ~~section 9.b. of~~ the Faire Wholesale, Inc.

5   Brand Terms of Service, at https://www.faire.com/tos-brand. In the version of the Brand Terms of

6   Service operable at the time this complaint was originally filed (attached as **Exhibit C**)~~. That~~

7   ~~section provides,~~ Section 9.b. provided that only "existing retailers" are eligible for a waiver of

8   commissions if the ~~Brand~~brand is satisfying Faire's current policies.  In the current version of the

9   Brand Terms of Service, effective July 5, 2023 (attached as **Exhibit D**), Section 9.b. provides that

10  commissions are only waived for "Qualified Faire Direct Orders," which is defined in Section 19

11  as only those retailers that have a documented prior relationship with the brand, and which meet

12  Faire's policies.  Tundra's abuse of Faire's Faire Direct program encouraged Faire brand

13  customers to violate ~~this provision~~these provisions by applying the Faire Direct commission

14  waiver to new users, instead of retailers with whom they have a pre-existing relationship, thereby

15  depriving Faire of commissions.

16      92.   ~~79.~~ Due to Tundra's actions, many of Faire's economic relationships with its

17  customers were disrupted.

18      93.   ~~80.~~ Tundra intended to disrupt the economic relationships between Faire and both

19  its brand and retailer customers, or else knew that it was likely to disrupt the economic

20  relationships between Faire and its customers.

21      94.   ~~81.~~ Tundra's disruption of Faire's economic relationships with its customers was

22  accomplished through wrongful means, including by violation of the Computer Fraud and Abuse

23  Act, California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502,

24  and through false and misleading representations that Faire approved of brands providing Faire

25  Direct codes for use by retailers with which they did not have an existing relationship to make

26  commission-free purchases through Wholesale Co-Op.

27      95.   ~~82.~~ Tundra's disruption of these economic relationships harmed Faire and caused

28  it to be damaged in an amount to be determined at trial.

FENWICK & WEST LLP

96. 83. Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

**FOURTH CLAIM FOR RELIEF**
**(Intentional Interference with Contract)**

97. 84. Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

98. 85. Faire has entered into binding and enforceable contractual agreements with its retailer and brand customers.

99. 86. At all relevant times, Tundra knew about the contracts between Faire and its brand and retailer customers, including as a result of Tundra's investigation of and familiarity with Faire's business, and subsequently through communication from Faire's counsel.

100. 87. In addition to inducing Faire's retailers to disclose their Faire login credentials in breach of Faire's Terms, Tundra also interfered with section 9.b. of the Faire Wholesale, Inc. Brand Terms of Service, at https://www.faire.com/tos-brand. That section provides In the version of the Brand Terms of Service operable at the time this complaint was originally filed (attached as **Exhibit C**), Section 9.b. provided that only "existing retailers" are eligible for a waiver of commissions if the Brand brand is satisfying Faire's current policies.  In the current version of the Brand Terms of Service, effective July 5, 2023 (attached as **Exhibit D**), Section 9.b. provides that commissions are only waived for "Qualified Faire Direct Orders," which is defined in Section 19 as only those retailers that have a documented prior relationship with the brand, and which meet Faire's policies.  Tundra's abuse of Faire's Faire Direct program causes encouraged Faire brand customers to violate this provision these provisions by applying the Faire Direct commission waiver to new users, instead of retailers with whom they have a pre-existing relationship, thereby depriving Faire of commissions.

101. 88. Tundra engaged in conduct that prevented or hindered performance of many of those contracts between Faire and its brand and retailer customers.  Tundra interfered with these

FENWICK & WEST LLP

contracts by, among other things, inducing many of Faire's retailer customers to divulge their confidential account login credentials to Tundra in violation of their agreements with Faire.

102.   ~~89.~~ Due to Tundra's actions, many of Faire's brand and retailer customers have breached their agreements with Faire.

103.   ~~90.~~ Tundra intended to prevent or hinder performance of the contracts between Faire and its brand and retailer customers, or else knew that it was likely to prevent or hinder performance of the contracts between Faire and its customers.

104.   ~~91.~~ Tundra's interference with Faire's contracts with its brand and  retailer customers was accomplished through wrongful means, including by violation of the Computer Fraud and Abuse Act, California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, and through false and misleading representations that Faire approved of brands providing Faire Direct codes for use by retailers with which they did not have an existing relationship to make commission-free purchases through Wholesale Co-Op.

105.   ~~92.~~ Tundra's prevention or hindrance of performance of these contracts harmed Faire and caused it to be damaged in an amount to be determined at trial.

