Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice*)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice*)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

*Attorneys for Defendant*
*Tundra Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAIRE WHOLESALE, INC., | Case No.: 3:23-cv-02538-CRB |
| Plaintiff, | **TUNDRA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FAIRE WHOLESALE, INC.'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| TUNDRA INC., | |
| Defendant. | Assigned to: Hon. Charles R. Breyer |
| | Date:  January 19, 2024 |
| | Time:  10:00 a.m. |
| | Location: Courtroom 6 – 17th Floor |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that Defendant Tundra Inc. ("Tundra") will and hereby does move this Court to dismiss the Amended Complaint of Plaintiff Faire Wholesale, Inc. ("Faire") (ECF No. 29).  This Motion shall be heard on January 19, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Charles R. Breyer, United States District Court Judge, in Courtroom 6 of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.  This Motion is made pursuant to Fed. R. Civ. Proc. 8(a), 9(b), and 12(b)(6) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the complete files and records of this action, and such other matters and arguments as may come before the Court at or before any hearing on this Motion.

Tundra seeks an Order dismissing the Amended Complaint in its entirety with prejudice.

Dated: August 3, 2023

Angela C. Zambrano (*Pro Hac Vice*)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice*)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

Respectfully submitted,

*/s/ Chad Hummel*
Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

*Attorneys for Defendant Tundra Inc.*

1

## **<u>TABLE OF CONTENTS</u>**

2

**Page**

3

I. SUMMARY OF ARGUMENT ....................................................................... 1

4

II. STATEMENT OF ISSUES TO BE DECIDED ............................................. 2

5

III. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

6

    A.    Faire's Allegations. ................................................................................. 2

7

    B.    Relevant Procedural Background. .......................................................... 3

8

IV. LEGAL STANDARD ..................................................................................... 3

9

V. ARGUMENT ................................................................................................. 4

10

    A.    Faire's CFAA Claim Should Be Dismissed for Failure to State a Claim. ................... 4

11

        1.    Faire Fails to Allege That Tundra Obtained a "Financial Record" as Prohibited by 18 U.S.C. § 1030(a)(2)(A). ................... 4

12

        2.    Faire Cannot Maintain a Claim Pursuant to 18 U.S.C. § 1030(a)(4)(A) Because It Does Not Exist. ................... 5

13

        3.    Faire Fails to Allege that Tundra Lacked Requisite Authorization to Access Faire's Computers. ................... 5

14

            a.    Faire Fails to Allege Any Violation of CFAA to the Extent Tundra Allegedly Copied Publicly Available Data. ........... 6

15

16

            b.    Faire Fails to Allege Any Violation of CFAA to the Extent Such Access Occurred Before Faire Sent Its Cease-and-Desist Letter. ................... 6

17

18

    B.    Faire's CDAFA Claim Must Also Be Dismissed. ................................. 7

19

        1.    CDAFA Claims Rise or Fall With CFAA Claims. ................... 7

20

        2.    Faire Fails to Allege that Tundra Knowingly Caused a Disruption or Denies Computer Services As Prohibited By § 502(c)(5). ................... 7

21

22

23

    C.    Faire Fails to State Any Claims for Intentional Interference. ................... 8

24

        1.    Faire Fails to Plead an Independently Wrongful Act. ................... 9

25

        2.    Faire Fails to Plead an Economic Relationship or Valid Contract Pursuant to Faire's Brand Terms of Service. ................... 10

26

        3.    Faire Fails to Identify Third Parties with Whom Faire Had Economic Relationships with Probable Future

27

28

i

       Benefit or Valid Contracts. ............................................................. 10

D.    Faire Lacks Statutory Standing to Bring a UCL Claim and Fails
to Adequately Plead a Claim Under "Unlawful" and "Fraudulent" Prongs. ............. 12

    1.    Faire Lacks Statutory Standing Under UCL Because
It Did Not Rely on Alleged False or Misleading
Statements in Advertising. .................................................................. 12

    2.    Faire Fails to Adequately Plead Any Underlying
Violation of Law. ................................................................................ 13

    3.    Faire Fails to Plead Likely Deception by Members
of the Public. ...................................................................................... 13

E.    Faire Fails to Allege Facts Sufficient to State a False
Advertising Claim Under Lanham Act, 15 U.S.C. § 1125(a). .................................. 13

    1.    Faire Does Not Plausibly Allege Any False Statement
Was Made in Commercial Advertisement or Caused to
Enter Interstate Commerce. ................................................................. 14

    2.    Faire Does Not Plausibly Allege Deception of Substantial
Segment of Its Audience, Nor Likely Influence on
Purchasing Decisions. ........................................................................ 15

VI.  CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................... 3, 4

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 4

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................... 7

*In re Carrier IQ, Inc.,*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................... 7, 8

*Cisco Sys., Inc. v. Dexon Comput., Inc.,*
    No. 20-CV-04926-CRB, 2022 WL 2222962 (N.D. Cal. June 21, 2022) ............................ 14, 15

*Damabeh v. 7-Eleven, Inc.,*
    No. 5:12–CV–1739–LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) .................................. 11

*Facebook, Inc. v. Power Ventures, Inc.,*
    844 F.3d 1058 (9th Cir. 2016) ................................................................................... 6

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.,*
    No. SACV 15-00789-CJC(DFMx), 2016 WL 6138422 (C.D. Cal. Feb. 4, 2016) ............... 14, 15

*Hilario v. Allstate Ins. Co.,*
    No. 20-CV-05459-WHO, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020) ............................. 7

*hiQ Labs, Inc. v. LinkedIn Corp.,*
    31 F.4th 1180 (9th Cir. 2022) ............................................................................... 6, 10

