Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice*)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice*)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

*Attorneys for Defendant
Tundra Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAIRE WHOLESALE, INC., | Case No.: 3:23-cv-02538-CRB |
| Plaintiff, | **TUNDRA INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| v. | |
| TUNDRA INC., | |
| Defendant. | Assigned to: Hon. Charles R. Breyer<br>Date: December 8, 2023<br>Time: 10:00 a.m.<br>Location: Courtroom 6 – 17th Floor |

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................. 2

    A.    Equitable Estoppel Applies to Faire's Remaining Claims .......................................... 2

        1.    The Results of Applying the Equitable Estoppel
            Doctrine Under California and Federal Common
            Law Are the Same ................................................................. 2

        2.    Equitable Estoppel Does Not Require a Nonsignatory's
            "Close Relationship" to Signatory ....................................... 4

        3.    Faire's Claims Are Inextricably Intertwined
            With Its Service Terms ......................................................... 6

    B.    Tundra Did Not Waive Its Right to Arbitrate Faire's
        Remaining Claims ................................................................................ 8

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007) ...................................................................... 3, 4

*Armstrong v. Michaels Stores, Inc.*,
  59 F.4th 1011 (9th Cir. 2023) .................................................................................. 8, 10

*Chess v. CF Arcis IX LLC*,
  No. 20-CV-01625-CRB, 2020 WL 4207322 (N.D. Cal. July 22, 2020) ................... 7-8

*Coinbase, Inc. v. Bielski*,
  599 U.S. __, 143 S. Ct. 1915 (June 23, 2023) .............................................................. 8

*Colores v. Ray Moles Farms, Inc.*,
  1:21-cv-00101-JLT-BAM, 2023 WL 2752379 (E.D. Cal. Mar. 31, 2023) ................. 10

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
  No. 20-CV-00574-BLF, 2020 WL 3869186 (N.D. Cal. July 9, 2020) ......................... 3

*Goldman v. KPMG LLP*,
  173 Cal. App. 4th 209 (2009) ................................................................................... 3, 4

*Hill v. Xerox Bus. Servs., LLC*,
  59 F.4th 457 (9th Cir. 2023) .................................................................................... 8, 10

*Jarboe v. Hanlees Auto Grp.*,
  53 Cal. App. 5th 539 (2020) ....................................................................................... 5

*Just Film, Inc. v. Merch. Servs., Inc.*,
  No. C 10-1993 CW, 2011 WL 3809908 (N.D. Cal. Aug. 29, 2011) ........................... 6

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ........................................................................... 2, 4, 5, 6

*MouseBelt Labs Pte. Ltd v. Armstrong*,
  No. 22-cv-04847-JST, --- F. Supp. 3d ---,
  2023 WL 3735997 (N.D. Cal. May 24, 2023) ...................................................... 3, 5, 6

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) .............................................................................*passim*

*Oasis Med., Inc. v. Biocia, Inc.*,
  No. CV 21-8879-DMG, 2022 WL 2189616 (C.D. Cal. Jan. 10, 2022).................... 4, 5

*Roblox Corp. v. WowWee Grp. Ltd.*,
    No. 22-CV-04476-SI, 2023 WL 2433970 (N.D. Cal. Mar. 9, 2023)............................................4

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008)........................................................................................................6

*Setty v. Shrinivas Sugandhalaya LLP*,
    3 F.4th 1166 (9th Cir. 2021) ..................................................................................................2, 3

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008)....................................................................................................5, 6

*United Specialty Ins. Co. v. Clean & Sober Media LLC*,
    No. 2:20-cv-02765-RGK-KS, 2021 WL 3623300 (C.D. Cal. Apr. 16, 2021)..........................10

**Statutes**

15 U.S.C. § 1125.................................................................................................................................1

18 U.S.C. § 1030....................................................................................................................1, 6, 7, 8

Cal. Penal Code § 502............................................................................................................1, 6, 7, 8

Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ..............................................................................1, 6, 7, 8

# I.  INTRODUCTION

Not only does Faire concede in its Opposition that its two tortious interference claims are arbitrable,[1] Faire has now filed an Arbitration Demand against Tundra before the American Arbitration Association that dispels any remaining doubt that all of its other claims in this litigation are arbitrable, too.[2]  Therein, Faire volunteers a description of its arbitrable claims that succinctly shows that the bases of its four remaining claims rely upon the very same Terms of Service and Brand Terms of Service (collectively, the "Service Terms") containing the arbitration clause:

> Faire brings this [arbitration] action to stop Tundra's unauthorized solicitation, storage, and use of Faire's users' credentials for logging into Faire's online marketplace and Tundra's use of those credentials to gain access to non-public portions of Faire's computer network. Tundra's actions interfere with Faire's business and contractual agreements, including by inducing Faire's users to breach their agreements with Faire.

