1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7        FAIRE WHOLESALE, INC.,                          Case No.  23-cv-02538-JSC

8                        Plaintiff,

                                                         **ORDER RE: TUNDRA'S MOTION TO**
9               v.                                       **COMPEL ARBITRATION AND**
                                                         **MOTION TO DISMISS**
10       TUNDRA, INC.,
                                                         Re: Dkt. Nos. 31, 33
11                       Defendant.

12

13           Faire Wholesale, Inc. (Faire) sues its competitor, Tundra, Inc. (Tundra), challenging

14   Tundra's unauthorized use of Faire's users' login credentials to gain access to Faire's non-public

15   information.  (Dkt. No. 29.)[1]  Tundra moves to compel arbitration and dismiss.  (Dkt. Nos. 31, 33.)

16   Having carefully considered the briefing, and with the benefit of oral argument on December 7,

17   2023, the Court DENIES Tundra's motion to compel arbitration.  The remaining statutory claims

18   are not intricately intertwined with, nor dependent on, Faire's service terms.  So, Tundra—a

19   nonsignatory to the service terms, and thus the arbitration agreement—cannot force Faire to

20   arbitrate those claims.

21           Tundra's motion to dismiss is GRANTED with leave to amend as to the Computer Fraud

22   and Abuse Act claim, California Comprehensive Computer Data Access and Fraud Act claim, and

23   the California Unfair Competition Law claim to the extent it relies on the two former claims.

24   Faire can plausibly plead those claims, but has not yet done so.  The motion is DENIED as to the

25   rest of the California Unfair Competition Law claim and the Lanham Act claim.  Faire plausibly

26   pleads Tundra made advertising misrepresentations likely to deceive the public into believing

27   ──────────────────

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    Tundra had partnered with Faire and was permitted to access Faire's computers.

2                                    **COMPLAINT ALLEGATIONS**

3            Faire operates an online marketplace connecting wholesalers with retailers.  (Dkt. No. 29

4    ¶¶ 2, 18.)  To list a product or search the catalog of products for sale on Faire's platform, users

5    must create an account with a username and password.  (*Id.* ¶ 3.)  Only users who have logged into

6    password-protected accounts may access inventory, pricing, and contact information related to the

7    goods available for sale on Faire's platform.  (*Id.* ¶¶ 3, 7.)  Faire's service terms prohibit users

8    from disclosing their passwords to third parties.  (*Id.* ¶ 25.)

9            Ordinarily, Faire makes a commission on successful transactions on its platform.  (*Id.* ¶

10   21.)  As an alternative incentive for small businesses, Faire offers the "Faire Direct" program,

11   which provides wholesalers with a personalized link they can use to invite retailers to order

12   directly from their shop on Faire's platform.  (*Id.*)  When retailers order through these

13   personalized links, wholesalers pay 0% commission to Faire.  (*Id.*)

14           In 2022, Tundra created a comparison tool called Wholesale Co-Op.  (*Id.* ¶¶ 5-6.)

15   Wholesale Co-Op encourages its users to disclose their Faire login credentials.  (*Id.* ¶ 33.)  To

16   entice users to join Wholesale Co-Op and disclose their Faire login credentials, Wholesale Co-Op

17   offers to pay the retailers up to 10% "cash back" on every purchase they make from a Faire

18   wholesaler.  (*Id.* ¶ 32.)  Wholesale Co-Op directly solicits sellers on Faire's platform to provide

19   their Faire Direct links to retailers registered with Wholesale Co-Op by "promising to promote

20   their brands to new retailers and give them greater exposure" to Wholesale Co-Op retailers.  (*Id.* ¶

21   35.)  Wholesale Co-Op charges sellers who participate in the Faire Direct program a fee of 15%

22   "that replaces the marketplace commission for new retailers to a marketplace and their reorders."

23   (*Id.* ¶¶ 35-36.)  Wholesale Co-Op then pays a percentage of this fee as "cash back" to the retailers

24   and pockets the rest.  (*Id.* ¶ 36.)  In doing so, Wholesale Co-Op diverts commissions properly

25   owed to Faire to Tundra.  (*Id.*)

26           After collecting Faire's users' login credentials via Wholesale Co-Op, Tundra accesses

27   Faire's users' accounts and copies information from otherwise secured portions of Faire's

28   platform.  (*Id.* ¶¶ 40, 42, 55.)  This non-public information includes the contact information of

United States District Court
Northern District of California

2

1 Faire's users and inventory and pricing information of goods available on Faire's platform.  (*Id.* ¶
2 56.)  Tundra uses the information it scrapes from Faire's platform to market Wholesale Co-Op.
3 (*Id.* ¶ 57.)