106.   ~~93.~~ Tundra's acts were willful, malicious and oppressive, and were undertaken with the intent to cause harm to Faire and Faire's business relationships.  Therefore, Faire is also entitled to an award of punitive damages to punish Tundra for its wrongful conduct and to deter it from engaging in similar conduct in the future.

**FIFTH CLAIM FOR RELIEF**
**(Unlawful~~, Unfair,~~ And Fraudulent Competition**
**Under California Business & Professions Code § 17200, et seq.)**

107.   ~~94.~~ Faire repeats and incorporates by reference each of the allegations set forth in the paragraphs above, as if set forth fully here.

108.   ~~95.~~ Tundra's conduct and acts as described above constitute unlawful~~, unfair,~~ and/or fraudulent business acts in violation of California Business and Professions Code § 17200, *et seq.*

109.   Tundra's unlawful business acts include its violations of the Computer Fraud and Abuse Act, California Comprehensive Computer Data Access and Fraud Act, tortious

1  interference with contract, tortious interference with prospective economic advantage, and false

2  or misleading advertising under Section 43 of the Lanham Act, as described more fully in counts

3  1-4 and 6 of this complaint.

4      110.   Tundra's fraudulent business acts include false statements when logging into Faire

5  customer accounts that it was the authorized Faire user, its false and misleading factual claim in

6  its advertising, stating that Faire was aware of and approved Tundra's scheme of abusing the

7  Faire Direct program, or that Faire otherwise approved of Wholesale Co-Op and/or Wholesale

8  Co-Op's business model to the extent that it required use of Faire login credentials or use of the

9  Faire platform.  Tundra has made these false and misleading factual claims to numerous brands

10  and retailers on the Faire platform, including those identified by pseudonym above.

11      111.   96. Tundra's acts of unlawful, unfair, and/or fraudulent competition have caused

12  harm to competition, to Faire's customers and, and to Tundra's competitors.  Tundra's acts have

13  proximately caused Faire to suffer injury in fact and loss of money in an amount to be proved at

14  trial in its efforts to stop Tundra's circumvention of Faire's technical measures designed to

15  prevent unauthorized access of its computer servers.  Tundra's conduct has caused and continues

16  to cause Faire to suffer irreparable injury that has no adequate remedy at law.

17  **SIXTH CLAIM FOR RELIEF**

18  **(False or Misleading Advertising Under Section 43 of the Lanham Act, 15 U.S.C. § 1125)**

19      112.   97. Faire repeats and incorporates by reference each of the allegations set forth in

20  the paragraphs above, as if set forth fully here.

21      113.   98. Tundra manages, controls, and directs the advertising and promotion of its

22  Wholesale Co-Op business unit.

23      114.   99. Tundra is a competitor in the market for online wholesale marketplace

24  platforms.

25      115.   100. Tundra repeatedly makes the false and misleading factual claim in its

26  advertising that Faire was aware of, and approved, Tundra's scheme of abusing the Faire Direct

27  program.

28

116.   101. Tundra's false advertising and promotion of Faire's endorsement is likely to deceive retailers and brands into believing that Tundra's marketplace is associated or partnered with Faire's marketplace.  The false advertising will also cause retailers and brands to believe that Faire has approved Tundra's scheme.  Additionally, the false advertising will cause retailers and brands to believe that Faire otherwise approved of Wholesale Co-Op and/or Wholesale Co-Op's business model to the extent that it required use of Faire login credentials or use of the Faire platform.

117.   Tundra has made these false and misleading factual claims to numerous businesses that use, or would use, Faire.

118.   102. Tundra's conduct constitutes intentional and willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125 (a)(1)(A-B).

119.   103. As a direct and proximate result of Tundra's conduct, Faire has suffered and will continue to suffer damages in an amount to be determined at trial.

120.   104. Faire has been, is now, and will be irreparably injured and damaged by Tundra's aforementioned acts, and unless enjoined by the Court, Faire will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Faire has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Faire Wholesale, Inc. prays for judgment against Defendant Tundra Inc. as follows:

1.   Enter judgment for Faire against Tundra;

2.   Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint;

3.   Award Faire monetary damages;

4.   Award Faire its costs, fees, and expenses of this action;

5.   Award Faire pre- and post-judgment interest at the applicable rates on all amounts awarded; and

6.     Order any other such relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated: ~~May 23~~July 20, 2023              FENWICK & WEST LLP


By:  *s/ Tyler G. Newby*
Tyler G. Newby


Attorneys for Plaintiff
Faire Wholesale, Inc.