*Ixchel Pharma, LLC v. Biogen, Inc.,*
    9 Cal. 5th 1130 (2020) .............................................................................................. 9

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .................................................................................. 12

*Maximum Availability Ltd. v. Vision Sols., Inc.,*
    No. CV 10-1488-GW(RZx), 2010 WL 11508471 (C.D. Cal. Sept. 20, 2010) ................... 2, 15

*Moore v. Apple, Inc.,*
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ..................................................................... 13

i

*Nowak v. Xapo, Inc.*,
No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)...................................7

*Oliver v. SD-3C LLC*,
No. 11-CV-01260-JSW, 2016 WL 5950345 (N.D. Cal. Sept. 30, 2016) ......................................7

*Oracle Am., Inc. v. Serv. Key, LLC*,
No. C 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ...........................................5

*Payward, Inc. v. Runyon*,
No. 20-CV-02130-MMC, 2020 WL 5642612 (N.D. Cal. Sept. 22, 2020) ...................................5

*R Power Biofuels, LLC v. Chemex LLC*,
No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016)........................1, 11, 12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 742 (9th Cir. 2006) ......................................................................................................9

*Satmodo LLC v. Whenever Commc'ns, LLC*,
No. 17-CV-0192-AJB NLS, 2017 WL 1365839 (S.D. Cal. Apr. 14, 2017)............................8, 13

*Snapkeys, Ltd. v. Google LLC*,
No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) .............................12, 13

*Song v. Drenberg*,
No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019) ......................................4

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*,
231 F. Supp. 3d 606 (E.D. Cal. 2017).......................................................................................10

*Swearingen v. Late July Snacks LLC*,
No. 13-CV-04324-EMC, 2017 WL 1806483 (N.D. Cal. May 5, 2017)....................................12

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ....................................................................................................9

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
766 F.3d 1002 (9th Cir. 2014) ....................................................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................................4, 14

**STATUTES & RULES**

15 U.S.C. § 1125(a) .....................................................................................................................13

18 U.S.C. § 1030 ......................................................................................................................1, 5

18 U.S.C. § 1030(a) .......................................................................................................................4

18 U.S.C. § 1030(a)(2) .................................................................................................. 5, 6

18 U.S.C. § 1030(a)(2)(A) .......................................................................................... 1, 4, 5

18 U.S.C. § 1030(a)(4) .................................................................................................. 5, 6

18 U.S.C. § 1030(a)(4)(A) .......................................................................................... 1, 4, 5

18 U.S.C. § 1030(e)(4)(A)-(B) ........................................................................................... 5

18 U.S.C. § 1030(e)(5) ....................................................................................................... 5

18 U.S.C. § 1030(g) ........................................................................................................... 4

18 U.S.C. § (c)(4)(A)(i) ...................................................................................................... 4

18 U.S.C. § (c)(4)(A)(i)(I) .................................................................................................. 4

Cal. Penal Code § 502 ........................................................................................................ 7

Cal. Penal Code § 502(c)(5) ........................................................................................... 7, 8

Fed. R. Civ. P. 8(a) ................................................................................................ 1, 2, 3, 14

Fed. R. Civ. P. 9(b) ................................................................................................ 1, 4, 5, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 3, 4

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.  SUMMARY OF ARGUMENT

Faced with Tundra's original motion to dismiss, Faire surrendered to Tundra's arguments and amended its complaint instead of trying to respond.  But Faire's attempt to resuscitate its claims through its Amended Complaint fails, and all of its claims should be dismissed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) on each of the following grounds.[2]

First, Faire cannot maintain its claim for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), under the two subsections it identifies.  As to § 1030(a)(2)(A), Faire does not, and cannot, allege that Tundra has obtained information contained in financial records of a financial institution, because Faire does not allege that it is a financial institution.  As to § 1030(a)(4)(A), this subsection does not exist.

Second, Faire's claim under California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"), fails because Faire does not, and cannot, allege the required element that Tundra knowingly disrupted or denied computer services to Faire users.

Third, notwithstanding Faire's repleaded allegations, Faire still cannot state a claim for relief under CFAA and CDAFA to the extent Tundra accessed publicly available information, or to the extent it alleges any purported violations by Tundra *before* Faire sent its cease-and-desist letter to Tundra, which purportedly withdrew Tundra's authorization to access Faire's website.

Fourth, Faire's claims for tortious interference with prospective economic advantage ("IIPEA") and intentional interference with contractual relations ("IICR") still fail.  Not only are the contractual provisions at issue – specifically, Faire's Terms of Service, which prohibit users from sharing their own data – illegal restraints on trade and unenforceable under California law, Faire fails to adequately allege specific third parties with whom Faire had the relationships or contracts in question.  *See R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *16-17 (N.D. Cal. Nov. 11, 2016) (dismissing IIPEA and IICR claims for failure to specify third

---

[1] This Motion is being filed subject to, and without waiver of, Tundra's right to compel arbitration under Faire's Terms of Service as stated in its Motion to Compel Arbitration (ECF No. 31-32).
[2] Tundra has filed an antitrust complaint against Faire in this federal district based on Faire's anticompetitive, predatory, and unfair practices designed to eliminate competition in the market for online wholesale marketplaces in which Tundra competes.  *See* No. 3:23-cv-02513-AMO.

parties to alleged economic relationships and contracts).

Third, Faire lacks statutory standing to bring a claim under California's Unfair Competition Law ("UCL") based on alleged false advertisements because Faire did not rely on such statements. Its "unlawful" prong claim further fails as it is premised on other claims that are each inadequately pleaded, and its "fraudulent" claim does not allege likely deception by members of the public.