*See* Arb. Demand at 1.[3]

Even putting aside these concessions, Faire's four remaining claims are arbitrable under the equitable estoppel doctrine, which Faire fundamentally misunderstands in its Opposition.  Whether California or federal common law is applied here, a "close relationship" between a nonsignatory and signatory is not required.  Moreover, each claim is inextricably intertwined with and dependent upon the Service Terms, which Faire also alleges as to each claim that *Tundra itself* violated.

Finally, Tundra did not waive any right to arbitrate all of Faire's claims simply by filing a motion to dismiss.  Tundra asserted its unequivocal intent to seek arbitration in its first responsive pleading, and moved to compel arbitration two days after receiving the operative complaint in this action (and two months after the original complaint).  This is a far cry from demonstrating waiver.

For the reasons explained in this Reply and in Tundra's Motion, the Court should compel all of Faire's claims to arbitration.

---

[1] Shockingly, Faire has now agreed to arbitrate its claims for intentional interference of prospective economic advantage (IIPEA), intentional interference with contractual relations (IICR), and violation of California's Unfair Competition Law ("UCL"), to the extent based on the interference claims (Opp'n at 2, 5) — despite threatening to bring sanctions when Tundra asked to confer on this Motion.  Faire's flip-flop reveals its procedural game-playing and exemplifies the bullying behavior that characterizes its business dealings and litigation strategy in this action.

[2] Faire's remaining claims allege violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; UCL (to the extent not based on interference claims); and the Lanham Act, 15 U.S.C. § 1125.

[3] Ex. A to Declaration of Margaret Hope Allen ("Allen Decl."), attached hereto.

1

## II. ARGUMENT

2

**A.      Equitable Estoppel Applies to Faire's Remaining Claims.**

3        Putting aside the Opposition's concession to arbitrate Faire's two tortious interference

4   claims,[4] the remaining claims should be compelled to arbitration under either California or federal

5   common law, which are functionally the same in this circumstance.  In any event, Tundra need not

6   show a "close relationship" to a signatory, especially since Faire declined to sue its own customers

7   despite alleging that Tundra induced these customers to violate the Service Terms.

8
**1.      The Results of Applying the Equitable Estoppel Doctrine Under
              California and Federal Common Law Are the Same.**

9        Tundra has never disagreed that California common law applies to the question of

10  arbitrability here.  *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) ("In

11  determining whether parties have agreed to arbitrate a dispute, we apply general state-law principles

12  of contract interpretation, while giving due regard to the federal policy in favor of arbitration by

13  resolving ambiguities as to the scope of arbitration in favor of arbitration.") (internal quotations

14  omitted).  But Faire is wrong that the equitable estoppel doctrine is more narrow under California

15  than under federal law.  Under California common law, in order for a nonsignatory to compel a

16  signatory to arbitrate, the signatory's claims must be "intertwined with," "arise out of," or "relate

17  directly to" the contract providing for arbitration.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122,

18  1130 n.5 (9th Cir. 2013) (quoting *Mundi*, which applies the "substantive law on equitable estoppel

19  that a California court would have applied").  Under federal common law, the inquiry is similar,

20  examining whether "the subject matter in dispute [is] intertwined with the contract providing for

21  arbitration." *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021).  Faire does

22  not explain why or how these two standards, when applied to the instant case, would differ in either

23  their application or results.  Indeed, as observed by the California Court of Appeals in a case cited

24  by Faire, "***under both federal and California decisional authority***, a nonsignatory defendant may

25  invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of

26  action against the nonsignatory are 'intimately founded in and intertwined' with the underlying

27

28  _____
[4] Accordingly, any determination as to Faire's claims for IIPEA and IICR is now in the hands of the arbitrator; Faire has agreed that this Court no longer has jurisdiction over these two claims.

contract obligations." *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 227 & n.11 (2009) (emphasis added). Faire cites no authority to support its characterization of the California standard as "strict" and "exacting," or the federal standard as "more permissive." Opp'n at 6-7. In incorrectly claiming that Tundra seeks to apply "the more permissive . . . federal common law standard requiring only that *the subject matter* in dispute is intertwined with the contract" (*id.* at 6 (emphasis in original)), Faire seeks to create a distinction in the law that does not exist.