4 Faire sues Tundra for violation of the Computer Fraud and Abuse Act, violation of
5 California's Comprehensive Computer Data Access and Fraud Act, tortious interference with
6 prospective economic advantage, intentional interference with contract, violation of California's
7 Unfair Competition Law (UCL), and violation of the Lanham Act.  Tundra now moves to compel
8 arbitration and, in the alternative, dismiss Faire's amended complaint. (Dkt. Nos. 31, 33.)

**DISCUSSION**

**A. Motion to Compel Arbitration**

11 Tundra moves to compel arbitration of all Faire's claims.  Faire agrees to arbitrate its
12 claims for tortious interference with prospective economic advantage and intentional interference
13 with contract, as well as the portions of its UCL claim based on Faire's interference claims.  (Dkt.
14 No. 35 at 6.)  Consequently, the Court evaluates Tundra's motion to compel arbitration only as to
15 Faire's remaining claims: 1) the Computer Fraud and Abuse Act, 2) California's Comprehensive
16 Computer Data Access and Fraud Act, 3) California's UCL, and 4) the Lanham Act.

17 The Federal Arbitration Act governs arbitration agreements "evidencing a transaction
18 involving commerce."  9 U.S.C. § 2.  Such agreements "shall be valid, irrevocable, and
19 enforceable, save upon such grounds as exist at law or in equity for the revocation of any
20 contract."  *Id.*  In resolving a motion to compel arbitration, the Court must decide two "gateway"
21 issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement
22 encompasses the dispute at issue.  If both conditions are met, the [Federal Arbitration Act]
23 requires the court to enforce the arbitration agreement in accordance with its terms."  *Lim v.*
24 *TForce Logistics*, LLC, 8 F.4th 992, 999 (9th Cir. 2021) (cleaned up).

25 Faire's service terms bind signatories to its arbitration terms:

> PLEASE READ THIS ARBITRATION PROVISION CAREFULLY
> BECAUSE IT AFFECTS YOUR RIGHTS.
>
> You and Faire agree that any dispute, claim or controversy arising out
> of or relating to these Terms or the breach, termination, enforcement,

1

2

3

4

5

> interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be settled by binding arbitration, except that each party retains the right to: (a) bring an individual action in small claims court; (b) the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights; (c) pursue an enforcement action through the applicable federal, state or local agency if that action is available; and (d) seek injunctive relief in a court of law in aid of arbitration.

6 (Dkt. No. 29-1 at 12.)  Tundra is not a signatory to Faire's service terms.  (Dkt. No. 31 at 6.)

7 "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration

8 any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of

9 *Am.*, 475 U.S. 643, 648 (1986); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th

10 Cir. 2013) ("Generally, the contractual right to compel arbitration may not be invoked by one who

11 is not a party to the agreement and does not otherwise possess the right to compel arbitration."

12 (cleaned up)).  Acknowledging no agreement to arbitrate exists between the parties, Tundra moves

13 to compel arbitration of all Faire's claims under an equitable estoppel theory.

14 **1.  The Court Decides Whether Tundra Can Require Arbitration**

15 In a footnote, Tundra argues the arbitrator should decide "whether the arbitration clause in

16 Faire's service terms encompasses all of Faire's claims" based on Faire's incorporation of the

17 AAA Rules, which empower arbitrators to decide the existence, scope, and validity of arbitration

18 agreements.  (Dkt. No. 31 at 11 n.3.)  Tundra's argument is foreclosed by binding Ninth Circuit

19 precedent.

20 In *Kramer*, a consumer who purchased a car through a dealership sued Toyota.  705 F.3d at

21 1124.  Toyota argued it could compel arbitration because the consumer's purchase contract with

22 the dealer contained an arbitration clause.  But first, Toyota argued the arbitrator, rather than the

23 court, should decide arbitrability because the arbitration agreement included a delegation clause (a

24 provision "expressly provid[ing] that the arbitrator shall decide issues of interpretation, scope, and

25 applicability of the arbitration provision").  *Id*. at 1126-27.  The Ninth Circuit disagreed.  Because

26 the arbitration agreement did "not contain clear and unmistakable evidence that Plaintiffs and

27 Toyota agreed to arbitrate arbitrability," as opposed to the plaintiffs and the dealership, the district

28 court had the authority to decide arbitrability.  *Id*. at 1127 ("Given the absence of clear and

1    unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the

2    district court had the authority to decide whether the instant dispute is arbitrable."). The court

3    reasoned: "[t]he parties to this litigation did not agree to arbitrate arbitrability; Plaintiffs only

4    agreed to arbitrate arbitrability—or any other dispute—with the Dealerships because the

5    arbitration clause is limited to claims between 'you and us'—i.e. Plaintiffs and the Dealerships."