Finally, Faire's Lanham Act claim rests upon allegations of one communication between a worker at Tundra and a single brand customer of Faire, and conclusory allegations of an advertising campaign.  This is insufficient to constitute a "commercial advertisement" as a matter of law, *see Maximum Availability Ltd. v. Vision Sols., Inc.*, No. CV 10-1488-GW(RZx), 2010 WL 11508471, at *7 (C.D. Cal. Sept. 20, 2010) (dismissing for failure to plead facts showing statement was sufficiently disseminated to constitute "advertising"), or support that the alleged statement deceived or tended to deceive a substantial segment of Faire's audience with regard to a purchasing decision.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Whether all claims should be dismissed pursuant to Fed. R. Civ. Proc. 8(a), 9(b), and 12(b)(6) for failure to plead the elements of the claims with specificity and, as to Count V (UCL), failure to plead actual reliance establishing statutory standing.

## III.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Faire's Allegations.

Faire's Business.  Since 2017, Faire has operated an online wholesale marketplace connecting independent brands and retailers.  Am. Compl. (ECF No. 29) ¶ 2.  Its business model involves charging brands commissions for transactions "successful[ly]" completed on its platform.  *See id.* ¶ 21.  Pursuant to Faire's Brand Terms of Service, Faire charges brands a commission of "15% of the Order Subtotal . . . plus a new customer fee of ten dollars" for "opening orders" and "15% of the Order Subtotal" for "reorders" and an additional fee of up to 3.5% and $0.30 on all transactions.  Faire's Brand Terms of Service, effective July 5, 2023 (Ex. D to Am. Compl.) § 9.[3]

Tundra's Business.  Tundra also operated an online wholesale marketplace, but unlike Faire,

---

[3] Pursuant to the version of the Brand Terms of Service operable at the time this action was initiated, Faire charged brands a commission of "25% on first orders" and "15% on any subsequent orders[.]"  Faire's Brand Terms of Service, effective June 24, 2022 (Ex. C to Am. Compl.) § 9.

Tundra operated a commission-free platform.[4]  In 2022, Tundra launched a new platform, Wholesale Co-op ("WSC"), which allowed retailers to earn cash back on orders transacted on more than ten marketplaces, including Faire.  Am. Compl. ¶¶ 5, 30, 32.

Faire's Allegations.  The core of Faire's Amended Complaint accuses Tundra of improperly soliciting Faire's users' credentials and "schem[ing] to access and copy data" from Faire's website in connection with WSC.  *See id.* ¶ 1.  Faire alleges that Tundra "induces those users to breach" provisions of Faire's Terms of Service, such as its requirement to "not disclose [one's password] to any third party."  *Id.* ¶¶ 25, 34.  Faire further alleges that WSC's cash-back program "diverts a 15% commission that would have been payable to Faire to [WSC] and kicks a portion back to the retailer," and Tundra "falsely represents that Faire has approved of this program."  *Id.* ¶¶ 36-37.

## B.  Relevant Procedural Background.

On May 23, 2023, Tundra filed a complaint against Faire based fundamentally on Faire's unilateral imposition of terms of service that constitute unreasonable restraints of trade and exclusionary conduct that harms competition in the relevant market for online wholesale marketplaces – in violation of both Sections 1 and 2 of the Sherman Act.  Later that day, Faire filed its original complaint in this action.  On June 7, Tundra filed its administrative motion to consider whether the cases should be related pursuant to Civil L.R. 3-12 and 7-11.  On June 20, that motion was denied.  After Tundra filed a motion to dismiss Faire's original complaint on July 6, Faire filed an Amended Complaint on July 20.  On July 27, Tundra filed a motion to compel all of Faire's claims to arbitration under the Federal Arbitration Act, *see* ECF No. 31-32, which remains pending.

## IV.  LEGAL STANDARD

A complaint fails to satisfy Rule 8(a) and warrants dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state a claim with facial plausibility, a plaintiff must

---

[4] After six years of delivering value for brands and retailers, Tundra shut down its wholesale marketplace at the end of July 2023 because it cannot remain a viable concern in the face of the anticompetitive conduct, unfair policies, and the punitive enforcement of exclusive arrangements by Faire.  *See* Tundra, https://www.tundra.com (last visited July 25, 2023).

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Courts will not accept pleadings that offer mere "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A plaintiff must "raise a right to relief above the speculative level." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Courts are not bound to accept as true mere conclusory allegations, unsupported legal conclusions, or threadbare recitals of the elements of the claims. *See id.* at 678-79.  Claims may be dismissed under Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  In addition, claims sounding in fraud must satisfy Rule 9(b), and "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## V.  ARGUMENT

### A.    Faire's CFAA Claim Should Be Dismissed for Failure to State a Claim.

Section (a) of CFAA contains several distinct causes of action that can be brought in a civil action. *See* 18 U.S.C. § 1030(a).  Each civil cause of action must also involve one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). *See* § 1030(g).  Roughly 65 different statutory provisions could give rise to a civil action under CFAA. *See Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *5 (N.D. Cal. May 6, 2019).  Given this, a plaintiff's failure to identify the operative subsection of CFAA is a basis for dismissal in this district. *See id.* at *5-6.  Faire now identifies two grounds in its Amended Complaint: (1) § 1030(a)(2)(A) involving (c)(4)(A)(i)(I); and (2) § 1030(a)(4)(A) involving (c)(4)(A)(i)(I). *See* Am. Compl. ¶¶ 70-71.  Faire cannot maintain a claim under either.