Faire's articulation of the federal common law standard appears to derive from *MouseBelt Labs Pte. Ltd v. Armstrong*, No. 22-cv-04847-JST, --- F. Supp. 3d ---, 2023 WL 3735997, at *7-8 (N.D. Cal. May 24, 2023), which Tundra cites in its Motion as a recent and instructive case from this district. There, Judge Tigar compared the parties' opposing interpretations of the federal common law requirements for equitable estoppel and ultimately opted to apply the standard argued for by defendants and set forth by the Ninth Circuit in *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th at 1169 (considering whether "the subject matter in dispute [is] intertwined with the contract providing for arbitration"), rather than accepting the plaintiff's misinterpretation of *Mundi* as articulating a federal common law standard requiring "both that (1) [plaintiff's] 'claims were intertwined with the underlying contractual obligations' and (2) there is a 'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract.'" *MouseBelt*, 2023 WL 3735997, at *7-8. Not only had *Mundi* already been described in a later Ninth Circuit opinion as "appl[ying] the same substantive law on equitable estoppel that a California court would have applied"[5] (and thus did not purport to articulate the federal common law standard), ***even if Mundi purported to articulate the federal common law standard***, the language that [plaintiff] quotes as representing a second requirement is not, in fact, a requirement." *Id.* at *8 (emphasis added, citations omitted). "The *Mundi* court held, and held only, that in order for a nonsignatory to compel a signatory to arbitrate, the signatory's claims must be 'intertwined with,' 'arise out of,' or 'relate directly to' the contract

---

[5] The California and federal common law standards applied in the Ninth Circuit are so similar that courts routinely do not state categorically which standard they are applying. *See, e.g., Mundi*, 555 F.3d at 1044-47; *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, No. 20-CV-00574-BLF, 2020 WL 3869186, at *6 (N.D. Cal. July 9, 2020); *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 840-41 (N.D. Cal. 2007).

3

providing for arbitration." *Id.* (quoting *Kramer*, 705 F.3d at 1130 n.5) (internal quotations omitted). In other words, neither the California nor federal common law standards require a "close relationship" between the signatory and nonsignatory.  Moreover, the *Mundi* court did not explicitly opine on whether the federal common law standard was different in any practical sense from the California common law standard,[6] or whether the California standard was "strict" and "exacting" and the federal common law standard "more permissive" (Opp'n at 6-7).

### 2. Equitable Estoppel Does Not Require a Nonsignatory's "Close Relationship" to Signatory.

Faire goes on to contend that "another essential element of a claim for equitable estoppel under California law" is a "close relationship, such as corporate affiliate" between the nonsignatory and the signatory.  Opp'n at 7-8.  This is incorrect.  Under California law, equitable estoppel allows a nonsignatory to enforce an arbitration agreement "in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'"  *Kramer*, 705 F.3d at 1128-29 (quoting *Goldman*, 173 Cal. App. 4th at 219, 221) (internal citations omitted); *Amisil*, 622 F. Supp. 2d at 840-41 (explaining two types).  The instant Motion involves the former; as discussed below, the first of the three cases cited by Faire involves the latter.  *See Roblox Corp. v. WowWee Grp. Ltd.*, No. 22-CV-04476-SI, 2023 WL 2433970, at *7 & n.9 (N.D. Cal. Mar. 9, 2023) (quoting first scenario in *Kramer*, without mention of second scenario, to conclude that equitable estoppel could be invoked by nonsignatory defendants to compel signatory plaintiff's claims to arbitration).

In the first case cited by Faire, *Oasis Med., Inc. v. Biocia, Inc.*, No. CV 21-8879-DMG (AGRx), 2022 WL 2189616, at *8 (C.D. Cal. Jan. 10, 2022), the district court required an "'integral relationship' between the party with whom the plaintiff agreed to arbitrate and the non-signatory

---

[6] Rather, implicit in the Court's statement—that "even if *Mundi* purported to articulate the federal common law standard, the language that [plaintiff] quotes as representing a second requirement is not, in fact, a requirement"—is the understanding that the plaintiff's so-called "first" requirement (that its "claims were intertwined with the underlying contractual obligations," per *Mundi*) is indeed also a requirement of the federal common law standard.