6    *Id.* at 1128.

7         Here, as in *Kramer*, the arbitration agreement is between the plaintiff (Faire) and "you"

8    (users with Faire accounts). Not between Faire and Tundra. Nothing in the arbitration agreement

9    remotely suggests Faire intended to arbitrate arbitrability with nonsignatories such as Tundra. So,

10   under *Kramer*, absent agreement of the parties to this litigation, the arbitrator cannot decide

11   arbitrability.

         **2.   Equitable Estoppel**

12

13        "Generally, in the arbitration context, equitable estoppel allows a nonsignatory to a written

14   agreement containing an arbitration clause to compel arbitration where a signatory to the written

15   agreement must rely on the terms of that agreement in asserting its claims against the

16   nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA,*

17   *LLC*, 140 S. Ct. 1637, 1644 (2020) (cleaned up). Agreements governed by the Federal Arbitration

18   Act permit "a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an

19   arbitration agreement." *Id.*; (*see* Dkt. No. 29-1 at 12 ("The parties agree that the Federal

20   Arbitration Act applies and will govern the interpretation and enforcement of this Arbitration

21   Agreement.")); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)

22   ("General contract and agency principles apply in determining the enforcement of an arbitration

23   agreement by or against nonsignatories."). The Court evaluates whether Tundra may compel

24   arbitration according to California contract law. *See Kramer*, 705 F.3d at 1128; (*see* Dkt. Nos. 29

25   ¶¶ 13-14, 16; 29-1 at 11 ("These terms and any action thereto will be governed by the laws of the

26   State of California without regard to its conflict of laws provisions.")).

27        "Equitable estoppel precludes a party from claiming the benefits of a contract while

28   simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2
3
4
5
6

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

7    *Kramer*, 705 F.3d at 1128-29; *id.* at 29 (holding equitable estoppel requires arbitration only if the

8    plaintiff must rely on the contract containing the arbitration agreement to assert its claims against

9    the defendant).

10        As the party seeking arbitration, Tundra bears the burden of establishing the applicability

11   of equitable estoppel. *See Jones v. Jacobson*, 195 Cal. App. 4th 1, 16 (2011). Tundra seeks to

12   compel arbitration based on the first circumstance. It urges Faire's claims are inextricably

13   intertwined with its service terms "because they are predicated on allegations that [Tundra]

14   induced [Faire's] users to shirk and eventually abdicate their contractual obligations to [Faire]."

15   (Dkt. No. 39 at 10.)

16                            **a.   Computer Fraud and Abuse Act Claim**

17        The Computer Fraud and Abuse Act "prohibits acts of computer trespass by those who are

18   not authorized users or who exceed authorized use. It creates criminal and civil liability for

19   whoever intentionally accesses a computer without authorization or exceeds authorized access,

20   and thereby obtains information from any protected computer." *Facebook, Inc. v. Power*

21   *Ventures, Inc.*, 844 F.3d 1058, 1065–66 (9th Cir. 2016) (cleaned up); 18 U.S.C. § 1030(a). There

22   are two ways of committing the crime of improperly accessing a protected computer: 1) obtaining

23   unauthorized access and 2) exceeding the bounds of authorized access. *Musacchio v. United*

24   *States*, 577 U.S. 237, 240 (2016).

25        Tundra has failed to meet its burden to show Faire must rely on its service terms to assert

26   its Computer Fraud and Abuse Act claim. While Faire's service terms prohibit disclosure of

27   password credentials, Faire is not required to allege violation of this prohibition to meet a required

28   element of the Computer Fraud and Abuse Act claim. Indeed, violation of a website's terms of

1    use does not establish liability under the Act.  *See Facebook, Inc. v. Power Ventures, Inc.*, 844

2    F.3d 1058, 1067 (9th Cir. 2016).  Instead, Faire must demonstrate Faire revoked Tundra's

3    permission to access Faire's password-protected website.  *Id.*  Indeed, that is precisely what

4    Tundra argues in support of its motion to dismiss.  (Dkt. No. 33 at 13-14.)  So, Faire need not and,

5    actually, cannot rely on its service terms to prove this claim.  Equitable estoppel thus does not

6    apply.