#### 1.    Faire Fails to Allege That Tundra Obtained a "Financial Record" as Prohibited by 18 U.S.C. § 1030(a)(2)(A).

The conduct prohibited by § 1030(a)(2)(A) of CFAA is wholly unrelated to Faire's allegations.  This provision proscribes improperly accessing a computer to obtain "information contained in a ***financial record*** of a ***financial institution***, or of a card issuer . . . , or contained in a

file of a consumer reporting agency[.]" *See* 18 U.S.C. § 1030(a)(2)(A) (emphasis added).  A financial record is defined as "information derived from any record held by a financial institution pertaining to a customer's relationship with the financial institution[.]" § 1030(e)(5).  A financial institution can be one of nine monetary organizations, such as "an institution, with deposits insured by the Federal Deposit Insurance Corporation," and "the Federal Reserve or a member of the Federal Reserve including any Federal Reserve Bank[.]"  §§ 1030(e)(4)(A)-(B).

Faire makes no attempt to allege that it is a "financial institution."  Indeed, it is not: Faire describes itself as an operator of an "online wholesale marketplace."  Am. Compl. ¶ 2.  This is a far cry from the banks and credit agencies that section 1030(a)(2)(A) implicates.  Likewise, the Amended Complaint is devoid of any allegation to support that the information allegedly obtained—*e.g.*, "names and contact information of retailers," "wholesale pricing for brands, lead times, in-stock availability and other inventory and pricing information," "retailers' order histories, shopping carts"—constitute financial records.  *See id.* ¶ 56.  They do not.  Thus, Faire's claim is not plausible on its face and should be dismissed.  *See Payward, Inc. v. Runyon*, No. 20-CV-02130-MMC, 2020 WL 5642612, at *4 (N.D. Cal. Sept. 22, 2020) (dismissing § 1030(a)(2)(A) claim where board minutes obtained not plausibly alleged to be financial records).

**2.      Faire Cannot Maintain a Claim Pursuant to 18 U.S.C. § 1030(a)(4)(A) Because It Does Not Exist.**

Faire's next attempt to invoke CFAA fares no better.  Faire cannot maintain a claim under § 1030(a)(4)(A) because subsection (a)(4)(A) does not exist at all.  *See* § 1030.  To the extent Faire intended to cite a different CFAA provision, it should be required to replead its claim accordingly.[5]

**3.      Faire Fails to Allege that Tundra Lacked Requisite Authorization to Access Faire's Computers.**

Numerous provisions of CFAA – including §§ 1030(a)(2) and (a)(4) – prohibit conduct only

---

[5] Even assuming, *arguendo*, that Faire intended to plead a violation of § 1030(a)(4), it still cannot maintain a claim.  Rule 9(b) "plainly applies" to claims under § 1030(a)(4), *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012), which imposes liability on those who "knowingly and with ***intent to defraud***, access[] a protected computer without authorization" and, in furtherance of the intended fraud, "obtain[] anything of value," *see* § 1030(a)(4) (emphasis added).  As detailed in this Motion, Faire has not pleaded the circumstances constituting the alleged fraud, nor Tundra's alleged fraudulent intent.  In the event Faire repleads its claim as one under § 1030(a)(4), Tundra reserves its right to move to dismiss on additional grounds.

if a party accesses a computer "without authorization or exceed[ing] authorized access." *See* §

1030(a)(2), (a)(4).  Faire repeatedly describes Tundra's access as "unauthorized,"  *see* Am. Compl.

¶¶ 1, 11, 48, 50, 53, but does not explain how that is so, particularly with respect to publicly

available information or any access *before* Faire sent its cease-and-desist letter.

           a.       **Faire Fails to Allege Any Violation of CFAA to the Extent**
                     **Tundra Allegedly Copied Publicly Available Data.**

Access to publicly available information does not require authorization under CFAA.  *See*

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022).  The Ninth Circuit has

determined that access of publicly available data will likely not constitute access "without

authorization" under CFAA and that giving companies "free rein" to decide who can collect and use

publicly available data "risks the possible creation of information monopolies that would disserve

the public interest."  *Id.* at 1202.  Though Faire claims that Tundra accessed "password-protected"

portions of the platform, the categories of information that Tundra allegedly accessed include

publicly available information.  *See* Am. Compl. ¶¶ 55-56, 70 (alleging Tundra obtains, *e.g.*, lead

time information).  Accordingly, Faire cannot state a claim for violation of CFAA to the extent that

such a claim is based on the copying of publicly available information.

           b.       **Faire Fails to Allege Any Violation of CFAA to the Extent Such**
                     **Access Occurred Before Faire Sent Its Cease-and-Desist Letter.**

Faire also fails to state a claim for any CFAA violation *before* it sent its cease-and-desist

letter.  *See* Am. Compl. ¶¶ 64-75.  In *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1063

(9th Cir. 2016), the Ninth Circuit reasoned that Facebook users gave social media aggregator Power

Ventures access to Facebook's computers by allowing Facebook access to their accounts.  Here,

Faire repeatedly concedes that Faire users provide Tundra with their credentials.[6]  *See* Am. Compl.

¶¶ 1, 8, 32-33.  As in *Power Ventures*, Tundra has permission to access Faire's website via its users.