1  seeking to invoke arbitration," citing to *Jarboe v. Hanlees Auto Grp.*, 53 Cal. App. 5th 539, 552

2  (2020).  But *Jarboe* applied to circumstances involving **_nonsignatory and signatory_** defendants,

3  "where the claims are based on the same facts and are inherently inseparable from arbitrable claims

4  against signatory defendants."  *Id.* at 552-54 (collecting cases).  The same was the case in *Oasis*: the

5  signatory plaintiff alleged misconduct by both a signatory to its arbitration agreement and two

6  nonsignatories; the plaintiff did "not dispute that the [agreement] contain[ed] a binding arbitration

7  clause, or that [its] claims ar[o]se out of or relate[d] to" the agreement, but argued that the two

8  nonsignatories could not invoke the arbitration clause.  *Oasis*, 2022 WL 2189616, at *8.  Applying

9  *Jarboe* and other California cases involving simultaneous claims by a signatory against another

10  signatory and a nonsignatory, the district court concluded that one nonsignatory did not have the

11  requisite "formal corporate relationship" with the signatory defendant, and the other nonsignatory's

12  alleged misconduct was outside of scope of his relationship with the signatory defendant.  *Id.*

13  Given that Faire has no claims against a signatory defendant in the instant action (because Faire has

14  opted not to sue its own customers for breach of its Service Terms), *Oasis* is inapplicable.

15      Next, despite its assertion that California common law applies, Faire also relies on *Mundi*'s

16  examination of the Second Circuit's decision in *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d

17  354, 361 (2d Cir. 2008), which does not purport to apply California common law and required "a

18  relationship among the parties of a nature that justifies a conclusion that the party which agreed to

19  arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar

20  dispute with the adversary which is not a party to the arbitration agreement."  *Mundi*, 555 F.3d at

21  1046.  But this district has explicitly rejected a plaintiff's assertion that *Mundi* stood for the addition

22  of a "close relationship" requirement: "The *Mundi* court held, and held only, that in order for a

23  nonsignatory to compel a signatory to arbitrate, the signatory's claims must be 'intertwined with,'

24  'arise out of,' or 'relate directly to' the contract providing for arbitration."  *Mousebelt,* 2023 WL

25  3735997, at *8 (quoting *Kramer*, 705 F.3d at 1130 n.5) (internal quotations omitted).[7]

---

26  [7] Faire again misstates the Court's opinion in claiming that *Mousebelt* "declined to require a close
27  relationship" because "*Mundi* was not a federal common law equitable estoppel case."  Opp'n at 8.
    Put simply, the Court declined to require a close relationship because a "close relationship" is "not,
28  in fact, a requirement" for equitable estoppel under federal common law, and it observed the same
    to be true for California common law as articulated in *Mundi*.  *Mousebelt,* 2023 WL 3735997, at *8.

1    The third case cited by Faire, *Just Film, Inc. v. Merch. Servs., Inc.*, relies heavily on two

2    opinions from the Second Circuit, *Sokol* and *Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir.

3    2008).  *See* No. C 10-1993 CW, 2011 WL 3809908, at *5 (N.D. Cal. Aug. 29, 2011).  Despite

4    Faire's argument that California common law governs, neither *Sokol* nor *Ross* involve any

5    application of California law, nor did the Court in *Just Film* look to any cases purporting to apply

6    the California standard.  The Court also cited *Mundi*, but notably did not interpret *Mundi* as creating

7    a Ninth Circuit requirement of a "close relationship," either.  *Id.* at *5 & n.5 (observing that *Mundi*

8    "not[ed] the holding in *Sokol*" and "that other courts have found this relationship to be a

9    requirement").  Moreover, *Just Film* was decided several years before the Ninth Circuit clarified

10   *Mundi* in *Kramer*, in which it articulated *Mundi*'s holding absent of any reference to a "close

11   relationship."  *See Kramer*, 705 F.3d at 1130 n.5 ("Like the California courts, . . . the *Mundi* court

12   held that in order for a nonsignatory to compel a signatory to arbitrate, the signatory's claims must

13   be 'intertwined with,' 'arise out of,' or 'relate directly to' the contract providing for arbitration. . . .