7    **b.  Comprehensive Computer Data Access and Fraud Act Claim**

8    California Penal Code § 502 imposes liability on a person who "[k]nowingly accesses and

9    without permission takes, copies, or makes use of any data from a computer, computer system, or

10   computer network, or takes or copies any supporting documentation, whether existing or residing

11   internal or external to a computer, computer system, or computer network."  *Facebook, Inc.*, 844

12   F.3d at 1069.  "In contrast to the [Computer Fraud and Abuse Act], the California statute does not

13   require unauthorized access.  It merely requires knowing access.  What makes that access unlawful

14   is that the person without permission takes, copies, or makes use of data on the computer."  *United*

15   *States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (cleaned up).

16   While Tundra asserts this claim is inextricably intertwined and dependent on Faire's

17   service terms, it provides no analysis to back up this conclusory assertion.  Why is Faire required

18   to prove a violation of Faire's service terms to prove this claim?  Tundra does not say.  As with

19   Faire's Computer Fraud and Abuse Act claim, Faire is not required to allege violation of Faire's

20   service terms to demonstrate Tundra impermissibly took or made use of Faire's data.

21   **c.  Lanham Act Claim**

22   Faire's Lanham Act claim against Tundra for false or misleading advertising accuses

23   Tundra of falsely claiming Faire was aware of and approved Tundra's scheme abusing the Faire

24   Direct program.  (Dkt. No. 29 ¶ 115.)  Faire alleges the false advertising "is likely to deceive

25   retailers and brands into believing that Tundra's marketplace is associated or partnered with

26   Faire's marketplace."  (*Id.* ¶ 116.)  This claim does not rely on Faire's service terms, and Faire is

27   not required to show violation of its service terms to demonstrate Tundra falsely advertised Faire's

28   endorsement or meet any other element of Faire's Lanham Act claim.  Indeed, even Tundra does

United States District Court
Northern District of California

7

1    not contend the Lanham Act claim is predicated on allegations of breach of the service terms.

2    (Dkt. No. 31 at 13 (identifying the claims Tundra believes are predicated on the service terms and

3    excluding the Lanham Act)).

4          Tundra instead contends Faire's Lanham Act claim is predicated on Tundra's abuse of the

5    Faire Direct program to divert commissions owed to Faire to Tundra.  (*Id*.)  Tundra is correct that

6    Faire may reference its Faire Direct program to prove *some* of its damages arising from the alleged

7    Lanham Act violation.  But that is not the same as requiring reliance on Faire's service terms to

8    assert the Lanham Act claim.  *See Kramer*, 705 F.3d at 1129 ("merely making reference to an

9    agreement with an arbitration clause is not enough." (cleaned up)).  Faire may assert its Lanham

10   Act claim without proving, or even alleging, breach of its service terms.  So, Tundra has also

11   failed to show equitable estoppel applies to this claim.

#### d.   Unlawful Competition Law Claim

13         As Faire's California UCL claim is derivative of the above claims, Tundra fails to meet its

14   burden to show equitable estoppel applies for the same reasons.

15                                        * * *

16         Nonsignatory Tundra is not entitled to compel arbitration of Faire's remaining claims

17   under an equitable estoppel theory because Faire is not required to rely on its service terms to

18   assert these claims.  *Kramer*, 705 F.3d at 1129.  While the claims Faire has already agreed to

19   arbitrate may be predicated on allegations Tundra induced Faire's users to violate their contractual

20   obligations to Faire, none of Faire's remaining claims are "intimately founded in and intertwined

21   with" Faire's service terms.  *Id*. at 1128-29.  Accordingly, Tundra's motion to compel arbitration

22   is DENIED.

### B.   Motion to Dismiss

24         Tundra also moves to dismiss Faire's remaining claims.  For the claims to survive, the

25   complaint's factual allegations must raise a plausible right to relief.  *Bell Atl. Corp. v. Twombly*,

26   550 U.S. 544, 554–56 (2007).  Though the Court must accept the complaint's factual allegations

27   as true, conclusory assertions are insufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

28   (2009).  A claim is facially plausible when the complaint pleads enough factual content to justify

United States District Court
Northern District of California

1    the reasonable inference the defendant is liable for the misconduct alleged.  *Id*.

2              **1.   Computer Fraud and Abuse Act Claim**

3              Tundra seeks dismissal of Faire's Computer Fraud and Abuse Act claim on the grounds

4    Faire cannot maintain a claim under either cited subsection of the Act.  Faire alleges Tundra

5    violated 18 U.S.C. § 1030(a)(2)(A), (a)(4)(A), and (c)(4)(A)(i)(I).  (Dkt. No. 29 ¶¶ 70-71.)