Faire does not adequately allege how Tundra could have known its alleged access to Faire's

website was "unauthorized" prior to its cease-and-desist letter.[7]   It only claims that "on information

---

[6] Discovery in this matter will demonstrate that Tundra's actions fall far short of the type of
misrepresentations alleged in the *Power Ventures* case.
[7] Tundra does not concede that Faire's cease-and-desist letter was a revocation of authority.  Tundra
maintains that WSC did not improperly access Faire's website and take forbidden actions.

and belief Tundra knew of Faire's Terms of Service" prohibiting its conduct.  *See id.* ¶ 62.  Such conclusory statements about Tundra's alleged knowledge are insufficient.  *See Oliver v. SD-3C LLC*, No. 11-CV-01260-JSW, 2016 WL 5950345, at *11 (N.D. Cal. Sept. 30, 2016) ("Naked assertions made upon information and belief and 'devoid of further factual enhancement' are insufficient to state a claim.") (quoting *Iqbal*, 556 U.S. at 686); *Hilario v. Allstate Ins. Co.*, No. 20-CV-05459-WHO, 2020 WL 7643233, at *7 (N.D. Cal. Dec. 23, 2020) ("While allegations 'on information and belief' may suffice, the plaintiff still 'must state the factual basis for the belief.'") (citation omitted).  Faire has not adequately pleaded the factual basis for its purported belief, and thus, cannot allege that Tundra's access was "unauthorized" prior to its cease-and-desist letter.

### B.       Faire's CDAFA Claim Must Also Be Dismissed.

#### 1.       CDAFA Claims Rise or Fall With CFAA Claims.

As to Faire's claim under CDAFA, California's state-law analogue to CFAA, courts in this district have held that CDAFA claims generally "rise or fall with Plaintiffs' CFAA claims because 'the necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA.'"  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) (citation omitted).  Faire's CDAFA claim should therefore be dismissed for the same reasons as its CFAA claim.  *See Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (holding that "the CDAFA claim fails for the same reasons that the CFAA claim does").

#### 2.       Faire Fails to Allege that Tundra Knowingly Caused a Disruption or Denies Computer Services As Prohibited By § 502(c)(5).

CDAFA enumerates numerous different offenses relating to unauthorized computer access.  *See* Cal. Penal Code § 502.  As with CFAA, a plaintiff's failure to specify which provisions of CDAFA are alleged to be violated is grounds for dismissal.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098 (N.D. Cal. 2015).  Paragraph 78 of Faire's Amended Complaint identifies that its CDAFA claim is brought pursuant to § 502(c)(5), which prohibits "[k]nowingly and without permission ***disrupt[ing] or caus[ing] the disruption*** of computer services or ***den[ying] or caus[ing] the denial*** of computer services to an authorized user of a computer, computer system, or computer network."  *See* § 502(c)(5).  A plaintiff must provide factual support for a § 502(c)(5) violation;

---

"conclusory" statements "merely restat[ing] the statutory language" are not enough. *See Satmodo LLC v. Whenever Commc'ns, LLC*, No. 17-CV-0192-AJB NLS, 2017 WL 1365839, at *7 (S.D. Cal. Apr. 14, 2017).  Here, Faire does not allege that Tundra caused the disruption or denial computer services to authorized users even in a conclusory manner.  Indeed, Paragraphs 76-86 of the Amended Complaint (which purport to provide the basis of Faire's CDAFA claim) parrot language from *other* provisions of CDAFA, but do not *mention* the words "disruption" or "denial."[8]  Taking the alleged facts as true, WSC relies upon Faire's users' *uninterrupted* access to Faire's computer services.  *See* Am. Compl. ¶ 39 ("Wholesale Co-Op's arbitrage . . . is only possible if Wholesale Co-Op has access to retailers' Faire login credentials so that the retailers can search for products and make purchases").  That Tundra would somehow cause the disruption or denial of services to Faire's users is at odds with its business objectives, as alleged by Faire.  Indeed, Faire fails to plead *any* facts to plausibly support that Tundra disrupted or denied services to Faire's users, and thus cannot support a claim under § 502(c)(5).[9]

### C.      Faire Fails to State Any Claims for Intentional Interference.

Faire alleges that Tundra tortiously interfered with its economic relationships and contracts by "inducing many of Faire's retailer customers to divulge their confidential account login credentials" "in breach of Faire's Terms [of Service]," and "interfer[ing] with the Faire Wholesale, Inc. Brand Terms of Service" when "Tundra's abuse of Faire's Faire Direct program encouraged Faire brand customers to violate" §§ 9.b. and 19 of that contract.  Am. Compl. ¶¶ 90-91, 100-01.

To state a claim for IIPEA, Faire must plausibly allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the

---

[8] Again, Faire cannot maintain its CDAFA claim without specifying the operative subsection.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1098.

[9] In passing, Faire alleges that "[s]ome of the tools that *Faire* has had to deploy to address this unauthorized access and scraping has the unfortunate effect of slowing access to Faire by legitimate users."  *See* Am. Compl. ¶ 48 (emphasis added).  To the extent Faire intends for this alleged "unfortunate" result to form the factual basis for its claim, it is insufficient.  Absent more detail about the "slowing" of access to Faire's users, the allegations do not amount to an interruption of services rising to the level of conduct prohibited by § 502(c)(5).  *See Satmodo*, 2017 WL 1365839, at *7 (denying claims where the complaint did not contain factual support of a disruption).  Furthermore, Faire fails to show how Tundra could have known – much less that Tundra actually knew – that the tools Faire employed could have had the effect of "slowing access" to Faire's users.  *See* § 502(c)(5) (prohibiting "knowing[]" disruption or denial of services).

plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted).  A similar cause of action, IICR, is premised on the existence of a valid contract, requiring "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (citation omitted).