14   [T]he mere fact that the court in *Mundi* referred to other federal court opinions in formulating its

15   holding regarding equitable estoppel does not mean that *Mundi* was stating federal common law.");

16   *MouseBelt*, 2023 WL 3735997, at *8 (stating a close relationship "is not, in fact, a requirement").

17              **3.      Faire's Claims Are Inextricably Intertwined With Its Service Terms.**

18              Even if this Court applies what Faire fashions as the so-called more "exacting" rule[8] (which

19   Tundra believes has the same effect as the federal common law rule, and which Faire admits

20   requires "the subject matter in dispute [to be] intertwined" with its claims (Opp'n at 6, emphasis

21   omitted)), the Motion already meets this standard and all of Faire's claims should still be compelled

22   to arbitration.  As more fully detailed in the Motion, Faire's claims are inextricably bound up with

23   its Service Terms because they are predicated on allegations that Tundra induced Faire users to

24   shirk and eventually abdicate their contractual obligations to Faire.  In addition to the tortious

25   interference claims that Faire has agreed to arbitrate, Faire's CFAA, CDAFA, and  UCL claims are

26   dependent upon allegations that Tundra improperly accessed Faire's website using users' login

27   credentials, in violation of §§ 4 and 14 of Faire's Terms of Service.  *See* Am. Compl. ¶¶ 34, 44, 69-

28   _____

[8] *See* Opp'n at 6 (quoting *Kramer*, 705 F.3d at 1129).

71, 78-83, 90-91, 100-102, 108.  In other words, these claims are not viable without Faire concurrently alleging unpermitted access by Tundra (allegedly unpermitted by virtue of the Service Terms).  *See, e.g.*, *id.* ¶¶ 67-68 (as to CFAA claim, alleging "Tundra has been aware of section 4 in Faire's Terms of Service prohibiting disclosures of passwords to others. Faire notified Tundra of its Terms of Service on February 14, 2023 and expressly notified Tundra that it was not authorized to access Faire user accounts on Faire using the users' credentials."); ¶¶ 78-82 (as to CDAFA claim, alleging that "[w]ithout permission from Faire, Tundra knowingly accessed" Faire's website).

Likewise, in addition to its tortious interference claims, Faire's Lanham Act and UCL claims are inextricably bound up with an alleged scheme of "abuse of Faire's Faire Direct program" in which Tundra "encouraged" customers to violate § 9.b. of Faire's June 2022 Brand Terms of Service and §§ 9.b. and 19 of Faire's July 2023 Brand Terms of Service, which provide that Faire will waive its own commission only in certain instances, "thereby depriving Faire of commissions." Am. Compl. ¶¶ 35-36, 91, 94, 100, 104, 108, 115-16.  Again, this obligation to abide by Faire's commission structure exists only by virtue of its Brand Terms of Service, and these claims are entirely dependent on these provisions to establish wrongdoing by Tundra.  *See id.* ¶¶ 91, 100.

In addition, Faire's claims go well beyond simply explicitly referencing the contract at issue, to specifically and repeatedly alleging that *Tundra itself* violated Faire's contractual agreements.  *See id.* ¶ 45 ("Tundra's actions also violate several provisions of Faire's Terms of Service, including the restrictions in Section 7.b., and many of the prohibited uses in Section 14."); *id.* ¶ 59 ("Faire sent a letter to Tundra notifying it that its conduct violated Faire's terms"); Ex. B to Am. Compl. at 3 ("Wholesale Co-ops [sic] actions also violate several provisions of Faire's Terms of Service, including the restrictions in section 7.b., and the prohibited uses in section 14.a., b., d., e., f., j., m., n., and p.").[9]  Thus, each of Faire's claims, which "repeat and reallege" these paragraphs, also alleges a violation by Tundra of Faire's Service Terms.  *See Chess v. CF Arcis IX*

---

[9] Faire appears to now backtrack its allegations throughout the Amended Complaint that "repeat[] and reallege[]" foregoing paragraphs, as well as its assertions that Tundra violated Faire's Service Terms.  Opp'n at 10-11.  Tundra obviously does not contend that "any agreement mentioned anywhere" in preceding paragraphs renders subsequent claims inextricably intertwined.  *See id.*  For example, Tundra points to Faire's allegations that *Tundra itself* violated the Service Terms, which Faire suggests for the first time in its Opposition are in fact mere hypotheticals.  *Id.* at 11.  Faire cannot pick and choose which allegations it did and did not intend to blanketly incorporate.