6    Section 1030(a)(2)(A) prohibits the intentional unauthorized access into a computer to obtain

7    information from financial records of a financial institution, card issuer, or consumer reporting

8    agency.  18 U.S.C. § 1030(a)(2)(A).  Section 1030(a)(4)(A) does not exist.  *See id*. § 1030(a).

9    Section 1030(c)(4)(A)(i)(I) concerns the punishment for computer trespass.  *Id*. §

10   1030(c)(4)(A)(i)(I).

11             Faire concedes § 1030(a)(2)(A) does not apply.  It contends its citation to this provision is

12   a "typographical error," and it intended to invoke 18 U.S.C. § 1030(a)(2)(C), which prohibits

13   computer trespass to obtain "information from any protected computer."  But Faire may not

14   amend its complaint through its opposition brief.  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145

15   (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition

16   to a motion to dismiss.").  Accordingly, Faire's Computer Fraud and Abuse Act claim is

17   DISMISSED with leave to amend.

18             Tundra also argues Faire "cannot state a claim for violation of [the Computer Fraud and

19   Abuse Act] to the extent that such a claim is based on the copying of publicly available

20   information."  (Dkt. No. 33 at 13.)  But the amended complaint does not allege Tundra copied

21   publicly available information.  Instead, Faire alleges Tundra uses users' login credentials to

22   access password-protected portions of Faire's platform and copy non-public information from

23   Faire's protected computers.  (Dkt. No. 29 ¶ 8.)  This non-public information includes the names

24   and contact information of retailers, buyers, and brand representatives; inventory and pricing

25   information; and retailers' order histories, shopping carts, and ability to place orders.  (Dkt. No. 29

26   ¶¶ 56, 70.)

27             Tundra's reliance on *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201-02 (9th Cir.

28   2022), is misplaced.  There, the Ninth Circuit considered whether LinkedIn could prevent a

United States District Court
Northern District of California

1   competitor "from collecting and using information that LinkedIn users had shared on their public

2   profiles, available for viewing by anyone with a web browser." *Id*. at 1184.  Here, in direct

3   contrast, Faire accuses Tundra of collecting non-public information from Faire's protected

4   computers by employing users' login credentials.  This is exactly the circumstance to which the

5   Computer Fraud and Abuse Act applies: "the [Act]'s prohibition on accessing a computer 'without

6   authorization' is violated when a person circumvents a computer's generally applicable rules

7   regarding access permissions, such as username and password requirements, to gain access to a

8   computer." *hiQ Labs, Inc.*, 31 F.4th at 1201.

9   **2.  Comprehensive Computer Data Access and Fraud Act Claim**

10   Faire alleges Tundra violated California Penal Code § 502(c)(5), which criminalizes

11   "[k]nowingly and without permission disrupt[ing] or caus[ing] the disruption of computer services

12   or den[ying] or caus[ing] the denial of computer services to an authorized user of a computer,

13   computer system, or computer network."  Tundra seeks dismissal of this claim on the grounds

14   Faire fails to allege Tundra caused the disruption or denial of computer services to authorized

15   users "even in a conclusory manner." (Dkt. No. 33 at 15.)  Not so.  Faire alleges Tundra caused

16   Faire users to be locked out of their accounts, experience login issues, and receive notices of

17   potential unauthorized login attempts.  (Dkt. No. 29 ¶¶ 11, 50.)  And Tundra's scheme is ongoing

18   despite Faire's February 14, 2023, cease-and-desist letter.  (*Id*. ¶ 59.)  So, Faire plausibly alleges

19   Tundra disrupted or denied computer services.

20   But Faire has not yet plausibly alleged Tundra knowingly did so.  Faire's cease-and-desist

21   letter mentions nothing about Tundra's conduct causing the disruption or denial of services to

22   authorized users.  (Dkt. No. 1-2.)  Thus, Faire's cease-and-desist letter does not permit the

23   inference Tundra *knowingly* caused the disruption or denial of services to authorized users.

24   Accordingly, Faire's § 502(c)(5) claim is DISMISSED with leave to amend.

25   In opposition, Faire again seeks to invoke provisions of the Act not referenced in the

26   complaint.  In particular, California Penal Code § 502(c)(1)-(3).  (Dkt. No. 41 at 12.)  Faire may

27   not amend its complaint through its opposition brief.  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123,

28   1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in

United States District Court
Northern District of California

10

1    opposition to a motion to dismiss.").