### 1.    Faire Fails to Plead an Independently Wrongful Act.

Faire has taken the position that its terms of service are terminable at will.[10]  Where the contract at issue is terminable at will by either party to the contract, an IICR claim in California also requires pleading an independently wrongful act beyond mere interference.  *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1145 (2020).[11]  An IIPEA claim similarly requires an intentional wrongful act designed to disrupt the relationship.  *Sybersound*, 517 F.3d at 1151.  Faire alleges Tundra's interference "was accomplished through wrongful means, including by violation of [CFAA], [CDAFA], and through false and misleading representations that Faire approved of brands providing Faire Direct codes" to certain retailers, Am. Compl. ¶¶ 94, 104, but fails to adequately plead these underlying allegedly wrongful acts for the reasons explained in this Motion.

---

[10] *See* Faire's Motion to Dismiss at 8, 10 (Case No. 3:23-cv-02513-AMO, ECF No. 27); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 742, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

[11] For the reasons explained in Tundra's Opposition to Faire's Motion to Dismiss the antitrust claims (Case No. 3:23-cv-02513-AMO, ECF No. 33), nothing in the termination clause actually states or suggests that leaving Faire's platform terminates *exclusivity*.  Moreover, the fact that the contracts are terminable by their terms does not render them immune from antitrust scrutiny as de facto exclusive arrangements that unreasonably restrain trade and constitute illegal exclusionary conduct. Whether or not brands or retailers could theoretically unilaterally opt to leave the Faire platform does not eliminate the practical effects of the exclusivity provisions.  Faire's express terms of use still require those businesses with which the departed participant transacted on the Faire platform, but who remained on the platform, to do business with them ONLY on Faire.  In other words, there are material economic and practical impediments to leaving the Faire marketplace that render the termination option essentially illusory for antitrust purposes.

9

Further, the contractual provisions are effectively noncompete provisions, which have been found to be unenforceable as a matter of law in the context of employment agreements.  *See Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 617 (E.D. Cal. 2017) (dismissing IICR claim where underlying employment contract contained noncompete clause unenforceable under California law); *see also hiQ Labs*, 31 F.4th at 1193 (determining justifiable interference by considering, *e.g.*, "whether the conduct is 'within the realm of fair competition'" and "'determinative question' is whether the business interest is pretextual or 'asserted in good faith'").

> **2.      Faire Fails to Plead an Economic Relationship or Valid Contract Pursuant to Faire's Brand Terms of Service.**

Faire's IIPEA and IICR claims purport to be premised on alleged interference with Faire's Terms of Service *and* Faire's Brand Terms of Service.  *See* Am. Compl. ¶¶ 90-92, 100-02.  But while the Amended Complaint alleges some facts about Faire's Terms of Service and the third parties who purportedly enter that first contract with Faire, *see id.* ¶ 24 ("To list or buy products on the Faire platform, brands and retailers must first agree to Faire's Terms of Service"), *see also id.* ¶¶ 25-28, it is devoid of factual allegations about which third parties have entered contracts with Faire under the Brand Terms of Service, the circumstances or nature of the Brand Terms of Service, or any other details to plead the existence of either economic relationships with the probability of future economic benefit (for IIPEA) or valid contractual relationships (for IICR) pursuant to this second contract.  Accordingly, Faire's IIPEA and IICR claims should be dismissed to the extent they pertain to alleged interference relating to the Brand Terms of Service.

> **3.      Faire Fails to Identify Third Parties with Whom Faire Had Economic Relationships with Probable Future Benefit or Valid Contracts.**

Nowhere in the Amended Complaint does Faire sufficiently identify the third parties with whom it had the economic relationships or contracts that were subject to alleged interference.  Faire simply alleges that it "has economic relationships with its *brand and retailer customers*," and that "Faire has entered into binding and enforceable contractual agreements with its *retailer and brand customers*."  *Id.* ¶¶ 88, 98 (emphasis added).  Elsewhere, Faire alleges it entered contracts pursuant to the Terms of Service, which, by its own terms, may include "any visitor of the Site and/or the Application and any user of the Services, including any Member."  *See* Faire's Terms of Service

(Ex. A to Am. Compl.) § 1; Am. Compl. ¶ 24 ("To list or buy products on the Faire platform, brands and retailers must first agree to Faire's Terms of Service[.]").  Faire then conclusorily alleges that this unnamed number of "economic relationships with its brand and retailer customers . . . were likely to benefit Faire."  *See* Am. Compl. ¶ 88.  Faire does little else to specify which or how many such relationships and contracts were allegedly harmed, except to say "many" of them:  "Due to Tundra's actions, many of Faire's economic relationships with its customers were disrupted" and "many of Faire's brand and retailer customers have breached their agreements with Faire."  *Id.* ¶¶ 92, 102; *see also id.* ¶ 90 ("Tundra interfered . . . by, among other things, inducing many of Faire's retailer customers . . ."); *id.* ¶ 101 ("Tundra engaged in conduct that prevented or hindered performance of many of those contracts . . .").[12]

In *R Power Biofuels*, the Court dismissed IIPEA and IICR claims because  "it is essential [to an IIPEA claim] that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual."  2016 WL 6663002, at *16 (citation omitted).  "[W]hile the actual name of the third party need not be provided, the plaintiff must allege a relationship with 'a specific, albeit unnamed' third party."  *Id.* (citation omitted); *see also Damabeh v. 7-Eleven, Inc.*, No. 5:12–CV–1739–LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing IIPEA claim "alleg[ing] that Defendant interfered 'with [Plaintiff's] employees and customers'" but "not specifically identify[ing] any of these employees and customers").  This lack of specificity is fatal to IICR claims, too, "where no specific parties to the contracts were alleged."  *See R Power Biofuels*, 2016 WL 6663002, at *17.  Accordingly, the Court dismissed the IIPEA claim because the plaintiff "solely allege[d] that it has an economic relationship with 'major consumers of biodiesel,' and [did] not provide details about 'specific' companies.  Indeed, from Plaintiff's allegations it [was] impossible to even tell how many such relationships existed."  *Id.*  The IICR