7

*LLC*, No. 20-CV-01625-CRB, 2020 WL 4207322, at *12 (N.D. Cal. July 22, 2020).[10]  Furthermore, contrary to Faire's attempts to distinguish *Chess*, it is of no consequence that Faire does not bring a claim for breach of contract, especially since Tundra is a nonsignatory and not party to any contract with Faire.  *See id.* at *12 (allegation of contract violation was incorporated into "each claim," including, *inter alia*, claims for UCL violation, fraud by misrepresentation, declaratory relief).

**B.  Tundra Did Not Waive Its Right to Arbitrate Faire's Remaining Claims.**

Finally, with regard to Faire's assertions that Tundra waived its right by not arbitrating Tundra's own affirmative claims filed against Faire before Judge Martinez-Olguin in May 2023, or by not moving to compel arbitration prior to moving to relate this action and that earlier-filed action, Faire points to no authority that suggests either of these actions is "inconsistent with [Tundra's] right to arbitrate" *Faire's claims* against Tundra.  *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023).  Per the Ninth Circuit, "a party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration, and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citations omitted).  As illustrated by the timeline below, Tundra acted consistently with its right to arbitrate in the less-than-three-months since receiving Faire's claims:

- May 23, 2023:  Faire filed its original complaint this action.  ECF No. 1.

- July 6, 2023:  Tundra filed its Motion to Dismiss Faire's original complaint, which unequivocally stated Tundra's intention to move to compel arbitration.[11]  ECF No. 23 at 3 n.3 ("Tundra intends to move to compel arbitration of Faire's claim for intentional interference with contract, pursuant to the mandatory and exclusive obligations to arbitrate in Section 26 of Faire's Terms of Service, which is attached to and relied upon by the

---

[10] Even in its Opposition, Faire admits *again* that its CFAA and CDAFA claims are based on Tundra allegedly not complying with Faire's contract terms.  *See* Opp'n at 11 ("The root of these claims is that Tundra avoided Faire's terms[.]").

[11] Faire baselessly accuses Tundra of filing the instant Motion "to take advantage" of the U.S. Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 599 U.S. __, 143 S. Ct. 1915 (June 23, 2023), and points to what it claims is suspect timing of Tundra's Motion to Dismiss Faire's original complaint, in which Tundra first notified Faire and the Court of its intent to seek arbitration.  As further detailed herein, Tundra did so in its first responsive pleading; neither nefarious intent nor litigation tactics set Tundra's deadline to respond to Faire's original complaint.

Complaint.").  Tundra did not disclaim arbitration of any of Faire's other claims.

- July 19, 2023:  Counsel for Tundra requested to meet and confer with counsel for Faire "about the motion to compel arbitration we plan to file in the Faire v. Tundra matter."  Ex. 6 to Newby Decl. (ECF No. 35-7).  Counsel for Faire indicated it would be unavailable to confer for another five days.  Ex. 7 to Newby Decl. (ECF No. 35-8).

- July 20, 2023:  Counsel for Tundra reiterated its request to meet and confer on its forthcoming motion to compel arbitration.  Tundra further notified Faire that it "plan[ned] to file a motion to compel all of Faire's claims to arbitration under the terms of its terms of service and brand terms of service" and asked whether Faire's counsel would oppose the motion.  *Id.*[12]

- July 20, 2023:  Later that day, the date Faire was due to file its opposition to Tundra's Motion to Dismiss, Faire decided instead to amend its original complaint, which completely mooted Tundra's original Motion to Dismiss.  ECF No. 29.  The Amended Complaint attached a new contract, the July 5, 2023 Brand Terms of Service, to Faire's claims for the first time.  ECF No. 29-4.  This new contract incorporated the arbitration clause in Faire's Terms of Service.

- July 24, 2023:  After Faire continued to delay in responding to Tundra's request to confer on its forthcoming motion to compel arbitration, Tundra again asked Faire to confirm whether it intended to oppose.  Ex. 10 to Newby Decl. (ECF No. 35-11).