2                    **3.   Unlawful Competition Law Claim**

3            The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice."

4    Cal. Bus. & Prof. Code § 17200.  Tundra seeks dismissal of this claim on the grounds Faire lacks

5    statutory standing, fails to plead any underlying violation of law, and fails to plead likely

6    deception by members of the public.

7                             **a.   Statutory Standing**

8            Statutory standing under California's UCL is limited to those who have suffered injury in

9    fact and lost money or property as a result of the unfair competition.  Cal. Bus. & Prof. Code §

10   17204; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) ("a plaintiff's economic injury

11   [must] come 'as a result of' the unfair competition or a violation of the false advertising law.").

12   "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a

13   showing of a causal connection ***or*** reliance on the alleged misrepresentation."  *Kwikset Corp.*, 51

14   Cal. 4th at 326 (emphasis added).  Only when a misrepresentation forms the basis of a plaintiff's

15   unfair competition claim does statutory standing require reliance on the alleged misrepresentation.

16   *Id*. ("Recognizing that reliance is the causal mechanism of fraud, we held that a plaintiff

17   proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate

18   actual reliance on the allegedly deceptive or misleading statements." (cleaned up)); *see also*

19   *Swearingen v. Late July Snacks LLC*, No. 13-CV-04324-EMC, 2017 WL 1806483, at *4 (N.D.

20   Cal. May 5, 2017) ("The California Supreme Court has made it clear that, regardless of which

21   prong of the UCL a plaintiff asserts, when the basis of a plaintiff's UCL claim is a claim of

22   misrepresentation, a plaintiff must demonstrate actual reliance on the allegedly deceptive or

23   misleading statements.").

24                             **i.   Unlawful Prong**

25           Faire's "unlawful" prong claim is predicated on Tundra's alleged violations of the

26   Computer Fraud and Abuse Act, California Comprehensive Computer Data Access and Fraud Act,

27   and Lanham Act.  (*Id*. ¶ 109.)  Because this claim is not based on Tundra's alleged

28   misrepresentations, Faire is not required to allege reliance.  *Kwikset Corp.*, 51 Cal. 4th at 326-27.

United States District Court
Northern District of California

11

1    So, Tundra's motion to dismiss Faire's unlawful competition claim for lack of statutory standing is

2    DENIED.

3                                   **ii.  Fraudulent Prong**

4            Faire's "fraudulent" prong claim is predicated on 1) Tundra's misrepresentations it was an

5    authorized user when logging into Faire's platform and 2) Tundra's misrepresentations Faire was

6    aware of and approved Tundra's practices.  (Dkt. No. 29 ¶ 110.)  Because this claim is based on

7    Tundra's alleged misrepresentations, Faire must allege reliance.  *Kwikset Corp.*, 51 Cal. 4th at

8    326-27.

9            Faire adequately alleges its own reliance as to the login misrepresentations.  Faire alleges

10   Tundra falsely represented it was an authorized Faire user when logging into Faire's users'

11   accounts.  (Dkt. No. 29 ¶ 110.)  Tundra gained access to Faire's password-protected platform

12   based on Faire's reliance on Tundra's misrepresentation it was an authorized Faire user.  (*Id*. ¶¶

13   40-42, 53-55.)  As a result of Tundra's access to Faire's password-protected platform, Faire spent

14   money to investigate and prevent Tundra's circumvention of its technical defenses.  (*Id*. ¶¶ 49,

15   111.)  Thus, Faire plausibly alleges reliance sufficient to establish statutory standing to assert a

16   fraudulent competition claim against Tundra based on its login misrepresentations.

17           While Faire does not allege its own reliance as to the advertising misrepresentations, it

18   does not have to.  The parties are competitors, and no California state court has addressed "if

19   competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is

20   sufficient for fraudulent business practices claims brought by competitors."  *Heartland Payment*

21   *Sys., Inc. v. Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2015 WL 3377662, at *7 (N.D. Cal.

22   Feb. 24, 2015).  However, a "growing chorus" of federal district courts have held individual

23   reliance is not required for statutory standing where a competitor plaintiff alleges fraudulent

24   competition based on a defendant's misrepresentation if the plaintiff has alleged a sufficient causal

25   connection between the misrepresentation and the plaintiff's injury.  *Scilex Pharms. Inc. v. Sanofi-*

26   *Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *6 (N.D. Cal. Aug. 16, 2021).