---

[12] While Faire alleges one conversation between "a Tundra Wholesale Co-Op 'Supplier Development' employee" and "a Faire brand user ('Brand A')," Am. Compl. ¶ 37, it notably does not, and cannot, allege that Brand A was induced to disclose its Faire login credentials, and does not allege Brand A actually violated Faire's commission waiver provisions at Tundra's encouragement (i.e., the interfering acts, per ¶¶ 90-91, 100-02).  And while Faire now alleges that this single "communication" "was part of an advertising campaign that included emails and direct sales phone calls targeting hundreds of brands that sell on Faire," *id.* ¶ 38, Faire again does not allege that any of these "hundreds of brands" were induced to disclose their login credentials or violate Faire's commission waiver provisions either.

11

claim, which "plead[ed] that '[plaintiff] entered into several agreements with major oil companies whereby [it] would sell and the companies would purchase,'" was likewise dismissed because it "allege[d] a class of companies rather than specific companies and because it is impossible to even determine how many contracts are at issue[.]"  *Id.*

Similar to the plaintiff in *R Power Biofuels* merely alleging "several agreements with major oil companies," Faire alleges economic relationships and contracts with "its brand and retailer customers" and that "many" of them were subject to interference.  *See* Am. Compl. ¶¶ 88, 92, 98, 102.  This generalized identification of "a class of companies rather than specific companies," without "details about 'specific' companies," is exactly the type of vague allegation that this Court does not tolerate.  *See R Power Biofuels*, 2016 WL 6663002, at *17.  Indeed, the Amended Complaint makes it "impossible to even tell how many such relationships existed" or "how many contracts are at issue."  *See id.*  For these reasons, the IIPEA and IICR claims should be dismissed.

### D.   Faire Lacks Statutory Standing to Bring a UCL Claim and Fails to Adequately Plead a Claim Under "Unlawful" and "Fraudulent" Prongs.

The Amended Complaint is even more lacking as to Faire's claim under the UCL, which prohibits "unlawful," "unfair," or "fraudulent" business practices, where each prong is "a separate and distinct theory of liability."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

#### 1.   Faire Lacks Statutory Standing Under UCL Because It Did Not Rely on Alleged False or Misleading Statements in Advertising.

Statutory standing under the UCL "is limited to plaintiffs who have 'suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'  To satisfy this standard, a plaintiff must demonstrate that she actually relied upon the allegedly deceptive or misleading statements."  *Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *6 (N.D. Cal. Oct. 30, 2020) (internal citations omitted).  Actual reliance must be demonstrated "regardless of which prong of the UCL a plaintiff asserts, when the basis of a plaintiff's UCL claim is a claim of misrepresentation[.]"  *Swearingen v. Late July Snacks LLC*, No. 13-CV-04324-EMC, 2017 WL 1806483, at *4 (N.D. Cal. May 5, 2017).  As a basis for its "fraudulent" prong claim, Faire alleges that Tundra made a "false and misleading factual claim in its advertising, stating that

Faire was aware of and approved Tundra's scheme of abusing the Faire Direct program, or that Faire otherwise approved of [WSC] and/or [WSC]'s business model to the extent it required use of Faire login credentials or use of the Faire platform." Am. Compl. ¶ 110.  Similarly, for its "unlawful" prong claim, Faire alleges "false or misleading advertising." *Id.* ¶ 109.  Nowhere does Faire allege that *Faire itself* relied on such statements or suffered economic injury as a result.  Faire therefore lacks statutory standing to state a UCL claim premised on alleged false statements in advertising.  *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200-02 (N.D. Cal. 2014) (dismissing UCL claim for lack of reliance because "a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to have standing to sue" when misrepresentation underlies UCL claim).

### 2. Faire Fails to Adequately Plead Any Underlying Violation of Law.

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Satmodo*, 2017 WL 1365839, at *7.  In this case, Faire points to its other claims "in counts 1-4 and 6."  Am. Compl. ¶ 109.  But because Faire fails to adequately plead any of those underlying claims for all the reasons explained in this Motion, its UCL claim under the "unlawful" prong necessarily fails.

### 3. Faire Fails to Plead Likely Deception by Members of the Public.

A business practice is "fraudulent" in violation of the UCL if "*members of the public* are likely [to be] deceived by the practice."  *Snapkeys*, 2020 WL 6381354, at *6 (emphasis added).  Here, the "fraudulent business acts" are allegedly "false statements when logging into Faire customer accounts that [Tundra] was the authorized Faire user" and a "false and misleading factual claim in its advertising, stating that Faire was aware of and approved Tundra's scheme of abusing the Faire Direct program, or that Faire otherwise approved of [WSC] and/or [WSC]'s business model[.]" Am. Compl. ¶ 110.  Faire makes no attempt to assert that either alleged action is likely to deceive "members of the public."  Accordingly, Faire's "fraudulent" prong claim fails.

### E. Faire Fails to Allege Facts Sufficient to State a False Advertising Claim Under Lanham Act, 15 U.S.C. § 1125(a).

Faire's final claim alleges false advertising by Tundra in violation of the Lanham Act, 15

13

U.S.C. § 1125(a), which requires five elements: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Cisco Sys., Inc. v. Dexon Comput., Inc.*, No. 20-CV-04926-CRB, 2022 WL 2222962, at *5 (N.D. Cal. June 21, 2022). Where, as in here, the claim is "predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation," this Court has held that Rule 9(b) is applicable. *See id.* (citation omitted). Because Faire's Lanham Act claim is premised on allegations that "Tundra repeatedly makes the false and misleading factual claim in its advertising that Faire was aware of, and approved, Tundra's scheme of abusing the Faire Direct program" (which it also alleges were "intentional and willful false statements"), it must meet the heightened pleading standard of Rule 9(b), which Faire fails to do. *See* Am. Compl. ¶¶ 115, 118.