- July 25, 2023:  ***Six days*** after Tundra first tried to confer with Faire, Faire finally responded to Tundra's conferral request by threatening sanctions: "Faire reserves its rights to pursue sanctions both at the district court and appellate level should Tundra proceed."  *Id.*

- July 27, 2023:  Tundra filed its Motion to Compel Arbitration.  The Motion noticed a hearing date of December 8, 2023 (ECF No. 31), which was agreed by the parties.

---

[12] Tundra's prior statement in its Motion to Dismiss Faire's original complaint that it intended to move to compel Faire's IICR claim did not constitute waiver of Tundra's right to seek arbitration as to any of Faire's other claims.  Tundra never suggested that it did not intend to compel any of Faire's other claims.  Indeed, only two weeks thereafter, Tundra informed Faire of its intent to move to compel all of Faire's claims to arbitration.  To claim that Tundra's prompt actions illustrate inconsistency in asserting Tundra's right to arbitration is unsupported by any case that Faire cites.

9

- August 3, 2023:   A week after filing its Motion to Compel Arbitration, Tundra filed its Motion to Dismiss Faire's Amended Complaint, expressly referencing its pending Motion to Compel Arbitration and Tundra's intent to exercise its right to arbitrate.  ECF No. 33.

Tundra's motion to dismiss does not evidence waiver in light of the "totality of [Tundra's] actions."  *Hill*, 59 F.4th at 460.  *See also United Specialty Ins. Co. v. Clean & Sober Media LLC*, No. 2:20-cv-02765-RGK-KS, 2021 WL 3623300, at \*4 (C.D. Cal. Apr. 16, 2021) ("[T]he filing of a motion to dismiss on the merits is one factor determining waiver" but is not "dispositive" and does not "conclusively demonstrate[] acts inconsistent with the right to compel arbitration").  As illustrated above, Tundra expressed its intent to seek arbitration in its first responsive pleading.  *See Armstrong*, 59 F.4th at 1011 (no waiver where defendant filed motion to dismiss, alluding to right to arbitrate and intention to rely upon that right).  Moreover, a mere two months passed between Faire's original complaint and the Motion to Compel Arbitration; even less time passed between the complaint and Tundra first informing Faire of its intent to seek arbitration.  This does not constitute "actively litigat[ing] the merits of [the] case *for a prolonged period of time* in order to take advantage of being in court."  *See id.* at 1015 (emphasis added).  "Instead, the Ninth Circuit has found waiver where a motion to dismiss was coupled with prolonged delays ranging from nine to eighteen months and significant additional litigation activity."  *United Specialty*, 2021 WL 3623300, at \*4 (collecting cases and finding no waiver where motion to dismiss was filed and motion to compel arbitration filed five months after complaint); *Armstrong*, 59 F.4th at 1015 (10 months); *Colores v. Ray Moles Farms, Inc.*, 1:21-cv-00101-JLT-BAM, 2023 WL 2752379, at \*4 (E.D. Cal. Mar. 31, 2023) (11 months).  Moreover, Tundra asked Faire to stay briefing and adjourn hearing on the Motion to Dismiss until this Motion can be resolved; Faire refused, thus proving that Faire has suffered no prejudice and that Faire's waiver arguments are hollow gamesmanship.[13]

### III.  CONCLUSION

Tundra respectfully requests all of Faire's claims be compelled to arbitration and the case stayed.

---

[13] *See* Allen Decl. ¶ 3 & Ex. B.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIDLEY AUSTIN LLP

Dated: August 24, 2023

By:    */s/ Margaret Hope Allen*
Chad Hummel (SBN 139055)
chummel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 595-9505
Fax: (310) 595-9501

Angela C. Zambrano (*Pro Hac Vice*)
angela.zambrano@sidley.com
Margaret Hope Allen (*Pro Hac Vice*)
margaret.allen@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7413
Facsimile: (415) 772-7400

*Attorneys for Defendant Tundra Inc.*

## **LOCAL RULE 5-1 ATTESTATION**

I, Chad Hummel, am the ECF User whose ID and password are being used to file Defendant Tundra Inc.'s Reply in Support of Motion to Compel Arbitration.  In compliance with Civil L.R. 5-1(h)(3), I hereby attest that the signatory has concurred in this filing.

Date: August 24, 2023

**SIDLEY AUSTIN LLP**

By: */s/ Chad Hummel*
Chad Hummel (SBN 139055)
*Attorney for Tundra Inc.*