27   Indeed, "strict adherence to the rule requiring pleading reliance would create an absurd result

28   where a plaintiff could never bring a UCL claim against its competitor for false or misleading

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1   advertising." *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, No. 20-CV-06957-VKD, 2021 WL

2   1253803, at \*6 (N.D. Cal. Apr. 5, 2021); *see also Scilex Pharms. Inc.*, 2021 WL 11593043, at \*6

3   (agreeing the reliance requirement would impose a superficial hurdle on competitor plaintiffs

4   "because false advertising claims between competitors are fundamentally different from false

5   advertising claims brought by consumers").

6          "The UCL's purpose is to protect both consumers **and competitors** by promoting fair

7   competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,

8   949 (2002), *as modified* (May 22, 2002) (emphasis added).  Because requiring Faire to plead

9   individual reliance as to Tundra's advertising misrepresentations would frustrate the UCL's

10  purpose, the Court declines to impose such a requirement.  Still, Faire must allege consumer

11  reliance to establish statutory standing for its fraudulent competition claim.  *Kwikset Corp.*, 51

12  Cal. 4th at 326-27.

13         Faire alleges facts sufficient to plausibly support an inference of consumer reliance on

14  Tundra's misrepresentations.  Tundra misrepresented to brands and retailers that Faire endorsed

15  Tundra's scheme.  (Dkt. No. 29 ¶¶ 37-38, 110.)  Relying on this misrepresentation, users disclosed

16  their Faire login credentials to Tundra.  (*Id*. ¶¶ 32-33, 39.)  Tundra then employed Faire users'

17  login credentials to gain access to Faire's password-protected platform.  (*Id*. ¶¶ 40-42, 53-55.)  As

18  a result of Tundra's access to Faire's password-protected platform, Faire spent money to

19  investigate and prevent Tundra's circumvention of its technical defenses.  (*Id*. ¶¶ 49, 111.)  In

20  sum, Faire alleges consumer reliance sufficient to establish statutory standing to assert a fraudulent

21  competition claim against Tundra for its misrepresentations that Faire endorsed Tundra's scheme.

22  Accordingly, Tundra's motion to dismiss Faire's fraudulent competition claim for lack of statutory

23  standing is DENIED.

24                      **b.  Claim Under Unlawful Prong**

25         The unlawful UCL prong prohibits "any practices forbidden by law, be it civil or criminal,

26  federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Ct.*, 27

27  Cal. App. 4th 832, 838-39 (1994).  Faire's unlawful competition claim is predicated on Tundra's

28  alleged violations of the Computer Fraud and Abuse Act, California Comprehensive Computer

1    Data Access and Fraud Act, and Lanham Act.  (Dkt. No. 29 ¶ 109.)  For the reasons explained

2    above, Faire has not yet stated claims under the alleged computer abuse statutes.  So, to the extent

3    the UCL claim is premised on violations of those statutes, it is DISMISSED with leave to amend.

4    But, as the Court concludes below, Faire plausibly states a claim for violation of the Lanham Act.

5    So, to the extent Faire's UCL claim is based on the Lanham Act violation, the motion to dismiss is

6    DENIED.

7                              **c.   Claim Under Fraudulent Prong**

8           Tundra also seeks dismissal of Faire's fraudulent competition claim on the grounds Faire

9    fails to allege Tundra's misrepresentations are likely to deceive the public.  "In order to state a

10   cause of action under the fraud prong of the UCL, a plaintiff must show that members of the

11   public are likely to be deceived."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073

12   (N.D. Cal. 2012).  But Faire alleges Tundra's "false advertising and promotion of Faire's

13   endorsement is likely to deceive retailers and brands into believing that Tundra's marketplace is

14   associated or partnered with Faire's marketplace."  (Dkt. No. 29 ¶ 116.)  For example, Faire

15   provides a screenshot of Tundra's commercial representation seeking a consumer's login

16   credentials:

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

14

(Dkt. No. 29 ¶ 33.)  This allegation, or more precisely, this screenshot, plausibly supports an inference the public would falsely believe Tundra was partnering with Faire and had Faire's permission to obtain the consumer's Faire login credentials.

Faire also alleges a specific instance of Tundra's false advertising campaign, which included "emails and direct sales phone calls targeting hundreds of brands."  Tundra's employee assured Brand A of Faire's approval of Tundra's scheme.  (*Id*. ¶¶ 37-38.)  Because these allegations are sufficient to support an inference Tundra's false advertising of Faire's endorsement is likely to deceive members of the public into believing Faire endorsed Tundra's conduct, Tundra's motion to dismiss Faire's fraudulent competition claim is DENIED.