### 1.    Faire Does Not Plausibly Allege Any False Statement Was Made in Commercial Advertisement or Caused to Enter Interstate Commerce.

To qualify as "commercial advertisement," Faire must plead that the alleged statement was "disseminated sufficiently to the relevant purchasing public to constitute advertising . . . within that industry." *See G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, No. SACV 15-00789-CJC(DFMx), 2016 WL 6138422, at *5-6 (C.D. Cal. Feb. 4, 2016). Faire fails to do so under a Rule 8(a) standard, let alone Rule 9(b). Instead, Faire identifies only the one alleged communication with "Brand A." Am. Compl. ¶ 37. While this allegation might provide a "who, what, [and] when," *see Vess*, 317 F.3d at 1106, for one purported communication, Faire then fails to provide where or how it took place. Faire also newly alleges a broader ad campaign, but describes it with even fewer particulars as "an advertising campaign that included emails and direct sales phone calls targeting hundreds of brands that sell on Faire, including the top selling brands." *See* Am. Compl. ¶ 38; *see also id.* ¶ 117 (alleging that Tundra made "false and misleading factual claims to numerous businesses that use, or would use, Faire"). Not only is this allegation impermissibly conclusory, Faire does not even allege that Tundra made the purported statements in any such emails or phone calls, rendering Faire's

allegations of this advertising campaign insufficient to form the basis of its Lanham Act claim.

Faire also does not allege that any statements were made publicly, rather than in private communications, and fails to plead "commercial advertisement" for that reason, too.  *See G.U.E. Tech,* 2016 WL 6138422, at *6 (dismissing claim where plaintiff "only identified private statements made by [defendant] or its representatives to a handful of individual airlines.  These statements do not qualify as misrepresentations that have been 'disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion.'  Indeed, [plaintiff] does not plead that any of the statements were public at all, rather than private communications[.]").[13]

### 2. Faire Does Not Plausibly Allege Deception of Substantial Segment of Its Audience, Nor Likely Influence on Purchasing Decisions.

As detailed above, Faire does not, in fact, allege that false statements were made by Tundra in any "emails and direct sales phone calls" in the purported ad campaign.  *See* Am. Compl. ¶ 38.  But even if it had, the "hundreds of brands" allegedly "target[ed]" by the campaign, *id.*, falls well short of "a substantial segment of [Faire's] audience," *Cisco Sys., Inc.*, 2022 WL 2222962, at *5, when Faire itself claims that "[o]ver 350,000 North American retailers have used Faire's platform[.]"  *See* Am. Compl. ¶ 2.  Moreover, Faire has not pleaded facts sufficient to show a material deception, *i.e.*, one likely to influence any *purchasing decision*.  Per Faire, the alleged statement "is likely to deceive retailers and brands into believing" that WSC is "associated or partnered with" Faire, and "that Faire has approved Tundra's scheme" or WSC's business model.  *Id.* ¶ 116.  None of these supposed likelihoods constitute a deception likely to influence purchasing decisions: Faire itself alleges the statement was made to "brands that *sell* on Faire," not to any purchaser.  *See id.* ¶ 37 (emphasis added).  Faire's Lanham Act claim further fails for these reasons.

### VI. CONCLUSION

For the foregoing reasons, Tundra respectfully requests that the Court dismiss the Amended Complaint in its entirety without leave to amend pursuant to Rules 8(a), 9(b), and 12(b)(6).

---

[13] For these same reasons, there are no facts plausibly alleged to support that Tundra caused a false statement to enter interstate commerce either.  *See Maximum Availability Ltd.*, 2010 WL 11508471, at *7 (claim failed to allege widespread use of statement constituting advertising or sufficient facts for court to infer that defendants caused statement to enter interstate commerce).

1

2                                                    SIDLEY AUSTIN LLP

3    Dated: August 3, 2023                           By:    */s/ Chad Hummel*
                                                      Chad Hummel (SBN 139055)
4                                                     chummel@sidley.com
                                                      SIDLEY AUSTIN LLP
5                                                     1999 Avenue of the Stars, Suite 1700
                                                      Los Angeles, CA 90067
6                                                     Tel: (310) 595-9505
                                                      Fax: (310) 595-9501
7
                                                      Angela C. Zambrano (*Pro Hac Vice*)
8                                                     angela.zambrano@sidley.com
                                                      Margaret Hope Allen (*Pro Hac Vice*)
9                                                     margaret.allen@sidley.com
                                                      SIDLEY AUSTIN LLP
10                                                    2021 McKinney Avenue, Suite 2000
                                                      Dallas, TX 75201
11                                                    Tel: (214) 981-3300
                                                      Fax: (214) 981-3400
12
                                                      Sarah A. Hemmendinger (SBN 298659)
13                                                    shemmendinger@sidley.com
                                                      SIDLEY AUSTIN LLP
14                                                    555 California Street, Suite 2000
                                                      San Francisco, CA 94104
15                                                    Telephone: (415) 772-7413
                                                      Facsimile: (415) 772-7400
16
                                                      *Attorneys for Defendant Tundra Inc.*
17

18

19

20

21

22

23

24

25

26

27

28