* * *

Accordingly, Tundra's motion to dismiss Faire's UCL claim is GRANTED in part and DENIED in part.

15

United States District Court
Northern District of California

1    **4.  Lanham Act Claim**

2    Faire's Lanham Act claim requires five elements:

3

4    (1) the defendant made a false statement either about the plaintiff's or its own product;

5    (2) the statement was made in a commercial advertisement or promotion;

6

7    (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

8    (4) the deception is material, in that it is likely to influence the purchasing decision;

9

10   (5) the defendant caused its false statement to enter interstate commerce; and

11   (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the Tundra, or by a lessening of goodwill associated with the Faire's product.

12

13

14   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002).  Tundra

15   seeks dismissal of Faire's Lanham Act claim on the grounds Faire fails to allege the second, third,

16   and fourth elements and/or meet the requirements of Federal Rule of Civil Procedure 9(b).

17                    **i.  Commercial Advertisement or Promotion**

18   Tundra insists Faire fails to allege Tundra made any misrepresentation in a commercial

19   advertisement.  But Faire alleges Tundra repeatedly falsely advertised on its website and via phone

20   and email solicitations that Faire was aware of and approved Tundra's scheme.  (Dkt. No. 29 ¶¶

21   33, 37-38, 115, 117.)  The screenshot of Tundra's webpage alone satisfies the commercial

22   advertisement element.  (*Id.* ¶ 33.)  And, on December 15, 2022, Tundra's employee told Brand A

23   Faire approved of Tundra's scheme and "it was above board."  (*Id*. ¶ 37.)  Tundra insists these

24   allegations are insufficient under Federal Rule of Civil Procedure 9(b) because Faire "fails to

25   provide where or how it took place."  (Dkt. No. 33 at 21.)  But Faire alleges the false statements

26   were "part of an advertising campaign that included emails and direct sales phone calls targeting

27   hundreds of brands that sell on Faire."  (Dkt. No. 29 ¶ 38.)  Faire has sufficiently alleged Tundra

28   made misrepresentations in commercial advertisements.

United States District Court
Northern District of California

1

                                  **ii.       Deceive Substantial Segment**

2
        Next, Tundra argues the hundreds of brands alleged to have been targeted by Tundra's

3
false advertising "falls well short of a substantial segment" of Faire's audience. (Dkt. No. 33 at

4
22.) Tundra does not explain how the Court must draw this inference from the amended

5
complaint's allegations. Faire's allegation hundreds of brands have been targeted by Tundra's

6
false advertising supports an inference Tundra's misrepresentations have the tendency to deceive a

7
substantial segment of Faire's audience.

8
                                  **iii.     Material Deception**

9
        Finally, Tundra complains Faire fails to allege Tundra's false statements constitute a

10
material deception likely to influence any purchasing decision. But Faire alleges brands pay for its

11
services and Tundra's false advertising influences brands to purchase Tundra's services instead of

12
Faire's services. (Dkt. No. 29 ¶¶ 21, 32, 35-36.) Again, the screenshot of Tundra's website is

13
alone sufficient. (*Id.* ¶ 33.) Drawing inferences in Faire's favor, as the Court must, a consumer is

14
likely to be influenced by the false representation that Faire endorses Tundra's obtaining of its

15
users' Faire login credentials.

16
                                                             \* \* \*

17
        Accordingly, Tundra's motion to dismiss Faire's Lanham Act claim is DENIED.

18
//

19
//

20
//

21
//

22
//

23
//

24
//

25
//

26
//

27
//

28
//

1

**CONCLUSION**

2    Tundra's motion to compel arbitration is DENIED.  Tundra has failed to meet its burden of

3    showing the remaining claims rely on or are intricately intertwined with Faire's service terms.

4    Tundra's motion to dismiss is GRANTED with leave to amend as to Faire's Computer

5    Fraud and Abuse Act claim, California Comprehensive Computer Data Access and Fraud Act

6    claim, and UCL claim to the extent it is based on those two claims, and is DENIED as to the

7    remainder of Faire's UCL claim and the Lanham Act claim.

8    Faire may file an amended complaint by December 15, 2024.  The Court will hold an

9    initial case management conference on February 1, 2024 at 1:30 p.m. via Zoom webinar.  A joint

10    case management conference statement is due one week in advance.

11    This Order disposes of Docket Nos. 31 and 33.

12    **IT IS SO ORDERED.**

13    Dated: December 8, 2023

14

_____

15    JACQUELINE SCOTT CORLEY
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California